IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| 540 WEST 21ST STREET HOLDINGS LLC,[1] | ) |
| | ) Case No. 23-11053 |
| Debtor. | ) |
| | ) |

**DECLARATION OF TOMER JACOB IN SUPPORT OF DEBTOR'S
FIRST DAY MOTIONS AND RELATED RELIEF**

I, Tomer Jacob, declare and certify the following information as true and correct.

1. I am the Chief Restructuring Officer of 540 West 21st Street Holdings LLC in this Chapter 11 case (the "*Case*"). It is my understanding that the Debtor will file an application with the Court seeking entry of an order authorizing the Debtor to retain and employ me to provide temporary resources to the Debtor to assist in their sale and approving my appointment as Chief Restructuring Officer.

2. I have more than 24 years of global experience in the financial markets. I am a Managing Partner at Hanaco, one of Israel's leading VCs, with c. $2.5bn in AUM. I also serve on the board of directors of Max, a leading credit card company controlled by Warburg Pincus, Formula Systems, a Nasdaq-listed information technology company and Shikun & Binui, Israel's largest Infrastructure and real estate company. I spent 21 years at UBS in various senior positions, including a Managing Director and Head of Israel at the investment banking division and member of the executive committee of EMEA. Before joining UBS, I spent a few years working in the

---

[1] The Debtor is the following entity (the last four digits of its taxpayer identification number follows in parentheses): 540 West 21st Street Holdings LLC (1133). The Debtor's noticing address in this Chapter 11 case is c/o Bryan Cave Leighton Paisner LLP, Attn: Andrew E. Auerbach, 1290 Avenue of the Americas, New York, NY 10104-3300.

Israeli Hi-Tech industry. I hold degrees in Computer Science and BA in Economics & Management.

3. As part of my employment and services in this capacity, I am generally familiar with the Debtor's history, day-to-day operations, business and financial affairs, and books and records, as well as the Debtor's restructuring efforts.

4. On August 2, 2023 (the "*Petition Date*"), the Debtor filed a voluntary petition with the United States Bankruptcy Court for the District of Delaware under Chapter 11 of Title 11 of the United States Code (the "*Bankruptcy Code*"). To minimize the adverse effects of filing for Chapter 11 protection while at the same time preserving value for the benefit of its stakeholders, and concurrently with the filing of this declaration ("*Declaration*"), the Debtor has filed a number of pleadings requesting various forms of "first day" relief (collectively, "*First Day Motions*").

5. The First Day Motions are intended to enable the Debtor to operate effectively and efficiently within this Case, as well as to avoid certain adverse consequences that might otherwise result from the commencement thereof. Among other things, the First Day Motions seek relief aimed at maintaining the confidence of the Debtor's stakeholders and maintaining the value of the Debtor's estate to maximize value for creditors. Retaining the support of key constituencies and preserving the value of the Debtor's estate is critical to the Debtor's efforts to maximize the value of its estate for all parties-in-interest.

6. In addition, the Debtor has filed its Combined Disclosure Statement and Chapter 11 Plan of Reorganization of 540 West 21st Street Holdings LLC (the "*Disclosure Statement and Plan*") seeking an expedited confirmation of a liquidating plan and to facilitate the sale of the real property commonly known as 540 West 21st Street New York, NY, 10011 ("*Property*") to Chelsea 540 Owner LLC ("*Buyer*") for the reasons set forth below.

7.	I am over the age of 18 and am authorized by the Debtor to submit this Declaration. Except as otherwise indicated, all facts set forth in this Declaration are based on my personal knowledge, my discussions with members of the Debtor's management team, my review of relevant documents and information concerning the Debtor's operations, financial affairs, and restructuring initiatives, or my opinions based upon my experience and knowledge. If called as a witness, I could and would competently testify to the facts set forth in this Declaration.

8.	This Declaration is divided into four parts. Part I of this Declaration summarizes the Debtor's history and operations. Part II describes the Debtor's corporate and capital structure. Part III sets forth the Debtor's plan for this Case. Part IV affirms and incorporates the facts that support the relief requested in the First Day Motions.

**Part I**
**The Debtor's History and Operations**

1.	The Debtor is headquartered in New York, NY and is a real estate holding company formed specifically to facilitate the financing and construction of a mixed-use development at the Property.

2.	The Debtor purchased the Property with the intent to obtain financing to eventually construct a 20 story, 275 foot tall ultra luxury mixed use condominium building. The proposed development would include 34 residential units with a total area of 116,818 square feet, a 4,682 square foot retail component and a 48,737 square foot gallery.

