## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| 540 WEST 21ST STREET HOLDINGS LLC,[1] | Case No. 23-11053 (MFW) |
| Debtor. | **RE D.I.: 307** |

**OBJECTION OF YARDEN TADMOR TO DEBTOR'S MOTION FOR ORDER (I) APPROVING ADEQUACY OF DISCLOSURES IN THIRD AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN ON INTERIM BASIS, (II) SCHEDULING CONFIRMATION HEARING AND OBJECTION DEADLINE, (III) ESTABLISHING PROCEDURES FOR SOLICITATION AND TABULATION OF VOTES, (IV) APPROVING FORM OF BALLOT AND SOLICITATION PACKAGE, AND (V) APPROVING NOTICE**

Yarden Tadmor, individually and as trustee for the heirs of Eran Tadmor ("**Mr. Tadmor**"), by and through his undersigned counsel, respectfully submits this Objection ("**Objection**") to the *Debtor's Motion for Order (I) Approving Adequacy of Disclosures in Third Amended Combined Disclosure Statement and Plan on Interim Basis, (II) Scheduling Confirmation Hearing and Objection Deadline, (III) Establishing Procedures for Solicitation and Tabulation of Votes, (IV) Approving Form of Ballot and Solicitation Package, and (V) Approving Notice* [D.I 307] ("**Motion**").[2] In support of this Objection, Mr. Tadmor respectfully represents as follows:

### PRELIMINARY STATEMENT

The Debtor, through its principals—Uri Chaitchik and Noam Teltch—established a complicated matrix of special purpose entities to raise funds for the development of the Property ("the **Project**"), all of which special purpose entities were ultimately controlled by the Debtor

---

[1] The Debtor is the following entity (the last four digits of its taxpayer identification number follows in parentheses): 540 West 21st Street Holdings LLC (1133). The Debtor's noticing address in this Chapter 11 Case is c/o Bryan Cave Leighton Paisner LLP, Attn: Andrew E. Auerbach, 1290 Avenue of the Americas, New York, NY 10104-3300.

[2] As context requires, capitalized terms used but not defined in this Objection have the meaning given in the Motion or the Combined Disclosure Statement and Plan.

through Mr. Chaitchik and Mr. Teltch. The Debtor now seeks to disburse substantially all of Debtor's assets—approximately 90% of the proceeds from the sale of the Property— to an insider, Ray New York, LLC ("**Ray New York**") and to a related party, the Debtor's minority member DZ 21st Street, LLC.  While insiders and related parties reap benefits under the Plan including cash payments and releases of claims, the Plan fails to provide full payment to the Debtor's general unsecured creditors (including Mr. Tadmor) and provides no recovery to lenders to and investors in the Project via Debtor's affiliates, even though the Debtor ultimately controlled such affiliates through its principals.

The Debtor's Combined Disclosure Statement and Plan fails to disclose the substantial connections and transactions among the Debtor, its insiders, and its affiliates and the benefits obtained by such parties in connection with the Plan. For example, the Debtor continues to deny that the Debtor's transactions with Ray New York are insider transactions despite ample evidence that Mr. Chaitchik is a person in control of the Debtor, as well as Mr. Chaitchik being the son-in-law of the manager and owner/member of Ray New York. The Debtor continues to fail to disclose that Mr. Chaitchik and Mr. Teltch guaranteed the Ray New York loan.  The Debtor also fails to disclose its attorneys' substantial connections with Mr. Chaitchik and Mr. Teltch, including such attorneys' representation of Mr. Chaitchik and Mr. Teltch in connection with the undisclosed guaranty of the Ray New York Loan and such attorneys' continued post-petition consultations with Mr. Chaitchik and Mr. Teltch regarding the Ray New York DIP financing, the plan, and other important Chapter 11 Case issues.

Additionally, the Debtor's Combined Disclosure Statement and Plan fails to disclose critical information related to the marketing and sale of the Property (the sole asset available to pay creditors under the Plan), such as the reduction in the purchase price for the Property, the

Debtor's dispute with its agent with respect to the Property, the Debtor's post-petition marketing efforts with respect to the Property (if any), and whether any of the Debtor's insiders, affiliates, or direct or indirect equity holders have any connection with the Purchaser or any agreement related to the continued development or subsequent sale of the Property (or any portion thereof).

The Debtor's Combined Disclosure Statement and Plan also fails to disclose the Debtor's and Mr. Teltch's substantial relationship with and control over Great Feats—the special purpose entity within the Debtor's matrix of entities through which Mr. Tadmor lent and invested funds in the Project.

Correction of these deficient and missing disclosures is necessary for the Debtor's Combined Disclosure Statement and Plan to provide adequate information to allow creditors and equity holders to make reasonable and informed judgments about the Plan. Accordingly, the Motion should be denied.

## JURISDICTION AND STANDING

1.      The Court has jurisdiction to consider the Motion and this Objection under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157.