3.	The Debtor retained and employed architects and designers to begin the design and pre-construction of the building, it negotiated with the City of New York and other constituents, and secured the parcel for the start of construction. However, the Debtor was and continues to be unable to secure funding to complete construction at the site and bring the project into existence.

**Part II**
**Corporate and Capital Structures of the Debtor**

### A. Corporate Structure

4. The Debtor's corporate structure is as follows:

    (a) Debtor 540 West 21st Street Holdings is owned by DZ Gallery LLC (8% interest) and 540 West 21st Street Investment Member LLC (92% interest).

    (b) 540 West 21st Street Member LLC is owned by 540 West 21st Development LLC (100% interest).

    (c) 540 West 21st Development LLC is owned by 540 West 21st Street Investment III, LLC (16.35% interest) and 540 West 21st Street LLC (83.65% interest).

    (d) 540 West 21st Street LLC is owned by various institutional and individual members.

    (e) 540 West 21st Street Investments III, LLC is owned by 540 West 21st Street Investments II LLC (100%).

    (f) 540 West 21st Street Investments II LLC is owned by various institutional and individual members.

### B. Prepetition Capital Structure and Key Debts.

5. To finance the proposed development at the Property, the Debtor obtained a loan in the original principal amount of $20,000,000 from Bank Hapoalim B.M. secured by a mortgage on the Property ("***Original Loan***").

6. In addition to the Original Loan, West 21st Street Investment Member LLC, 540 W. 21st Development LLC, 540 West 21st Street LLC, and 540 West 21st Street Investments III LLC were created as the ultimate owners of 540 West 21st Street Holdings LLC for the purpose of obtaining equity and additional unsecured debt financing for the completion of the development:

    (a) West 21st Street Investment Member LLC obtained approximately $5 million in unsecured financing from a single individual.

    (b) 540 West 21st Development LLC obtained approximately $32 million in unsecured financing from various individuals and entries, many of which are

also equity holders in 540 West 21st Development LLC's parents, 540 West 21st Street LLC and 540 West 21st Street Investments II, LLC.

(c) 540 West 21st Street LLC obtained approximately $178 million in unsecured financing from various individuals and entities, many of which are also equity holders in 540 West 21st Street LLC and 540 West 21st Street Investments II, LLC.

(d) 540 West 21st Street Investments II LLC obtained approximately $13 million in unsecured financing from various individuals and entities, many of which are also equity holders in 540 West 21st Street LLC and 540 West 21st Street Investments II, LLC.

7. The following paragraphs describe the key creditors of the Debtor and their interplay with the Debtor's liquidity shortfalls and growing distress in a manner meant to describe how the Debtor came to be in this Court.

8. Beginning in December 2021, Bank Hapoalim B.M. indicated that it was unwilling to extend additional capital to the Debtor and informed the Debtor that it intended to exercise remedies and collect on the Original Loan.

9. On or around May 9, 2022, Ray New York, LLC ("*Ray*"), with SL Green Realty Corp. ("*SLG*," collectively with Ray, "*Secured Lender*") acting as servicer, purchased the Original Loan from Bank Hapoalim B.M. and agreed to provide additional financing up to $80,450,000.00 ("*Loan*") pursuant to that certain Amended and Restated Second Consolidated Amended and Restated Promissory Note dated May 9, 2022.

10. After acquiring the Original Loan and advancing additional funds, Secured Lender worked with the Debtor's management to explore potential options for the completion of the development of the Property and the repayment of the Loan prior to its maturity.

11. In connection with these discussions, Secured Lender proposed a potential restructuring transaction where Debtor would transfer the Property to Secured Lender to complete development and then provide certain returns to the Debtor and its stakeholders through a

nonrecourse promissory note provided by Secured Lender in favor of the Debtor. This nonrecourse promissory note would then be paid either (a) through the completion of the development and sale of the Property or (b) to the extent Secured Lender decided to hold the Project for its own account, by making payment to the Debtor in an amount to be determined following an appraisal.

12. On October 11, 2022, the Debtor sent a letter to its equity holders and unsecured creditors outlining the terms of Secured Lender's proposal, providing a copy of the term sheet provided by Secured Lender and offering each of the stakeholders an opportunity to review the appraisal acquired by Debtor after signing a non-disclosure agreement.

13. Debtor's management then engaged with certain of their stakeholders to discuss the restructuring transaction proposed by Secured Lender. Following these discussions, the Debtor determined that a significant number of stakeholders indicated a preference for selling the Property on an "as-is" basis as an alternative to pursuing the restructuring transaction proposed by Secured Lender.