2.      Mr. Tadmor is an indirect equity holder in the Debtor by virtue of his investment in the Project via Great Feats Limited ("**Great Feats**"). Mr. Tadmor also has direct claims against the Debtor for aiding and abetting Great Feats' breach of fiduciary duty to Mr. Tadmor, as more fully detailed in Mr. Tadmor's claims filed in this Chapter 11 Case as Claim Nos. 16 and 17 ("**Tadmor Claims**").  Mr. Tadmor's claims are classified in Class 7- Disputed Investor Claims and are impaired and entitled to vote on the Plan. *See* Plan, D.I. 306 at pp. 13, 29, and 30 of D.I.

As a result, Mr. Tadmor has standing to object to the Combined Disclosure Statement and Plan. *See In re Global Indus. Techs., Inc.*, 645 F.3d 201, 210-15 (3d Cir. 2011) (holding insurers to be party in interest where plan required settlement of asbestos claims); *see also In re No Rust Rebar, Inc.*, 641 B.R. 412, 421 (Bankr. S.D. Fla. 2022) (holding that a creditor who has filed a proof of claim is generally considered a party in interest unless the proof of claim is either withdrawn or disallowed).

## **OBJECTION**

I.      **The Combined Disclosure Statement and Plan Fails to Provide Adequate Information and Should Not be Approved.**

3.      Section 1125 of the Bankruptcy Code requires that a disclosure statement provide "adequate information"—namely, "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor," that would allow for a reasonable and informed judgment about the plan. *See* 11 U.S.C. § 1125. Where a disclosure statement fails to sufficiently disclose insiders' participation or to adequately address insider claims, it may not be approved. *See In re Microwave Prod. of Am., Inc.*, 100 B.R. 376, 378 (Bankr. W.D. Tenn. 1989) (disclosure insufficient because it failed to sufficiently disclose insider participation); *see also In re Cardinal Congregate I,* 121 B.R. 760, 765 (Bankr. S. D. Ohio 1990).

4.      Here, the Combined Disclosure Statement and Plan fails to provide adequate information regarding insiders, including the benefits to be obtained by insiders in connection with the Plan, certain transactions with insiders (including Mr. Chaitchik's and Mr. Teltch's guaranty of the Ray New York loan), and the participation of insiders in insider transactions and in connection with the negotiation of the Plan. Moreover, the Plan fails to disclose adequate information regarding the marketing and purchase of the Property, including the dispute between the Debtor and its real estate agent and whether any of Debtor's affiliates or insiders (including

Ray New York) have any connections to or agreements with the Purchaser of the Property. Additionally, the Plan fails to disclose the Debtor's connections with and control over Great Feats. Accordingly, the Combined Disclosure Statement and Plan does not provide sufficient information to enable a hypothetical creditor or equity holder in the relevant classes to make an informed judgment about the Plan and, thus, the Motion should be denied.

**II.     The Combined Disclosure Statement and Plan Fails to Adequately Disclose the Benefits to, and Connections with Insiders.**

**A. The Plan Provides Substantial Benefits to Insiders – This is Not Adequately Disclosed.**

5.     Mr. Chaitchik and Mr. Teltch are the ultimate principals of the Debtor and had substantial dealings with the Debtor's creditors and investors—but that is not apparent from the disclosures in the Combined Disclosure Statement and Plan. Nor is it apparent that Mr. Chaitchik and Mr. Teltch are Released Parties and will thus receive releases of claims from the Debtor (including releases of shareholder derivative actions) and from creditors opting into the release under Section 11.4 of the Plan. Nor does the Plan disclose that Mr. Chaitchik and Mr. Teltch guaranteed the loan held by Mr. Chaitchik's father-in-law's company, Ray New York or whether or not Ray New York intends to take any action to collect on this guaranty—which collection would increase the funds available to creditors and equity interest holders in this Chapter 11 Case. Moreover, the Plan does not disclose that Ray New York is an insider of the Debtor (in fact, the Plan states that Ray New York is *not* an insider); such insider status is relevant given that Ray New York is receiving the majority of the proceeds from the sale of the Property, a release of claims from the Debtor, and creditors and equity interest holders may opt-in to a release of claims against Ray New York.

6.      The Combined Disclosure Statement and Plan never discloses the names of the individuals that ultimately direct and control the Debtor. Mr. Teltch is not named in the Combined Disclosure Statement and Plan. The single disclosure regarding Mr. Chaitchik's relationship with the Debtor is misleading: the Plan only discloses Mr. Chaitchik's membership interest in Casco (of less than 10%). *See* Plan, D.I. 306 at p. 24 of D.I. The Plan does not disclose Mr. Chaitchik's management and control of, and other substantial connections with the Debtor. Although Mr. Chaitchik and Mr. Teltch are referenced in the Debtor's Operating Agreement attached to the Plan as Exhibit C, the Plan does not explain their roles in the Debtor or Casco (other than Mr. Chaitchik's minority membership interest in Casco).

7.      In the sentence immediately following the single disclosure regarding Mr. Chaitchik, the Plan confusingly states, "decision-making authority at all levels is vested in the two *remaining* owners of Casco, with the unanimous consent of both *remaining* owners required to take any corporate action." *Id.* (emphasis supplied).   The Plan does not identify the two *remaining* owners of Casco with such decision-making authority.  Based on Mr. Tadmor's discovery, the individuals with decision-making authority over the Debtor and Casco are Mr. Chaitchik and Mr. Teltch. But the use of the word "remaining" implies that there may be a third "owner" with decision making authority.  Also based on Mr. Tadmor's discovery, decision-making authority over Casco is vested in its sole officers and directors—Mr. Chaitchik and Mr. Teltch—not in any owners of Casco by virtue of their ownership interests.