14. On November 1, 2022, the Debtor sent a follow-up correspondence to its equity holders and unsecured creditors indicating that it would now seek to proceed with a sale of the Property, in lieu of moving forward with the restructuring transaction proposed by Secured Lender, given the expressed preference of the Debtor's stakeholders.

15. In connection with its efforts to sell the Property, on November 9, 2022, the Debtor retained Jones Lang LaSalle Americas, Inc. ("**JLL**") as its agent to market and sell the real property commonly known as 540 West 21st Street New York, NY, 10011 ("**Property**").

16. JLL engaged in an extensive marketing effort by, among other things, soliciting interest in and accepting potential bids for the Property.

17. Regardless, I identified 550W21 Owner LLC ("**Buyer**") as the party who provided the highest and best offer for the Property.

## Part III
## The Proposed Sale of the Property

18. After Buyer was identified as the party with the highest and best offer for the Property, the Debtor, its professionals, and Buyer proceeded with due diligence to finalize the terms upon which Buyer would purchase the Property.

19. The Debtor and Buyer then entered into a Purchase and Sale Contract dated June 13, 2023 ("**PSA**") which, among other things, contemplated that the Debtor would file the present Case, engage in a bankruptcy sale process, and the confirmation of a Chapter 11 plan.

20. Secured Lender also agreed to provide the Debtor with sufficient financing to complete the transactions contemplated by the PSA, and fund the Debtor's operations through this Case, prior to the Petition Date.

21. In furtherance of the Debtor's and the Buyer's agreement pursuant to the PSA, the Debtor has filed a Combined Disclosure Statement and Plan, which provide the terms under which the Property will be sold to Buyer and certain distributions that will be made to creditors from those proceeds.

## Part IV
## The First Day Motions

22. In conjunction with the bankruptcy petition, the Debtor filed various First Day Motions seeking initial relief to smooth the entry into Chapter 11. As a result of my discussions with counsel and other professionals, I have formed opinions as to: (a) the necessity of obtaining the relief sought in the First Day Motions, (b) the importance of the relief sought in the First Day Motions for the Debtor to maximize the value of the Property, and (c) the negative impact upon

the Debtor of not obtaining the relief sought in the First Day Motions. The First Day Motions include:

    (a) Debtor's Application for the Appointment of Stretto as Claims and Noticing Agent Effective as of the Petition Date; and

    (b) Motion of the Debtor for Interim and Final Orders: (I) Approving the Continued Use of the Debtor's Cash Management System, Bank Accounts and Business Forms; (II) Extending the Debtor's Time to Comply With Section 345(b) of the Bankruptcy Code; and (III) Granting Related Relief.

23. The Debtor has filed a Motion of the Debtor for Interim and Final Orders: (I) Approving the Continued Use of the Debtor's Cash Management System, Bank Accounts, and Business Forms, which will allow the Debtor to continue to utilize its system for disbursing funds and paying obligations incurred by the Debtor (the "**Cash Management System**"). If the Debtor is unable to maintain its Cash Management System, the Debtor's operations will be severely impeded in that its ability to utilize such a system to maintain the Property and facilitate payments approved by the Court to administer this Case.

24. Requiring the Debtor to adopt a new, segmented cash management system during this Case would be burdensome and unnecessarily disruptive to the Debtor's operations. Any disruption of the Cash Management System could have adverse effects on the Debtor's restructuring efforts, the cost of which would ultimately be borne by the Debtor's creditors and other stakeholders. Maintaining the current Cash Management System will facilitate the Debtor's smooth transition into and operation in Chapter 11 by, among other things, minimizing delays in paying post-petition debts and eliminating administrative inefficiencies.

25. I am familiar with the content and substance of the First Day Motions. I believe that the relief sought in each of the First Day Motions is necessary to enable the Debtor to operate

in Chapter 11 with minimal disruption to its business operations and constitutes a critical element in successfully restructuring the Debtor's business.

26. For the reasons stated herein and in each of the First Day Motions filed concurrently or in connection with the commencement of this Case, I respectfully request that each of the First Day Motions be granted, together with such other and further relief as this Court deems just and proper.

## Conclusion

27. The Debtor believes that this Case, and the strategy outlined above, represent the best and only way to accomplish a sale of the Property and to provide a meaningful return to creditors. The Debtor respectfully requests that the First Day Motions be granted and that the Court provide such other and further relief as is just and proper.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Executed this 2nd day of August 2023.

/s/ *Tomer Jacob*
Tomer Jacob
Proposed Chief Restructuring Officer