8.      The Debtor also continues to maintain that Ray New York is *not* an "insider" of the Debtor, despite Ray New York being managed and owned by Mr. Chaitchik's father-in-law. *See* Plan, D.I. 306 at p. 29 of D.I. The Debtor appears to have based this determination on the (incorrect) conclusion that Mr. Chaitchik is not a director, officer, or person in control of the

6

Debtor, stating that "no principal of Debtor has sole control over the Debtor." *Id.* The illogical analysis leading to this conclusion appears to be that, because Mr. Chaitchik and Mr. Teltch have joint control over the Debtor, neither can be in control of the Debtor. In other words, there is no person in control of the Debtor. This cannot be the case; there must be person(s) directing and controlling the Debtor.

9. It is apparent from the facts in this Chapter 11 Case that Mr. Chaitchik and Mr. Teltch are such persons in control of the Debtor and have consistently held themselves out as persons in control of the Debtor to Debtor's creditors, investors, and various third parties. A summary of certain evidence available on the docket of this Chapter 11 Case or otherwise obtained by Mr. Tadmor in discovery (formal and informal) that demonstrates that Mr. Chaitchik and Mr. Teltch are in control of the Debtor is contained in the following **Table 1**.

| Table 1. Control of the Debtor by Uri Chaitchik and Noam Teltch | |
|---|---|
| **Document/Source** | **Evidence of Chaitchik/Teltch control** |
| *Casco Unanimous Consent of Board* [Attached as **Exhibit A** hereto]. | Identifying Mr. Chaitchik and Mr. Teltch as the "sole directors" of Casco; as such directors, Mr. Chaitchik and Mr. Teltch authorize the First Lien Loan. |
| *Casco Certificate* [Attached as **Exhibit B** hereto]. | Certifying that Mr. Chaitchik and Mr. Teltch are the only officers of Casco. |
| *Casco's Organizational Chart* [Exhibit D to Debtor's Operating Agreement, Exhibit C to the Plan, D.I. 306-1 at p. 157 of D.I.]. | Identifying Mr. Chaitchik and Mr. Teltch as "Management & Control" of the Debtor. |
| *Debtor's Operating Agreement* [D.I. 306-1 at p. 109 of D.I.]. | Definition of "Casco Principals" means Noam Teltch and Uri Chaitchik. |
| *Debtor's Operating Agreement* [D.I. 306-1 at § 2.7.1(c) at p. 116 of D.I.] | Providing that the "Casco Member is Controlled by the Casco Principals". |
| *Supplemental Declaration of Debtor's Counsel in Support of Application to Employ* [D.I. 101 at Schedule 1]. | Identifying "Current Directors, Officers, and Chief Restructuring Officer" of Debtor as Tomer Jacob, Noam Teltch and Uri Chaitchik. |

| | |
|---|---|
| *Debtor's Offering Plan filed with NY Attorney General* [Exhibit 7 to Dr. Gutkind's First Amended Complaint; Adv. Pro. 23-50490-MFW; D.I. 4 at p. 227, 551 and 553 of the PDF]. | • "The principals of [Debtor] who will be actively involved in this offering are Mr. Uri Chaitchik and Mr. Noam Teltch"<br>• Mr. Chaitchik represents that he is the principal of the Debtor and will assume "primary responsibility" for the Debtor's compliance with applicable law.<br>• Mr. Chaitchik signs under penalty of perjury. |
| *Debtor's Holding Chart* [Attached as **Exhibit C** hereto]. | Showing that Mr. Chaitchik also has interests in the Debtor through Blue Imperium Corp. (formerly White Imperium). |
| *Dr. Gutkind's First Amended Complaint* [Adv. Pro. 23-50490-MFW; D.I. 4 at ¶¶ 2-4, 6, 53-59]. | Dr. Gutkind, a creditor of Debtor, alleges that his investment was solicited by Mr. Chaitchik, that Dr. Gutkind engaged in substantial negotiations/discussions with Mr. Chaitchik, and that Mr. Chaitchik is a person in control of the Debtor. |
| *Declaration in Support of IRHA's Motion for Leave to File Proof of Claim After Bar Date* [D.I. 274-2 at ¶¶1, 6, 10, 27]. | IRHA, a creditor of Debtor, describes its communications with the Debtor's principals, Noam Teltch and Uri Chaitchik. |
| *IHRA Investment Limited v. 540 West 21st Street LLC, 540 West 21st Street Development LLC*, Sup. Ct. N.Y. County, Index No. 651726/2021 ("**IHRA Litigation**") | The docket in the IRHA Litigation against the Debtor's affiliates contains a declaration of Mr. Chaitchik, excerpts of depositions of Mr. Chaitchik and IRHA's representative, and chat messages between Mr. Chaitchik and IRHA's representative, which further show Mr. Chaitchik's and Mr. Teltch's control over the Project and the Debtor. |
| Interview with Mr. Yiftach Aloni [*See* D.I. 162 at 3.4 for scheduled claim]. | Mr. Aloni, a creditor of Debtor, provided Mr. Tadmor with his chat messages with Mr. Chaitchik and recalled conversations with Mr. Chaitchik which show that Mr. Chaitchik exercised control over the Project and Debtor.<br><br>Mr. Aloni also indicated that after Ray New York assumed the First Lien Loan, Mr. Chaitchik told Mr. Aloni that "we bought the loan" and then explained that it would be easier to find a way to lift the Project without the pressure from the bank because now the control of the Project was in the family. |
| Interview with Mr. Rani Attar of Attar Family Office Ltd. [*See* D.I. 162 at 3.10 for scheduled claim; Mr. Attar is also the notice party for several creditors]. | Mr. Attar, a creditor of Debtor, informed Mr. Tadmor that he has hundreds of communications with Mr. Chaitchik in connection with the Project. |

10.     The foregoing demonstrates that Mr. Teltch's relationship with the Debtor is substantial and must be disclosed and Mr. Chaitchik's relationship with the Debtor is much more

than a "minority" membership interest in Casco, rendering the current disclosure regarding Mr. Chaitchik misleading. Parties in interest should not be required to spend hours engaging in discovery and wading through the docket in the Chapter 11 Case to determine the relationship of Mr. Chaitchik, Mr. Teltch, and Ray New York with the Debtor. These relationships should be adequately disclosed in the disclosure statement.

11.    It is important that the Combined Disclosure Statement and Plan adequately discloses the insider relationship of Mr. Chaitchik, Mr. Teltch, and Ray New York because the Plan provides these insiders with substantial and unique benefits, including: (a) Mr. Chaitchik's father-in-law's company, Ray New York, receiving most of the proceeds from the sale of the Property (at least $64.75 million); (b) such payment to Ray New York reducing Mr. Chaitchik's and Mr. Teltch's substantial personal obligations to Ray New York under their guarantees; (c) Mr. Chaitchik, Mr. Teltch, and Ray New York all receiving releases of claims from the Debtor under the Plan, including releases from shareholder derivative claims; and (d) Mr. Chaitchik, Mr. Teltch, and Ray New York optionally receiving releasees from creditors and equity interest holders.  These benefits to insiders have not been adequately disclosed because there is not sufficient information in the Combined Disclosure Statement and Plan for parties to know that Mr. Chaitchik and Mr. Teltch satisfy the definition of Related Parties receiving releases; there is no disclosure of Mr. Chaitchik's and Mr. Teltch's guarantees of the Ray New York loan; and there is no disclosure of Ray New York's insider status (instead, the Plan incorrectly states Ray New York is *not* an insider).

12.    This lack of disclosure is particularly concerning because there is evidence that the transactions among insiders have not been negotiated at arms-length.

**B. The Transactions Among Insiders Are Not Arms-Length—This is Not Adequately Disclosed.**

13.     There is evidence that the transactions among insiders both pre- and post-petition have not been arms-length, despite the Debtor's disclosures in the Plan to the contrary. The Debtor has provided inadequate disclosures about, and in some cases failed to disclose entirely, substantial transactions between the Debtor and its insiders. Additionally, the Debtor's counsel Bryan Cave Leighton Paisner LLC ("**BCLP**"), has failed to disclose its connections with Debtor's insiders and affiliates. Moreover, it appears that BCLP continues to consult Mr. Chaitchik and Mr. Teltch on issues related to the Chapter 11 Cases, including issues related to the First Lien Loan, which both Mr. Chaitchik and Mr. Teltch have guaranteed, and which loan is held by Mr. Chaitchik's father-in-law's company. These insider transactions should be adequately disclosed, as well as BCLP's role in such insider transactions and Mr. Chaitchik's and Mr. Teltch's role in making decisions in the Chapter 11 Case that personally benefit them.

> **i.     The Debtor Consistently Failed to Disclose Ray New York's Insider Status and Mr. Chaitchik's and Mr. Teltch's Guaranty of the Ray New York Loan.**

14.     The Debtor has consistently failed to disclose insider transactions in connection with the First Lien Loan, beginning with the Voluntary Petion. With respect to Ray New York's secured claim, in response to the question "Is the creditor an insider or a related party?", the Debtor selected "No". [D.I. 1 at p. 23] This response is not true given that Ray New York's manager and member/owner is the father-in-law of Mr. Chaitchik, a principal of the Debtor. In response to the question "Is anyone else liable on this claim?", the Debtor selected "No". *Id.* This response is also not true given that on May 2, 2022, Mr. Chaitchik and Mr. Teltch guaranteed the First Lien Loan held by Ray New York by entering into an Amended and Restated Non-Recourse Carve-Out Guaranty, attached hereto as **Exhibit D** (the "**Guaranty**"). The failure to disclose the Guaranty in the Schedules cannot be dismissed as mere "oversight," given that Mr. Teltch signed the Voluntary

Petition that failed to disclose his own personal Guaranty and averred under the penalty of perjury, "I have examined the information in this petition and have a reasonable belief that the information is true and correct." [D.I. 1 at p. 5] Likewise, the absence of any mention of the Guaranty in the Combined Plan and Disclosure Statement cannot be explained as mere "oversight" given that BCLP, who prepared the Plan, served as both special counsel and the notice party for Mr. Chaitchik and Mr. Teltch in connection with the negotiation of the Guaranty.

> ii. **The Debtor Failed to Disclose Counsel's Connections with Debtor's Insiders and Affiliates.**

15.     The Debtor's counsel and Ray New York's counsel have substantial connections with the Debtor's insiders and affiliates that have not been adequately disclosed in the Combined Disclosure Statement and Plan, nor at other times such disclosure should have been made, such as in connection with the Debtor's application to employ BCLP or the motion to approve debtor-in-possession financing from Ray New York.

16.     In Debtor's counsel's supplemental declaration in support of its application to employ BCLP [D.I. 101] ("***BCLP Declaration***"), Debtor's counsel did not identify any connections with any of Debtor's affiliates or the Debtor's officers or directors (who it identified as Mr. Chaitchik and Mr. Teltch) [D.I. 101]. However, BCLP has connections with Debtor's affiliates and Mr. Chaitchik and Mr. Teltch, as indicated by the documents summarized in **Table 2**.

| Table 2. BCLP's Undisclosed Connections with Uri Chaitchik, Noam Teltch, and Debtor's Affiliates | |
| --- | --- |
| **Document/Source** | **Evidence of BCLP Connection** |

| | |
|---|---|
| *Guaranty of First Lien Loan by Mr. Chaitchik and Mr. Teltch (May 2022)* [Attached as **Exhibit D** hereto at p.1 and 12 at § 7.17.4]. | Mr. Chaitchik's and Mr. Telch's notice address is c/o BCLP. Mr. Chaitchik and Mr. Teltch appointed BCLP as its authorized agent to receive service of process. |
| *BCLP Opinion Letter in connection with First Lien Loan (May 2022)* [Attached as **Exhibit E** hereto at p.1]. | BCLP acts as special counsel to Debtor, West 21st Street Member LLC (Debtor's affiliate), Mr. Chaitchik, and Mr. Teltch. |
| *Pledgor Guaranty in connection with First Lien Loan (May 2022)* [Attached as **Exhibit F** hereto at p.14 at § 6.2 and p. 15 at § 6.7]. | West 21st Street Member LLC's (Debtor's affiliate) notice address is c/o and copy BCLP; and West 21st Street Member LLC appointed BCLP as its authorized agent to receive service of process. |
| *Second Modification of First Lien Loan (July 2018)* [Attached as **Exhibit G** hereto at p. 2]. | BCLP named as counsel to Debtor and Mr. Chaitchik. |
| *BCLP Opinion Letter in connection with Second Modification of First Lien Loan (July 2018)* [Attached as **Exhibit H** hereto at p.1]. | BCLP acts as special counsel to Debtor, West 21st Street Member LLC (Debtor's affiliate), and Mr. Chaitchik. |
| *BCLP Opinion Letter in connection with Amended and Restated First Lien Loan (June 2017)* [Attached as **Exhibit I** hereto at p.1]. | BCLP acts as special counsel to Debtor and Mr. Chaitchik.<br><br>[Note: On Mr. Chaitchik's Guaranty, which is not attached to this Objection, Mr. Chaitchik's notice address is c/o BCLP and Mr. Chaitchik appointed BCLP as its authorized agent to receive service of process.] |
| *540 W 21st Development LLC Second Amended LLC Agreement (May 2017)* [Attached as **Exhibit J** hereto at Schedule 3.1-2]. | BCLP is notice address and copy address for Casco, 540 West 21st Street LLC, and 540 West 21st Street Investment III LLC. |
| *BCLP Opinion Letter in connection with First Lien Loan (Dec. 2015)* [Attached as **Exhibit K** hereto at p.1]. | BCLP acts as special counsel to Debtor and Mr. Chaitchik.<br><br>[Note: On Mr. Chaitchik's Guaranty, which is not attached to this Objection, Mr. Chaitchik appointed BCLP as its authorized agent to receive service of process.] |
| *Certificate of Incorporation of Casco (Dec. 2013)* [Attached as **Exhibit L** hereto at p. 3]. | BCLP acts as sole incorporator of Casco. |

17.     In the Combined Disclosure Statement and Plan, the Debtor discloses the following connections between Ray New York's counsel in this Chapter 11 Case, Fried Frank, and Casco, the manager of the Debtor: "Casco engaged Fried, Frank, Harris, Shriver & Jacobson LLP ("**Fried Frank**") to assist in identifying and partnering with a new property developer. Fried Frank had previously represented Casco in certain real estate related litigation and in connection with the Debtor's Operating Agreement, as it relates to zoning matters and the negotiation over air rights and space in the developed Property." *See* Plan, D.I. 306 at p. 25 of D.I. However, the Debtor fails to disclose that Fried Frank also represented two Debtor affiliates in May 2021 in the IHRA Litigation: 540 West 21st Street LLC and 540 West 21st Street Development LLC. The Debtor also fails to disclose Fried Frank's connection with the Debtor with respect to the High Line Transfer Corridor Development Rights Purchase and Sale Agreement (attached hereto as **Exhibit M**), in which Fried Frank is identified as the notice party for the Debtor. See Ex. M at § 15.

### iii.     The Debtor's Counsel Continues to Consult with Mr. Chaitchik and Mr. Teltch with respect to the First Lien Loan and other Chapter 11 Case Issues.

18.     In order to address concerns raised by Mr. Tadmor and other creditors regarding potential conflicts of interest related to Ray New York holding the First Lien Loan, the Debtor disclosed that "Debtor was represented in all negotiations in connection with these Chapter 11 cases by Tomer Jacob, Debtor's chief restructuring officer and Bryan Cave Leighton Paisner LLP, Debtor's finance and bankruptcy counsel." *See* Plan, D.I. 306 at p. 27 of D.I. However, the Debtor fails to disclose that the Debtor's counsel continues to consult—not just with Mr. Jacob—but also with Mr. Chaitchik and Mr. Teltch on negotiations in connection with the Chapter 11 Case. In BCLP's fee applications, there are substantially more communications with Mr. Chaitchik than

with Mr. Jacob.  Select examples of BCLP attorneys' communications with Mr. Chaitchik and Mr.

Teltch are provided on **Table 3**.

| Table 3. BCLP's Consultations with Uri Chaitchik and Noam Teltch (Select Examples) | |
|---|---|
| **Document/Source** | **Excerpts from BCLP Time Entries** |
| *BCLP First Fee Application* [D.I. 188 at Ex. A]. | • Exchange emails with U. Chaitchik, et al., regarding DIP (.2)<br>• Tend to creditor negotiations and exchange emails with U. Chaitchik, et al., regarding same.<br>• review and revise DIP term sheet and exchange emails with U. Chaitchik, et al., regarding same (.4).<br>• Review and revise CC/DIP budget, term sheet, and related pleadings and exchange emails with U. Chaitchik, et al., regarding same (.6)<br>• Multiple teleconferences with U. Chaitchik regarding the DIP (0.4)<br>• teleconference with U. Chaitchik regarding the DIP (0.2)<br>• teleconference with U. Chaitchik regarding the DIP and the transaction (0.2)<br>• Teleconference and correspondence with N. Teltch and U. Chaitchik regarding the transaction<br>• Telephone conference and electronic correspondence with U. Chaitchik, Noam and T. Jacob regarding budgetary issues for DIP negotiations<br>• Telephone conference with U. Chaitchik regarding senior secured's reduction of DIP loan amount.<br>• Teleconference with the U. Chaitchik regarding the DIP and the transaction.<br>• Teleconference with U. Chaitchik regarding the DIP Term Sheet.<br>• Review and analyze final DIP terms and exchange emails with U. Chaitchik, et al., regarding same.<br>• Telephone conference with U. Chaitchik and Noam regarding First Day Hearings and issues going forward with timing. |
| *BCLP Second Fee Application* [D.I. 218 at Ex. A]. | • Telephone conference with U. Chaitchik, T. Jacob, et al, regarding Gutkind adversary proceeding and secured lender disclosure.<br>• Electronic correspondence with U. Chaitchik regarding Ray New York's agreement to disclose connection between father in law and son in law. |

| | |
|---|---|
| | <ul><li>Telephone conferences and electronic correspondence with U. Chaitchik, N. Teltch and T. Jacob regarding actual amount due and owing to Ray New York.</li><li>Exchange emails with A. Feinberg, U. Chaitchik, et al, regarding Ray relationship/insider issues.</li><li>Exchange emails with U. Chaitchik, et al, regarding lender disclosure/status.</li><li>Conference with T. Jacob, U. Chaitchik, et al, regarding DZ/Gutkind/plan/Ray issues.</li><li>Telephone conferences with U. Chaitchik regarding plan voting and issues with possible objection by Dr. Gutkind.</li><li>Electronic correspondence with U. Chaitchik, N. Teltch and T. Jacob regarding resolution of UST confirmation objection.</li><li>U. Chaitchik, T. Jacob, et al, regarding plan/confirmation issues.</li><li>Review and revise term sheets regarding pot plan/extension and review and analyze prior plan documents (1.5); review and analyze DZ RSA (.2); exchange emails with T. Fox, et al, regarding Ray disclosure (.2); telephone conference with U. Chaitchik regarding status and strategy (.3); telephone conference with T. Jacob, U. Chaitchik, et al, regarding same (1.0); telephone conferences with J. Mazza, et al, regarding DZ issues (.5); telephone conferences with J. Rodburg, et al, regarding Ray issues (1.1); telephone conference with J. Tomer, U. Chaitchik, et al, regarding same (.8).</li><li>Telephone conferences and electronic correspondence with U. Chaitchik, N. Teltch and T. Jacob regarding strategy going forward with amended plans.</li><li>Telephone conference with U. Chaitchik, N. Teltch and T. Jacob regarding options moving forward with sale of parcel.</li><li>Teleconference with U. Chaitchik regarding the hearing and the remaining creditors.</li><li>Teleconference with U. Chaitchik regarding the transaction and the remaining open issues</li><li>Multiple teleconferences with U. Chaitchik regarding the transaction.</li><li>Electronic correspondence with Noam and Fried Frank regarding funding of first draw under DIP Lending Facility</li></ul> |

| | |
|---|---|
| *BCLP Third Fee Application* [D.I. 251 at Ex. A]. | • Telephone conferences and electronic correspondence with U. Chaitchik and N. Teltch regarding discovery issues and deposition testimony in related case litigation<br>• Prepare for and attend telephone conference with U. Chaitchik, N. Teltch and T. Jacob regarding discovery issues for adversary, claims objection and estimation.<br>• Telephone conference with U. Chaitchik, N. Teltch and T. Jacob regarding status of case and options going forward.<br>• Exchange emails with U. Chaitchik, et al, regarding Legion-sale confirmation and review and analyze PSA and draft amendment.<br>• Telephone conference with U. Chaitchik regarding debt purchase-Legion sale.<br>• Exchange emails with U. Chaitchik, et al, regarding sale issues (.4).<br>• Electronic correspondence with U. Chaitchik and others regarding potential issues with JLL claim.<br>• (Financing/Cash Collections) Exchange emails with U. Chaitchik, et al, regarding revised waterfall (.2) and review and revise same (.3)<br>• telephone conference with U. Chaitchik, N. Teltch, T. Jacob, et al, regarding plan/creditor negotiation/notice issue<br>• Telephone conference with U. Chaitchik regarding status/strategy.<br>• Multiple telephone conferences with U. Chaitchik regarding status/strategy (.3)<br>• Electronic correspondence with U. Chaitchik, N. Teltch and T. Jacob regarding tolling agreement to be executed<br>• Prepared for and attended telephone conference with U. Chaitchik, N. Teltch and T. Jacob regarding filing of claim by Y. Tandor<br>• Exchange emails with U. Chaitchik, et al, regarding Tadmor POCs.<br>• Telephone conference and electronic correspondence with U. Chaitchik and N. Teltch regarding list of foreign parties to be served and added to schedules, including details on White Imperium in particular.<br>• Telephone conference with U. Chaitchik, N. Teltch and T. Jacob regarding second amended disclosure statement and plan and strategy going forward.<br>• Teleconference and correspondence with U. Chaitchik regarding the Indemnification Language in the org structure from the deal. |

16

| | • Correspondence with U. Chaitchik and N. Teltch regarding the Indemnification in the documents; teleconference with N. Teltch regarding the Restructuring and the Indemnification. |
| --- | --- |

19.     The failure of the Debtor to disclose BCLP's substantial continued consultation with Mr. Chaitchik and Mr. Teltch with respect to Chapter 11 Case issues—while, at the same time, providing disclosures regarding the role of Mr. Jacob with respect Chapter 11 Case issues— is concerning; especially given the relationship between Mr. Chaitchik and his father-in-law's company, Ray New York, as the DIP lender and the substantial benefits that Mr. Chaitchik, Mr. Teltch, and Ray New York are set to receive under the Plan.

20.     Overall, the consistent failure to disclose insider transactions, insider connections, and continued consultation with insiders regarding insider transactions is evidence that the insider transactions are not being conducted on an arms-length basis as indicated in the Combined Disclosure Statement and Plan.

### III.     The Combined Disclosure Statement and Plan Fails to Adequately Disclose Information Regarding the Marketing and Proposed Sale of the Property.

21.     The proceeds from the sale of the Property are the sole asset funding distributions under the Plan (other than a small amount of Cash on hand). *See* Plan, D.I. 306 at § 6.2.  The Combined Disclosure Statement and Plan fails to disclose sufficient information regarding the Debtor's marketing and proposed sale of the Property for parties to effectively evaluate the Plan.

### A.  The Decrease in Purchase Price is Not Disclosed or Explained.

22.     The Combined Disclosure Statement and Plan fails to disclose that the new Purchase and Sale Agreement is for a reduced purchase price ($84.7 million) compared to the purchase price of $95.8 million obtained through the Debtor's marketing efforts over a year ago,

commencing in November 2022. *See* First Amended Combined Disclosure Statement and Plan, D.I. 90 at p. 81.

23.     The Debtor fails to disclose the reason for the reduced purchase price. More importantly, the Debtor fails to disclose whether it engaged in any additional marketing over the last 6 months to determine whether there are any additional potential purchasers for the Property at the original purchase price or even a higher purchase price. There is no disclosure that the Debtor conducted *any* marketing post-petition to obtain the highest and best value for the Property in connection with the new Purchase and Sale Agreement.

**B.  The Debtor's Dispute and Settlement with JLL is Not Disclosed.**

24.     The Debtor's primary evidence that the purchase price is market value is the "extensive" marketing engaged in by Jones Lang LaSalle Americas, Inc. ("**JLL**") as Debtor's agent to market and sell the Property. *See* Plan, D.I. 306 at p. 26 of D.I.  All of this extensive marketing was conducted pre-petition. *Id.*

25.     On the Petition Date, the Debtor marked the claim of JLL as disputed. *See* Voluntary Petition, D.I. 1 at pp. 13 and 29. The dispute with JLL and the nature of it is not disclosed in the Combined Disclosure Statement and Plan.

26.     From BCLP's time entries, it appears that BCLP engaged in settlement negotiations with JLL over its disputed claim. For example, the BCLP First Fee Application [D.I. 188 at Ex. A] contains the following time entries:

    a.   Electronic correspondence with M. Sawczuk regarding possible deal with JLL.

    b.   Telephone conference with U. Chaitchik regarding JLL issues.

    c.   Exchange emails with U. Chaitchik, et al., regarding JLL settlement.

    d.   Telephone conference and electronic correspondence with M. Fellows regarding settlement in principal with JLL.

    e.   Review and revise draft settlement agreement with JLL.

    f.   Review and regarding vise 9019 motion to compromise with JLL.

    g.   Review emails from JLL's counsel and feedback regarding settlement agreement.

    h.   Communication regarding JLL settlement.

    i.   Review and revise JLL settlement and exchange emails with U. Chaitchik, et al., regarding same.

    j.   Telephone conferences with J. Kleinman regarding potential resolution of JLL claim.

    k.   Revise conflict waiver with JLL in regard to potential settlement on Allowed Claim Amount.

27.    These settlement negotiations with JLL are not disclosed.

28.    Moreover, BCLP's *current* representation of JLL in other matters—while, at the same time, negotiating a settlement of JLL's almost $1 million claim on behalf of the estate—is not disclosed in the Combined Plan and Disclosure Statement. *See* BCLP Declaration, D.I. 101 at ¶ 6.A.

**C.**  **The Debtor's and its Insiders' and Affiliates' Connections with the Purchaser are Not Disclosed.**

29.    The Combined Plan and Disclosure Statement does not disclose whether the Debtor, its insiders (including Mr. Chaitchik, Mr. Teltch, and Ray New York), its affiliates, or any direct or indirect holder of the Debtor has any connection with the Purchaser, including any agreements with the Purchaser related to the development or subsequent sale of the Property.

Given the Debtor's consistent failure to make appropriate disclosures in this Chapter 11 Case, the Debtor should be required to make disclosures in this regard—in order for parties in interest to assess whether there are any further benefits to Debtor's insiders or affiliates from the sale of the Property.

**IV.    The Combined Disclosure Statement and Plan Fails to Adequately Disclose the Debtor's Connection with Great Feats.**

30.    The Combined Disclosure Statement and Plan attempts to dismiss Great Feats as "a third-party investor" [*see* Plan, D.I. 306 at p. 37 of D.I], despite evidence that Great Feats is under common control with the Debtor and is a key entity within the Debtor's matrix of special purpose entities to raise funds for the Project.

31.    The Debtor fails to disclose that (a) Great Feats, (b) Great Feat's predecessor Ambarfeld Limited, and (c) Eran Tadmor (Mr. Tadmor's predecessor), have all been identified on various corporate organization and holding charts of the Debtor and its affiliates. *See e.g.,* Ex. C attached hereto; the First Lien Loan Credit Agreement, D.I. 88-1 at Ex. E (pp. 80-87 of D.I. 88-1, with Eran Tadmor listed on p. 86).

32.    Additionally, the Debtor fails to disclose that Great Feats is ultimately controlled by Noam Teltch, one of the persons in control of the Debtor.

      a.    Great Feats obtained its shares in Debtor's affiliate via Ambarfeld Limited; Noam Teltch was the Proxy for Ambarfeld Limited. *See* Great Feats Shareholders Agreement attached as **<u>Exhibit N</u>** hereto at pp. 1 and 22 of the .PDF.

      b.    The Manager of Great Feats is Golden Drache Limited, which Manager provides instructions to the Escrow Agent. *See id.* at pp. 5 and 8. The Escrow Agent (Doron Levy, Esq.), confirmed that Mr. Teltch was the

contact person for and director of Golden Drache. *See* email exchange with Mr. Levy attached as **<u>Exhibit O</u>** hereto.

33.     The failure to adequately disclose the relationship between Mr. Teltch and Great Feats is yet another example of the Debtor's pattern of behavior of failing to disclose insider transactions in connection with this Chapter 11 Case.

34.     For the foregoing reasons, the Court should deny the Motion.

WHEREFORE, Mr. Tadmor respectfully requests that the Court enter an order denying the

Motion and granting such other and further relief that is just and proper.

Dated: January 24, 2024
Wilmington, Delaware

**BENESCH, FRIEDLANDER,**
        **COPLAN & ARONOFF LLP**

*/s/ Daniel N. Brogan*
Daniel N. Brogan (DE No. 5723)
John C. Gentile (DE No. 6159)
Juan E. Martinez (DE No. 6863)
1313 North Market Street, Suite 1201
Wilmington, DE 19801
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
E-mail: dbrogan@beneschlaw.com
        jgentile@beneschlaw.com
        jmartinez@beneschlaw.com

-and-

Lauren Friend McKelvey (admitted *pro hac vice*)
**Reitler Kailas & Rosenblatt LLP**
11921 Freedom Drive, Suite 550
Reston, Virginia 20190
Telephone: (212) 209-3050
Facsimile: (212) 371-5500
E-mail:lmckelvey@reitlerlaw.com

*Counsel to Yarden Tadmor, individually*
*and as trustee for the heirs of Eran Tadmor*