# EXHIBIT B

## (Blackline)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| 540 WEST 21ST STREET HOLDINGS LLC,[1] | Case No. 23-11053 (MFW) |
| Debtor. | |

### THIRD AMENDED COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION OF 540 WEST 21ST STREET HOLDINGS LLC

CHIPMAN BROWN CICERO & COLE LLP
William E. Chipman, Jr.
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone: (302) 295-0193
Email: Chipman@ChipmanBrown.com

BRYAN CAVE LEIGHTON PAISNER LLP
~~Jason J. DeJonker~~
William S. Hackney
161 North Clark Street, Suite 4300
Chicago, Illinois 60601
Telephone: (312) 602-5000
Fax: (312) 602-5050
Email: ~~jason.dejonker@bclplaw.com~~
william.hackney@bclplaw.com

---

[1] The Debtor is the following entity (the last four digits of its taxpayer identification number follows in parentheses): 540 West 21st Street Holdings LLC (1133). The Debtor's noticing address in this Chapter 11 case is c/o Bryan Cave Leighton Paisner LLP, Attn: Andrew E. Auerbach, 1290 Avenue of the Americas, New York, NY 10104-3300.

**PLAN EXHIBIT**

Exhibit A:  Purchase and Sale Contract dated December 28, 2023

Exhibit B:  Liquidation Analysis

Exhibit C: Fourth Amended and Restated Limited Liability Company Operating Agreement of 540 West 21st Street Holdings LLC dated September 15, 2017

Exhibit D:  Restructuring Support Agreement dated January 12, 2024

## TABLE OF CONTENTS

Page

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION AND
  COMPUTATION OF TIME ................................................................................. 3
Section 1.1   Defined Terms. ................................................................................. 3
Section 1.2   Rules of Interpretation and Computation of Time. ............................... 13

ARTICLE II. BACKGROUND ................................................................................. 14

Section 2.1   General Background. ......................................................................... 14
Section 2.2   The Chapter 11 Case. ....................................................................... 19
Section 2.3   Summary of Treatment of Claims and Equity Interests Under the Plan .... 20
Section 2.4   Potential Claims and Causes of Action. ............................................... 21
Section 2.5   Certain Federal Income Tax Consequences. .......................................... 22
Section 2.6   Certain Risk Factors to Be Considered. ............................................... 24
Section 2.7   Feasibility. ....................................................................................... 24
Section 2.8   Best Interests Test and Alternatives to this Combined Plan and
  Disclosure Statement. ..................................................................... 24
Section 2.9   Releases by the Debtor. ..................................................................... 26
Section 2.10  Bankruptcy Rule 9019 Settlement. ..................................................... 26

ARTICLE III. UNCLASSIFIED CLAIMS ................................................................. 28

Section 3.1   Administrative Claims. ....................................................................... 29
Section 3.2   Priority Tax Claims. .......................................................................... 29
Section 3.3   Professional Fee Claims. .................................................................... 30
Section 3.4   DIP Facility Claims. .......................................................................... 30
Section 3.5   Statutory Fees. ................................................................................. 31

ARTICLE IV. CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY
  INTERESTS .................................................................................................... 31

Section 4.1   Classification of Claims. ..................................................................... 31
Section 4.2   Class Identification. ........................................................................... 31
Section 4.3   Treatment and Voting Rights of Claims and Equity Interests. .................. 32
Section 4.4   Special Provision Governing Unimpaired Claims. ................................... 36
Section 4.5   Voting; Presumptions; Solicitation. ..................................................... 36
Section 4.6   Nonconsensual Confirmation .............................................................. 37
Section 4.7   Subordinated Claims. ........................................................................ 37
Section 4.8   No Waiver. ...................................................................................... 38

ARTICLE V. IMPORTANT DATES AND PROCEDURES ....................................................... 38

ARTICLE VI. MEANS FOR IMPLEMENTATION OF THE PLAN ...................................... 41

Section 6.1    DIP Facility............................................................................................. 41
Section 6.2    Sources of Consideration for Plan Distribution. .................................... 41
Section 6.3    Bankruptcy Rule 9019 Settlement. ........................................................ 41
Section 6.4    Sale.......................................................................................................... 41
Section 6.5    The Plan Administration Process and Wind Down. ............................... 42
Section 6.6    Corporate Action..................................................................................... 43
Section 6.7    Vesting of Assets. ................................................................................... 44
Section 6.8    Exemption from Certain Transfer Taxes and Recording Fees................ 44
Section 6.9    Effectuating Documents; Further Transactions. ..................................... 45
Section 6.10   Nonconsensual Confirmation.................................................................. 45
Section 6.11   Closing of the Chapter 11 Case. ............................................................ 45

ARTICLE VII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
          LEASES ......................................................................................................... 45

Section 7.1    Assumption and Rejection of Executory Contracts and Unexpired Leases. ........ 45
Section 7.2    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. ....... 47
Section 7.3    Contracts and Leases Entered into After the Petition Date...................... 48
Section 7.4    Insurance Policies. .................................................................................. 48
Section 7.5    Reservation of Rights............................................................................... 48
Section 7.6    Nonoccurrence of the Effective Date....................................................... 48

ARTICLE VIII. PROVISIONS GOVERNING DISTRIBUTIONS ........................................... 48

Section 8.1    Distribution on Account of Claims and Equity Interests Allowed as of the
          Effective Date. ........................................................................................ 48
Section 8.2    Distribution on Account of Claims and Equity Interests Allowed After the
          Effective Date. ........................................................................................ 49
Section 8.3    Timing and Calculation of Amounts to Be Distributed. ....................... 49
Section 8.4    Delivery of Distributions. ...................................................................... 50
Section 8.5    Distributions by Distribution Agent........................................................ 50
Section 8.6    Minimum Distributions............................................................................ 51
Section 8.7    Undeliverable Distributions. ................................................................... 51
Section 8.8    Compliance with Tax Requirements/Allocations. ................................. 52
Section 8.9    Surrender of Cancelled Instruments or Securities. ............................... 52
Section 8.10   Claims Paid or Payable by Third Parties. ............................................. 52

ARTICLE IX. PROCEDURES FOR RESOLVING DISPUTED CLAIMS OR EQUITY
          INTERESTS.................................................................................................... 53

Section 9.1    Allowance of Claims and Equity Interests.............................................. 53
Section 9.2    Claims Administration Responsibility..................................................... 53
Section 9.3    Estimation of Claims and Equity Interests.............................................. 54

Section 9.4    Adjustment to Claims and Equity Interests Without Objection............................ 54
Section 9.5    Disallowance of Certain Claims. .................................................................... 54
Section 9.6    Offer of Judgment. ......................................................................................... 55
Section 9.7    Amendments to Claims.................................................................................. 55
Section 9.8    No Interest on Disputed Claims. .................................................................... 55

ARTICLE X. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE .............................. 55

Section 10.1    Conditions Precedent to Confirmation of the Plan. ....................................... 55
Section 10.2    Conditions Precedent to the Effective Date. ................................................. 56
Section 10.3    Waiver of Conditions Precedent. .................................................................. 57
Section 10.4    Effect of Failure of Conditions Precedent. .................................................... 57
Section 10.5    Reservation of Rights..................................................................................... 57
Section 10.6    Substantial Consummation of the Plan. ......................................................... 57

ARTICLE XI. EFFECT OF CONFIRMATION ..................................................................... 57

Section 11.1    Binding Effect.................................................................................................. 57
Section 11.2    Release of Claims and Termination of Equity Interests; Compromise and
                Settlement of Claims, Equity Interests, and Controversies.................................. 58
Section 11.3    Releases by the Debtor. .................................................................................. 59
Section 11.4    Releases by Holders of Claims or Interests. .................................................... 60
Section 11.5    Exculpation and Limitation of Liability. ......................................................... 61
Section 11.6    Injunction. ....................................................................................................... 62
Section 11.7    Setoffs and Recoupment. ................................................................................ 62
Section 11.8    Retention of Causes of Action; Reservation of Rights. ..................................... 62
Section 11.9    Release of Liens. ............................................................................................. 63

ARTICLE XII. RETENTION OF JURISDICTION ................................................................. 63

ARTICLE XIII. MISCELLANEOUS PROVISIONS ................................................................ 65

Section 13.1    Immediate Binding Effect................................................................................. 65
Section 13.2    Amendments. .................................................................................................. 65
Section 13.3    Revocation or Withdrawal of the Plan.............................................................. 66
Section 13.4    Governing Law. ............................................................................................... 66
Section 13.5    Successors and Assigns.................................................................................... 67
Section 13.6    Consent Rights. ............................................................................................... 67
Section 13.7    Further Assurances.......................................................................................... 67
Section 13.8    Severability. .................................................................................................... 67
Section 13.9    Controlling Document. .................................................................................... 68
Section 13.10   Filing of Additional Documents. ..................................................................... 68
Section 13.11   Reservation of Rights....................................................................................... 68
Section 13.12   Service of Documents. ..................................................................................... 69
Section 13.13   Section 1125(e). .............................................................................................. 70
Section 13.14   Tax Reporting and Compliance. ....................................................................... 70

Section 13.15  Exhibits, Schedules, and Supplements.................................................................... 70

Section 13.16  Entire Agreement. ................................................................................................. 71

Section 13.17  Allocation of Payments......................................................................................... 71

ARTICLE XIV. RECOMMENDATION ....................................................................................... 71

# DISCLAIMER

THIS COMBINED PLAN AND DISCLOSURE STATEMENT WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTOR'S KNOWLEDGE, INFORMATION, AND BELIEF. NO GOVERNMENTAL AUTHORITY HAS PASSED ON, CONFIRMED, OR DETERMINED THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN. THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THIS COMBINED PLAN AND DISCLOSURE STATEMENT EXCEPT AS EXPRESSLY INDICATED HEREIN.

NOTHING STATED HEREIN SHALL BE DEEMED OR CONSTRUED AS, NOR IS INTENDED TO BE, AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY OR TO BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THIS COMBINED PLAN AND DISCLOSURE STATEMENT ON THE DEBTOR OR HOLDERS OF CLAIMS OR EQUITY INTERESTS. CERTAIN STATEMENTS CONTAINED HEREIN, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

UNLESS OTHERWISE INDICATED HEREIN, THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF. THE DELIVERY OF THIS COMBINED PLAN AND DISCLOSURE STATEMENT SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF.

HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS COMBINED PLAN AND DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE. THEREFORE, EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL, AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THIS COMBINED PLAN AND DISCLOSURE STATEMENT AND THE TRANSACTIONS CONTEMPLATED HEREBY.

NO PARTY IS AUTHORIZED TO GIVE ANY INFORMATION WITH RESPECT TO THIS COMBINED PLAN AND DISCLOSURE STATEMENT OTHER THAN THAT WHICH IS CONTAINED IN THIS COMBINED PLAN AND DISCLOSURE STATEMENT. NO REPRESENTATIONS CONCERNING THE DEBTOR OR THE VALUE OF ITS PROPERTY HAVE BEEN AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS COMBINED PLAN AND DISCLOSURE STATEMENT. ANY INFORMATION, REPRESENTATIONS, OR INDUCEMENTS MADE TO OBTAIN AN ACCEPTANCE OF THIS COMBINED PLAN AND DISCLOSURE STATEMENT OTHER THAN, OR INCONSISTENT WITH, THE INFORMATION CONTAINED HEREIN SHOULD NOT BE RELIED UPON BY ANY HOLDER OF A CLAIM OR EQUITY INTEREST. THIS COMBINED PLAN AND DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH

SECTION 1125 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3016(b), AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NON-APPLICABLE BANKRUPTCY LAWS. SEE SECTION 2.6 BELOW, ENTITLED "CERTAIN RISK FACTORS TO BE CONSIDERED", FOR A DISCUSSION OF CERTAIN CONSIDERATIONS IN CONNECTION WITH A HOLDER OF AN IMPAIRED CLAIM ENTITLED TO VOTE ON THE PLAN'S DECISION TO VOTE TO ACCEPT THE PLAN.

## INTRODUCTION

540 West 21st Street Holdings LLC ("**540 Holdings**" or the "**Debtor**") proposes this Combined Plan and Disclosure Statement[2] pursuant to Bankruptcy Code Sections 105, 1125, and 1129[3] for the disposition of the Debtor's Assets and distribution of the proceeds of the Assets to the Holders of Allowed Claims against the Debtor, together with a settlement of claims and controversies pursuant to Bankruptcy Rule 9019, as set forth herein. The Debtor is the proponent of this Combined Plan and Disclosure Statement within the meaning of Section 1129.

This Combined Plan and Disclosure Statement is a liquidating chapter 11 plan that contemplates the sale of substantially all of the Debtor's assets. This Combined Plan and Disclosure Statement provides that the Effective Date shall occur on or shortly after, among other things, the closing of the Sale. After the Effective Date and the administration of this Combined Plan and Disclosure Statement, the Debtor will be dissolved.

This Combined Plan and Disclosure Statement contains, among other things, (i) a discussion of the Debtor's history and business, (ii) a summary of the events leading to the Chapter 11 Case, (iii) the goal of this Chapter 11 Case, (iv) risk factors associated with this Chapter 11 Case, (v) a summary and analysis of this Plan, including the settlement and compromise pursuant to Bankruptcy Rule 9019 that provides the basis for certain creditor recoveries under the Plan, and (vi) certain other related matters.

This Combined Plan and Disclosure Statement constitutes a Plan for the resolution of outstanding Claims against and Equity Interests in the Debtor pursuant to the Bankruptcy Code. The Debtor is the proponent of this Combined Plan and Disclosure Statement within the meaning of Section 1129.

**Copies of this Combined Plan and Disclosure Statement and all other documents related to this Chapter 11 Case are available for review without charge through Notice and Claims Agent, at Team540West21st@stretto.com and with charge at https://www.pacer.gov/.**

ALL HOLDERS OF CLAIMS AGAINST THE DEBTOR ARE ENCOURAGED TO READ THIS COMBINED PLAN AND DISCLOSURE STATEMENT IN ITS ENTIRETY, AND TO CONSULT WITH AN ATTORNEY, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN

---

[2]    Capitalized terms used in this Combined Plan and Disclosure Statement and not otherwise defined herein have the meanings ascribed to such terms in Article I of this Combined Plan and Disclosure Statement.

[3]    References to sections herein shall refer to the Bankruptcy Code, unless otherwise set forth herein.

SECTION 1127, BANKRUPTCY RULE 3019, AND IN THE PLAN, THE DEBTOR
RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE, OR WITHDRAW THIS
COMBINED PLAN AND DISCLOSURE STATEMENT, OR ANY PART THEREOF, PRIOR
TO ITS SUBSTANTIAL CONSUMMATION.

## ARTICLE I.

## DEFINED TERMS, RULES OF INTERPRETATION AND COMPUTATION OF TIME

Section 1.1    *Defined Terms.*

The following terms shall have the respective meanings specified below when used in
capitalized form in this Combined Plan and Disclosure Statement:

1.      "*540 Holdings*" has the meaning set forth in the introductory section of
this Combined Plan and Disclosure Statement.

2.      "*9019 Settlement*" has the meaning ascribed to its in Section 2.10 of the Plan.

3.      "*Administrative Claims*" means any and all requests for payment of costs or
expenses of the kind specified in Section 503(b) and entitled to priority under Section 507,
including, but not limited to: (a) the actual and necessary costs and expenses incurred after the
Petition Date and through the Effective Date of preserving the Estate and operating the business
of the Debtor; (b) Bankruptcy Fees; (c) Cure Costs; and (d) Allowed Professional Fee Claims.

4.      "*Administrative Claims Bar Date*" means the first Business Day that is the 30th
day after notice of entry of the Confirmation Order is filed with the Bankruptcy Court or such later
date as may be established by an order of the Bankruptcy Court.

5.      "*Adversary Proceeding*" has the meaning set forth in Section 2.2 of this Combined
Disclosure Statement and Plan.

6.      "*Affiliate*" means an affiliate as defined in Section 101(2).

7.      "*Allowed*" means, with respect to any Claim or Equity Interest: (a) any Claim or
Equity Interest arising on or before the Effective Date that is (i) (A) timely filed by the applicable
Bar Date or (B) as to which there exists no requirement for the Holder of such Claim to file such
Claim under the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order; and (ii) (A)
as to which no objection to allowance, priority, or secured status, and no request for estimation or
other challenge, including pursuant to Section 502(d) or otherwise, has been instituted by the
applicable objection deadline, or (B) as to which any objection has been determined in favor of
the respective Holder by Final Order, but only to the extent allowed by Final Order; (b) any Claim
or Equity Interest that is compromised, settled, or otherwise resolved pursuant to the authority of
the Debtor; (c) any Claim or Equity Interest as to which the liability of the Debtor, as applicable,
and the amount thereof are determined by a Final Order of a court of competent jurisdiction other
than the Bankruptcy Court; or (d) any Claim or Equity Interest expressly allowed hereunder;
*provided, however*, that notwithstanding the foregoing, unless expressly waived by the Plan, the

3

Allowed amount of Claims or Equity Interests shall, to the extent applicable, be subject to the limitations under or maximum amounts permitted by the Bankruptcy Code, including Sections 502 or 503.

8.    "*Assets*" means all of the Debtor's right, title, and interest of any nature in property of any kind, wherever located, including, but not limited to, as specified in Section 541.

9.    "*Avoidance Actions*" means any and all actual or potential claims and causes of action to avoid a transfer of property or an obligation incurred by the Debtor pursuant to any applicable Section, including Sections 502, 510, 542, 544, 545, 547 through 550, 553, and 724(a), or under similar or related state, federal, or foreign Law, including fraudulent transfer or voidable transaction Laws.

10.    "*Ballot*" means a ballot upon which certain Holders of Impaired Claims that are entitled to vote may, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process, and, if applicable, make such other elections as may be made thereon.

11.    "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*., as may be amended, as in effect on the date hereof.

12.    "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware, or such other court having jurisdiction over the Chapter 11 Case or any proceeding within, or appeal of an order entered in, the Chapter 11 Case.

13.    "*Bankruptcy Fees*" means any and all fees or charges assessed against any Estate under section 1930 of title 28 of the United States Code.

14.    "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, promulgated under section 2075 of title 28 of the United States Code and the Official Bankruptcy Forms, and the general, local, and chambers rules of the Bankruptcy Court, together with any amendments made thereto subsequent to the Petition Date, to the extent that any such amendments are applicable to the Chapter 11 Case.

15.    "*Business Day*" means any day, other than a Saturday, Sunday or a "legal holiday" (as such term is defined in Bankruptcy Rule 9006(a)).

16.    "*Casco*" means Casco Development Corp.

17.    "*Casco Claims*" means any and all Claims of Casco against the Debtor arising prior to the Petition Date.

18.    "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

19.     "***Causes of Action***" means any and all actions, causes of action, suits, claims, Claims, interests, damages, remedies, demands, rights, debts, dues, sums of money, accounts, reckonings, rights to legal remedies, rights to equitable remedies, rights to payment, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, demands, obligations, liabilities, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, franchises, and trespasses of any kind or character whatsoever of or belonging to the Estate, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, reduced or not to judgment, liquidated or unliquidated, fixed, matured, unmatured, suspected, unsuspected, disputed, undisputed, secured, or unsecured and whether asserted or assertable directly or indirectly or derivatively, in Law, equity, or otherwise. For the avoidance of doubt, "Causes of Action" includes, but is not limited to: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by Law; (b) the right to object to or otherwise contest Claims or Equity Interests; (c) Claims pursuant to Section 362; (d) Avoidance Actions; and (e) such Claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in Section 558.

20.     "***Chapter 11 Case***" means the case pending for the Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

21.     "***Claim***" means a claim as defined in Section 101(5) against the Debtor, whether or not asserted.

22.     "***Claims Bar Date***" means, as applicable, the Administrative Claims Bar Date and any other date or dates to be established by an Order of the Bankruptcy Court by which Proofs of Claim must be filed.

23.     "***Claims Register***" means the official register of Claims maintained by the Notice and Claims Agent.

24.     "***Class***" means a group of Claims or Equity Interests classified together pursuant to Section 1122(a)(1).

25.     "***Class 3 Carve-Out***" means subject to and conditioned on Class 3 voting to accept the Plan, and pursuant to and as a direct byproduct of the settlement set forth in Section 6.4 of the Plan, an amount of cash to be funded by the First Lien Lender from its Class 2 distributions sufficient to ensure that Class 3 receives $12,750,000 *plus* one-sixth of the Excess Amount (if any[4]) on the Effective Date; however, DZ 21st Street shall contribute $258,720 from its Class 3 distribution to fund the Reserve Fund.

26.     "***Class 4 Carve-Out***" means subject to and conditioned on Class 4 voting to accept the Plan, and pursuant to and as a direct byproduct of the settlement set forth in Section 6.4 of the Plan, an amount of cash to be funded by the First Lien Lender from its Class 2 distributions

---

[4]     Based on the Sale Proceeds and distributions contemplated under this Plan, it is anticipated that the Excess Amount will be zero.

sufficient to ensure that Class 4 receives $4,000,000 on the Effective Date; however, Gutkind shall contribute $81,800 from his Class 4 distribution to fund the Reserve Fund.

27.     "*Class 5 Carve-Out*" means pursuant to and as a direct byproduct of the settlement and compromise set forth in Section 6.4 of the Plan, an amount of cash to be funded by the First Lien Lender from its Class 2 distributions sufficient to ensure that Class 5 receives $2,205,000.00 on the Effective Date, which is 100% recovery on account of the aggregate amount of the Stipulated Allowed Class 5 Claims.

28.     "*Class 6 Carve-Out*" means pursuant to and as a direct byproduct of the settlement and compromise set forth in Section 6.4 of the Plan, an amount of cash to be funded by the First Lien Lender from its Class 2 distributions sufficient to ensure that Class 6 receives $675,000.00 on the Effective Date.

29.     "*COD*" means cancellation of indebtedness.

30.     "*COD Income*" means income from cancellation of indebtedness as defined by Internal Revenue Code §61(a)(11).

31.     "*Combined Plan and Disclosure Statement*" means this third amended combined disclosure statement and chapter 11 plan of liquidation, as may be amended, including, without limitation, all exhibits, supplements, appendices, and schedules hereto, either in their present form or as the same may be altered, amended, or modified from time to time in accordance with the terms hereof, the Bankruptcy Code, and the Bankruptcy Rules

32.     "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order.

33.     "*Confirmation Date*" means the date upon which the Confirmation Order is entered on the Bankruptcy Court's docket.

34.     "*Confirmation Hearing*" means the hearing to be held by the Bankruptcy Court to consider confirmation of the Plan under Section 1129.

35.     "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129.

36.     "*Consenting Creditors*" means the First Lien Lender, DZ 21st Street, Gutkind ~~ad~~and IRHA.

37.     "*Consummation*" means the occurrence of the Effective Date.

38.     "*Cure Cost*" means all amounts, including an amount of $0.00, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties to an Executory Contract or Unexpired Lease) and all other obligations required to cure any non-monetary defaults under any Executory Contract or Unexpired Lease that is to be assumed by the Debtor pursuant to Sections 365 and 1123.

39.    "***D&O Insurance***" means all unexpired directors', managers', and officers' liability insurance policies (including any "tail policy") of the Debtor with respect to the Debtor's directors, managers, officers, and employees.

40.    "***Debtor***" has the meaning set forth in the introductory paragraph of this Combined Plan and Disclosure Statement.

41.    "***Disclosure Statement***" means the disclosure statement, as it may be amended, modified, or supplemented from time to time, that is embodied within this Combined Plan and Disclosure Statement, and that is prepared and distributed in accordance with Sections 1125, 1126(b), and 1145, Bankruptcy Rule 3018, and other applicable Laws.

42.    "***Disputed***" means, with respect to any Claim or Equity Interest, except as otherwise provided herein, a Claim or Equity Interest that is not yet Allowed. To the extent the Debtor disputes only a portion of a Claim or Equity Interest, such Claim or Equity Interest shall be deemed Allowed in the amount the Debtor does not dispute, if any, and Disputed as to the balance of such Claims or Equity Interests.

43.    "***Disputed Investor Claims***" means any Claim filed on or before the Claims Bar Date applicable to such Claim that is an unsecured Claim (other than an Administrative Claim, an Intercompany Claim, a Priority Tax Claim or Other Priority Claim) that is not otherwise treated in Class 3, Class 4, Class 5 or Class 6 of the Plan, including any such Claim that arises out of or is related to a direct or indirect contribution, investment or payment of funds to related, non-debtor affiliates of the Debtor, which created obligations of those related, non-debtor affiliates of the Debtor or that otherwise relate to the business of the Debtor. For the avoidance of doubt, Disputed Investor Claims include the Claims of Mr. Yarden Tadmor.

44.    "***Distribution Agent***" means Plan Administrator, or any Person designated by Plan Administrator, in the capacity as distribution agent under the Plan.

45.    "***Distribution Date***" means the date on which Holders of Claims are eligible to receive distributions under the Plan.

46.    "***Distribution Record Date***" means the date for determining which Holders of Allowed Claims are eligible to receive distributions under the Plan, which date shall be: (a) the Confirmation Date; or (b) such other date as designated by an order of the Bankruptcy Court.

47.    "***DZ 21st Street***" means DZ 21st Street, LLC.

48.    "***DZ Claims***" means any and all Claims of DZ 21st Street against the Debtor arising prior to the Petition Date.

49.    "***Effective Date***" means the date that is the first Business Day upon which all conditions to the effectiveness of the Plan set forth in Article X hereof have been satisfied or

waived in accordance with the terms of the Plan. Upon the occurrence of such date, the Debtor shall file a notice with the Bankruptcy Court indicating that the Effective Date has occurred.

50.     "***Entity***" means an "entity" as defined in Section 101(15).

51.     "***Equity Interest***" means any issued, unissued, authorized, or outstanding shares of common stock, preferred stock, membership, limited liability company interests (whether certificated or uncertificated), or other instrument evidencing an ownership interest in the Debtor, whether or not transferable, together with any warrants, equity-based awards, or contractual rights to purchase or acquire such interests at any time, and all rights arising with respect thereto that existed immediately before the Petition Date.

52.     "***Estate***" means the estate created for the Debtor pursuant to Section 541 upon the commencement of the Chapter 11 Case.

53.     "***Estimation Motion***" means the motion filed by the Debtor at Docket No. 171 on October 6, 2023, to estimate certain Claims of investors in the Debtor or its affiliates.

54.     "***Excess Amount***" means the greater of (a) the aggregate amount of any distribution that would be made hereunder to First Lien Claims after the funding the Class 3 Carve-Out (up to $12,750,000 and not including any Excess Amount), the Class 4 Carve-Out ~~and,~~ the Class 5 Carve-Out and the Class 6 Carve-Out, minus $~~68~~66 million, and (b) zero.

55.     "***Exculpated Parties***" means the Debtor and its directors, officers, employees, attorneys, investment bankers, financial advisors, restructuring consultants, and other professionals, advisors, and agents.

56.     "***Executory Contract***" means a contract or lease to which the Debtor is a party that is subject to assumption, assumption and assignment, or rejection under Sections 365 or 1123.

57.     "***Final Order***" means, as applicable, an order, ruling, or judgment of the Bankruptcy Court or any other court of competent jurisdiction, as applicable, which has not been reversed, vacated, or stayed and as to which the time to appeal, petition for certiorari, or move for new trial, stay, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or motion for new trial, stay, reargument, or rehearing is pending, or as to which any right to appeal, petition for certiorari, move for a new trial, move for a stay, reargue, or rehear has been waived in writing in form and substance satisfactory to the Debtor or, in the event that an appeal, writ of certiorari, new trial, stay, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court or other court of competent jurisdiction (as applicable) has been determined by the highest court to which such order was appealed, or certiorari, reargument, or rehearing has been denied and the time to take any further appeal, petition for certiorari, or move for new trial, stay, reargument, or rehearing has expired; *provided, however*, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state or provincial court rules, may be filed with respect to such order, ruling, or judgment shall not cause an order, ruling, or judgment not to be a Final Order.

58.    "***First Lien Claim***" means any and all Claims against the Debtor related to, arising out of, arising under, or arising in connection with the First Lien Loan Agreement Documents.

59.    "***First Lien Lender***" means Ray New York LLC, or any successor or assignee to and under the First Lien Loan Agreement.

60.    "***First Lien Loan***" means the secured loan evidenced by the First Lien Loan Agreement.

61.    "***First Lien Loan Agreement***" means that certain Promissory Note dated December 22, 2015 in the original principal amount of $20,000,000 governed by that certain Loan Agreement of the same date, by and among 540 Holdings, as borrower, and Original First Lien Lender, as lender, including all agreements, notes, instruments, and any other documents delivered pursuant thereto or in connection therewith, as amended, supplemented, restated, or otherwise modified prior to the Petition Date.

62.    "***First Lien Loan Agreement Documents***" means the First Lien Loan Agreement together with any other agreements and documents executed or delivered in connection therewith, each as amended, restated, amended and restated, supplemented, or otherwise modified prior to the Petition Date.

63.    "***General Unsecured Claim***" means any unsecured Claim, including Trade Claims (other than an Administrative Claim,  an Intercompany Claim, a Priority Tax Claim or Other Priority Claim) against the Debtor, including (a) Claims arising from the rejection of Unexpired Leases and Executory Contracts to which the Debtor is a party; and (b) Claims arising from any litigation or other court, administrative, or regulatory proceeding, including damages or judgments entered against, or settlement amounts owing by, the Debtor related thereto.

64.    "***General Unsecured Claim Recovery Pool***" means the Cash remaining from the Sale after payment in full of the DIP Facility Claims, First Lien Claims (for the avoidance of doubt, payment in full of the First Lien Claims means the First Lien Lender receives at least $90,688,369.00 in cash after accounting for any carve-outs or reserves), Other Secured Claims, Administrative Claims, Allowed Priority Tax Claims, statutory fees and any other Secured Claims that are secured by the Debtor's assets sold in connection with the Sale.

65.    "***General Unsecured Trade Claim***" means any General Unsecured Claim (other than DZ Claims, Gutkind Claims, IRHA Claims and Disputed Investor Claims).

66.    "***Governmental Unit***" means a "governmental unit" as defined in Section 101(27).

67.    "***Gutkind***" means Dr. Efraim Gutkind.

68.    "***Gutkind Claims***" means any and all Claims of Gutkind against the Debtor.

69. "***Gutkind Note***" has the meaning set forth in Section 2.1(b) of this Combined Disclosure Statement and Plan.

70. "***Holder***" means the beneficial holder of any Claim or Equity Interest.

71. "***Impaired***" means, with respect to a Claim or Equity Interest, such Claim or Equity Interest that falls within a Class of Claims or Equity Interests that is impaired within the meaning of Section 1124.

72. "***Indemnification Obligation***" means the Debtor's obligation to indemnify, reimburse, or otherwise hold financially harmless its Indemnified Parties with respect to or based upon any act or omission taken or omitted in any of the relevant capacities, or for or on behalf of the Debtor, pursuant to and to the maximum extent provided by the Debtor's certificate of incorporation, certificate of formation, bylaws, similar corporate documents, and applicable law, as in effect as of the Effective Date.

73. "***Indemnified Parties***" means the Debtor's current and former directors, officers, managers, employees, attorneys, other professionals, and agents, and such current and former directors', officers', managers', and employees' respective Affiliates to the extent set forth herein, that were employed or served in such capacity as of or prior to the Effective Date and that are entitled to be indemnified by the Debtor pursuant to, among other things, the Debtor's bylaws, certificates of incorporation (or other formation documents), board resolutions, employment contracts, or other agreements.

74. "***Intercompany Claims***" means any and all Claims held by any of the Debtor's Affiliates against the Debtor. For the avoidance of doubt, Intercompany Claims shall exclude any DZ Claims.

75. "***IRHA***" means IRHA Investment Limited.

76. "***IRHA Claims***" means any and all ~~claims~~Claims of IRHA against the Debtor.

77. "***Law***" means any federal, state, local, or foreign "law" (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction.

78. "***Lien***" means a "lien" as defined in Section 101(37).

79. "***Notice and Claims Agent***" means Stretto, Inc., in its capacity as noticing, claims, and solicitation agent for the Debtor.

80. "***Operating Agreement***" means the Fourth Amended and Restated Limited Liability Company Operating Agreement of 540 West 21st Street Holdings LLC dated September 15, 2017.

81. "***Original First Lien Lender***" means Bank Hapoalim B.M.

82.    "***Other Priority Claims***" means any and all Claims against the Debtor entitled to priority in right of payment under Section 507(a) that are not Administrative Claims, Priority Tax Claims, or Professional Fee Claims.

83.    "***Other Secured Claims***" means any Secured Claims against the Debtor that are not First Lien Claims.

84.    "***Person***" means a "person" as defined in Section 101(41).

85.    "***Petition Date***" means the date on which the Debtor filed a petition for relief, thereby commencing the Chapter 11 Case.

86.    "***Plan***" shall mean this joint plan of liquidation under chapter 11 of the Bankruptcy Code, as it may be amended, modified, or supplemented from time to time, that is embodied within this Combined Plan and Disclosure Statement, and that is prepared and distributed in accordance with Sections 1125, 1126(b), and 1145, Bankruptcy Rule 3018, and other applicable Laws.

87.    "***Plan Administration Assets***" means all of the Debtor's assets not sold to Purchaser, except for Sale Proceeds.

88.    "***Plan Administrator***" means 540 Holdings or a form of 540 Holdings that, in the discretion of the Debtor, with the consent of the First Lien Lender which consent shall not be unreasonably withheld, shall be established on or before the Effective Date for the benefit of holders of Claims against, and Equity Interests in, the Debtor in connection with the distribution of the Sale Proceeds and any other assets of the Debtor, and otherwise for the administration of the Plan for the Debtor and the Estate.

89.    "***Plan Documents***" means any and all documents, other than this Combined Plan and Disclosure Statement, to be executed, delivered, or performed in connection with the occurrence of the Effective Date, subject to any consent rights set forth in the Plan.

90.    "***Plan Objection Deadline***" means the deadline established pursuant to the Bankruptcy Code, Bankruptcy Rules, or Order of the Court for parties to object to Confirmation of the Plan.

91.    "***Plan Supplement***" means the compilation of documents, schedules, and exhibits to this Combined Plan and Disclosure Statement, and forms thereof, to the Combined Plan and Disclosure Statement to be filed by the Debtor no later than the Plan Supplement Filing Date, as the same may be amended, modified, or supplemented.

92.    "***Plan Supplement Filing Date***" means the date that is five calendar days prior to the Plan Objection Deadline, or such later date as is determined by the Debtor.

93.    "***Priority Tax Claims***" means any and all Claims against the Debtor of the kind specified in Section 507(a)(8).

94.     "***Professionals***" means (a) any and all professionals employed in the Chapter 11 Case pursuant to Sections 327, 328, 363, or 1103, or otherwise, and (b) any and all professionals or other Entities seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to Section 503(b)(4).

95.     "***Professional Fee Claim***" means any Claim of a Professional seeking payment of compensation for services rendered or reimbursement of expenses incurred on or after the Petition Date and through and including the Confirmation Date, under Sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5).

96.     "***Proof of Claim***" means a "proof of claim," as defined in Bankruptcy Rule 3001, or a motion or request for payment of fees, costs, or expenses made pursuant to Section 503 filed in the Chapter 11 Case.

97.     "***Property***" means the property to be sold to Purchaser pursuant to the Purchase and Sale Contract.

98.     "***Pro-Rata***" means as to a particular holder of an Allowed General Unsecured Claim at any date, the ratio that the amount of such claim bears to the total amount of all General Unsecured Claims, in the aggregate, determined as if all disputed General Unsecured Claims were allowed claims so long as such claims remain disputed.

99.     "***Purchase and Sale Contract***" means that certain Purchase and Sale Contract, dated December 28, 2023, by and between Purchaser and 540 Holdings, as thereafter may be amended or modified, pertaining to the Sale.

100.     "***Purchaser***" means 550W21 Owner LLC.

101.     "***Reinstated***" or "***Reinstatement***" means, with respect to Claims and Equity Interests, the treatment provided for in Section 1124.

102.     "***Rejection Schedule***" means the schedule (as may be amended), if any, of Executory Contracts and Unexpired Leases (including any amendments or modifications thereto) that the Debtor will reject pursuant to the Plan and which will be included in the Plan Supplement.

103.     "***Related Parties***" means, with respect to any Entity, such Entity's predecessors, successors, assigns, affiliates (whether by operation of Law or otherwise) and subsidiaries, and each of their respective general partners, management companies, managed accounts, funds, or investment vehicles, and each of the foregoing's respective current and former equity holders, officers, directors, managers, management committee directors, principals, shareholders, members, partners, general partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, in each case acting in such capacity, including in their capacity as directors of the Debtor, as applicable.

12

104. "*Released Parties*" means, collectively: (a) the Debtor; (b) First Lien Lender; (c) Casco; (d) Purchaser; (e) DZ 21st Street, (f) Gutkind, (g) IRHA, and (h) the Related Parties of each of the foregoing Entities in clauses (a) through (g) of this definition.

105. "*Reserve Fund*" means a fund that shall be established in accordance with Sections 6.3 and 6.4 of the Plan, consisting of Cash in amount equal to $1,749,530.32, of which $1,409,010.32 shall be funded by the First Lien Lender and the remainder of which shall be funded from the Class 3 Carve-Out and Class 4 Carve-Out of DZ 21st Street and Gutkind, respectively.

106. "*Retained Professional*" means an Entity: (a) employed in the Chapter 11 Case pursuant to a Final Order in accordance with Sections 327, 363, or 1103 and to be compensated for services rendered prior to or on the Effective Date pursuant to (i) Sections 327, 328, 329, 330, or 331 or (ii) an order entered by the Bankruptcy Court authorizing such retention; or (b) for which the Bankruptcy Court has allowed compensation and reimbursement pursuant to Section 503(b)(4).

107. "*Sale*" means the sale of the Property as set forth herein and pursuant to the Purchase and Sale Contract.

108. "*Sale Proceeds*" means the net proceeds actually received by the Debtor upon the closing of the Sale.

109. "*Secured Claim*" means any and all Claims against the Debtor that (a) are secured by a Lien on, or security interest in, property of the Debtor, or that has the benefit of rights of setoff under Section 553, which Lien or right of setoff, as the case may be, is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law, but only to the extent of the value of such Holder's interest in the Debtor's interest in such property, or to the extent of the amount subject to setoff, which value shall be determined as provided in Section 506, or (b) otherwise Allowed pursuant to the Plan as a Secured Claim.

110. "*Securities Act*" means the Securities Act of 1933, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

111. "*Security*" has the meaning ascribed to such term in Section 101(49).

112. "*Stamp or Similar Tax*" means any stamp tax, recording tax, personal property tax, conveyance fee, intangibles or similar tax, real estate transfer tax, sales tax, use tax, transaction privilege tax (including, without limitation, such taxes on prime contracting and owner-builder sales), privilege tax (including, without limitation, privilege taxes on construction contracting with regard to speculative builders and owner builders), and any other similar tax imposed or assessed by any Governmental Unit.

113. "*Stipulated Allowed Class 5 Claim*" means the amount of the Allowed Claims agreed to between the Debtor and each individual Holder of a Claim in Class 5.

13

114.   "***Subordinated Claim***" means any Claim that is subject to (a) subordination under Section 510(b), or (b) equitable subordination, as the Bankruptcy Court determines in a Final Order.

115.   "***Tax Code***" means the Internal Revenue Code, as amended.

116.   "***Trade Claim***" means any Claim of a vendor who extended trade debt to the Debtor on a Post-Petition basis.

117.   "***Unclaimed Distribution***" means any distribution under the Plan on account of an Allowed Claim to a Holder that has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Debtor of an intent to accept a particular distribution; (c) responded to the Debtor's request for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

118.   "***Unexpired Lease***" means a lease to which the Debtor is a party that is subject to assumption, assumption and assignment, or rejection under Section 365.

119.   "***Unimpaired***" means, with respect to any Claim or Equity Interest, such Claim or Equity Interest that is not Impaired.

120.   "***U.S. Trustee***" means the United States Trustee for the District of Delaware.

121.   "***Wind Down***" means the process to wind down, dissolve, and liquidate the Debtor and the Estate and distribute any of the Sale Proceeds and remaining assets in accordance with the Plan through Plan Administrator.

Section 1.2   *Rules of Interpretation and Computation of Time.*

(a)   For purposes herein: (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender; (ii) unless otherwise specified herein, any reference herein to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (iii) unless otherwise specified herein, any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified, or supplemented; (iv) unless otherwise specified herein, all references herein to "Articles" and "Exhibits" are references to Articles and Exhibits, respectively, of this Combined Plan and Disclosure Statement; (v) the words "herein," "hereof," "hereunder," and "hereto" refer to this Combined Plan and Disclosure Statement in its entirety rather than to a particular portion or section of this Combined Plan and Disclosure Statement; (vi) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitations, and shall be deemed to be followed by the words "without limitation"; (vii) references to "shareholders," "directors," and/or "officers" shall also include "members"

14

and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company Laws; (viii) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (ix) unless otherwise specified herein, the rules of construction set forth in Section 102 shall apply; (x) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (xi) references to docket numbers are references to the docket numbers of documents filed in the Chapter 11 Case under the Bankruptcy Court's CM/ECF system; and (xii) except as otherwise provided herein, any references to the "Effective Date" shall mean the Effective Date or as soon as reasonably practicable thereafter.

(b)    The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein, unless otherwise provided for herein.

(c)    All references in this Combined Plan and Disclosure Statement to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

(d)    Any immaterial effectuating provision may be interpreted by the Debtor in a manner that is consistent with the overall purpose and intent of this Combined Plan and Disclosure Statement without further Final Order of the Bankruptcy Court.

## ARTICLE II.

## BACKGROUND

Section 2.1    *General Background.*

(a)    Overview of the Debtor's Business

The Debtor is headquartered in New York, New York and is a real estate holding company formed specifically to facilitate the financing for, and construction of a mixed-use development at the Property.

The Debtor purchased the Property with the intent to obtain financing to construct a 20 story, 275-foot tall ultra-luxury mixed use condominium building. The proposed development would include 34 residential units with a total area of 116,818 square feet, a 4,682 square foot retail component and a 48,737 square foot gallery.

(b)    The Debtor's Organization and Capital Structure

Organization and Equity Structure

The Debtor's corporate structure is as follows:

The Debtor is owned by DZ 21st Street (8% interest) and West 21st Street Member LLC (92% interest). West 21st Street Member LLC is wholly owned by West 21st Street Investment Member LLC. West 21st Street Investment Member LLC is wholly owned by 540 West 21st Development

LLC. 540 West 21st Development LLC is owned by 540 West 21st Street LLC (83.65% interest) and 540 West 21st Street Investments III LLC (16.35%). 540 West 21st Street LLC is owned by certain institutional and individual members, including Casco Development Corp. 540 West 21st Street Investments III LLC is owned by 540 West 21st Street Investments II LLC and 540 West 21st New General LLC. 540 West 21st New General LLC is wholly owned by 540 West 21st Street Investments II LLC. 540 West 21st Street Investments II LLC is owned by certain institutional and individual members and Casco Development Corp. Casco Development Corp. is wholly owned by NuCapital Management Inc.

Organizational Chart



Set forth above is an organizational chart for the Debtor and its direct and indirect equity holders.

Management and Control

The Debtor is managed through several other limited liability companies owned by Casco Development Corp. ("**Casco**"). Mr. Uri Chaitchik, a minority owner (the "**Minority Casco Owner**") of less than 10% of the membership interests in Casco is the son-in-law of a member and owner of Ray New York. Casco is the managing member of all of the limited liability companies that manage the Debtor and decision-making authority at all levels is vested in the two remaining owners of Casco, with the unanimous consent of both remaining owners required to take any corporate action.

Capital Structure

Secured Financing

To finance the proposed development at the Property, on December 22, 2015, the Debtor obtained the First Lien Loan, in the original principal amount of $20,000,000 from Original First Lien Lender secured by a mortgage on the Property. Pursuant to the First Lien Loan Agreement, interest accrues on the First Lien Loan at a rate of 5%. After the First Lien Loan was entered into, the Original First Lien Lender provided additional amounts to the Debtor to fund the development of the Property. On June 28, 2017, the principal loan balance of the First Lien Loan was increased to $30,000,000 and on June 6, 2018, the principal loan balance of the First Lien Loan was increased to $50,000,000.

On or before April 28, 2021, the Debtor defaulted on its obligations under the First Lien Loan Agreement and as a result, the First Lien Loan began to accrue default interest at a rate of 18%. On April 7, 2022, the defaulted First Lien Loan was sold by the Original First Lien Lender at a price of $52,000,000, which reflects a par price of $50,000,000 for the outstanding principal balance plus a discounted price of $2,000,000 for the accrued interest, to Ray New York, LLC (the First Lien Lender), an entity that is owned by the father-in-law of the Minority Casco Owner. Upon the sale, SL Green Realty Corp. was put in place to act as Servicer with respect to the loan. After the acquisition of the First Lien Loan, the First Lien Lender provided additional financing under the terms of the First Lien Loan Agreement, as amended, as follows: $2,100,000 in May 2022, $1,000,000 in July 2022 and $880,000 in August 2023. As of April 29, 2024, the anticipated effective date of the Plan, the outstanding balance of the First Lien Loan is expected to be not less than $90,688,369.00 (including principal, accrued interest and accrued default interest), inclusive of fees and costs owing to the First Lien Lender.

Unsecured Trade Claims and Unsecured Financing of the Debtor's affiliates

As of the Petition Date, the Debtor also carries approximately $3,500,000.00 in general unsecured debt obligations to its trade creditors.

West 21st Street Investment Member LLC obtained approximately $5 million in unsecured financing by issuing a promissory note to Gutkind (the "**Gutkind Note**").

540 West 21st Development LLC obtained approximately $32 million in unsecured financing from various individuals and entities, many of which are also equity holders in 540 West 21st Development LLC's parent entities, 540 West 21st Street LLC and 540 West 21st Street Investments II, LLC.

540 West 21st Street LLC obtained approximately $178 million in unsecured financing from various individuals and entities, many of which are also equity holders in 540 West 21st Street LLC and 540 West 21st Street Investments II, LLC.

540 West 21st Street Investments II LLC obtained approximately $13 million in unsecured financing from various individuals and entities, many of which are also equity holders in 540 West 21st Street LLC and 540 West 21st Street Investments II, LLC.

(c)    Events Precipitating the Chapter 11 Filing and the Debtor's Remediation Efforts

The Debtor was originally created as a vehicle to own and develop the Property. To fund such development, Debtor's indirect parent entities obtained investments for third parties as described above. In addition, Debtor with assistance from its outside finance counsel, Bryan Cave Leighton Paisner LLP, put in place the First Lien Loan from Original First Lien Lender. Over time, Debtor's costs increased and it required additional financing, with the Original First Lien Lender periodically extending such financing. Still unable to complete the development, in 2021 the Debtor defaulted on its First Lien Loan Obligations.

In order to address its financing issues and remediate setbacks with the development, the Debtor's ultimate parent, Casco engaged Fried, Frank, Harris, Shriver & Jacobson LLP ("**Fried Frank**") to assist in identifying and partnering with a new property developer. Fried Frank had previously represented Casco in certain real estate related litigation and in connection with the Debtor's Operating Agreement, as it relates to zoning matters and the negotiation over air rights and space in the developed Property.

Beginning in December 2021, frustrated with the Debtor's progress, the Original First Lien Lender indicated that it was unwilling to extend additional capital to the Debtor and that it intended to exercise remedies and collect on the First Lien Loan. Thereafter, the Original First Lien Lender approached the Minority Casco Owner's father-in-law, who was familiar with the Debtor's situation, and offered to sell the First Lien Loan in lieu of exercising other remedies. On or around April 7 2022, the First Lien Lender purchased the First Lien Loan from the Original First Lien Lender. Upon or shortly after the sale, the First Lien Lender provided incremental funding to the Debtor that was reflected in amendments to the First Lien Loan Agreements. Bryan Cave Leighton Paisner LLP again represented the Debtor in such financing matters and Fried Frank, ceasing efforts on behalf of Casco, became counsel to First Lien Lender.

After the purchase of the First Lien Loan, First Lien Lender worked with Debtor's management to explore potential options for the completion of the development of the Property and the repayment of the First Lien Loan prior to its maturity.

In connection with these discussions, the First Lien Lender proposed a potential restructuring transaction where the Debtor would transfer the Property to the First Lien Lender to complete development and then provide certain returns to the Debtor and its stakeholders through a nonrecourse promissory note provided by the First Lien Lender in favor of the Debtor. This nonrecourse promissory note would then be paid either (a) through the completion of the development and sale of the Property or (b) to the extent the First Lien Lender decided to hold the Property for its own account, by making payment to the Debtor in an amount to be determined following an appraisal.

The Debtor's management engaged with certain of their stakeholders to discuss the restructuring transaction proposed by the First Lien Lender. Following these discussions, the Debtor determined that a significant number of stakeholders indicated a preference for selling the Property on an "as-is" basis as an alternative to pursuing the restructuring transaction proposed by the First Lien Lender.

As a result of these discussions, and in lieu of moving forward with the restructuring transaction proposed by the First Lien Lender, the Debtor decided it would be in the best interest of all parties to proceed with a sale of the Property. First Lien Lender did not commence foreclosure or enforcement actions at this time to recover on its defaulted loan but rather provided the Debtor with time and opportunity to explore its sale options.

In connection with its efforts to sell the Property, on November 9, 2022, the Debtor retained Jones Lang LaSalle Americas, Inc. ("**JLL**") as its agent to market and sell the Property.

JLL engaged in an extensive marketing effort by, among other things, reaching out to prospective bidders, soliciting interest from such parties, obtaining letters of intent, and analyzing bids. The Debtor identified Purchaser as the party who provided the highest and best offer for the Property among all others marketed.

After Purchaser was identified as the party with the highest and best offer for the Property, the Debtor, its professionals, and Purchaser proceeded with due diligence to finalize the terms upon which Purchaser would purchase the Property.

Prior to the Petition Date, the Debtor and Purchaser then entered into an initial purchase and sale contract which, among other things, contemplated that the Debtor would file the Chapter 11 Case, engage in a bankruptcy sale process, and obtain the confirmation of a chapter 11 plan. At Debtor's request, based on the requirements of the Purchaser, First Lien Lender also agreed to support the implementation of the Sale through bankruptcy and provide the Debtor with sufficient financing to complete the sale transaction and to fund the Debtor's operations through the Chapter 11 Case. The Debtor did not satisfy the condition to closing in the initial purchase and sale contract that it obtain a final, non-appealable order of the Court approving the Sale on or before October 1, 2023.

On December 28, 2023, the Debtor and Purchaser entered into a new Purchase and Sale Contract pursuant to which the Debtor agreed to sell the Property to the Purchaser in exchange for $~~87,400,000.00~~87,400,000. The proceeds of the Sale are the primary source of funds for the Plan.

(d)     Consenting Creditors

In connection with the foregoing, the Debtor and Consenting Creditors have entered~~anticipate entering~~ into a restructuring support agreement, pursuant to which the Consenting Creditors will memorialize their agreement to consent to and support this Combined Plan and Disclosure Statement (the "RSA").  A copy of the RSA is attached hereto as Exhibit D. This agreement includes, among other things, incorporating the Sale as part of such plan and providing recoveries to other creditors that provides the basis for the treatment of Classes as set forth herein.  The terms of the Purchase and Sale Contract and this Combined Plan and Disclosure Statement were a product of extensive negotiations between the Debtor, Purchaser and Consenting Creditors.

The negotiations among the Debtor, the Purchaser and the Consenting Creditors were at arm's length and in good faith. Further, the Debtor and its counsel have analyzed the legal issues in connection with the familial relationship between the principals of the First Lien Lender and the member of the ultimate parent company of Debtor and based on that analysis, Debtor does not believe that the First Lien Lender is an "insider" of the Debtor as that term is defined by the Bankruptcy Code. In particular, no principal of Debtor has sole control over Debtor. Debtor was represented in all negotiations in connection with these Chapter 11 cases by Tomer Jacob, Debtor's chief restructuring officer and Bryan Cave Leighton Paisner LLP, Debtor's finance and bankruptcy counsel.

Section 2.2     *The Chapter 11 Case.*

On the Petition Date, the Debtor filed a voluntary chapter 11 bankruptcy petition. Substantially contemporaneously therewith, the Debtor filed a number of motions (the "**First Day Motions**") to transition into Chapter 11, stabilize operations, and preserve relationships with vendors, and clients. The First Day Motions requested relief from the Bankruptcy Court to, among other things: (a) reject certain executory contracts; (b) employ the Notice and Claims Agent; (c) approve interim compensation procedures; and (d) employ counsel and local counsel, among others. In support of the First Day Motions, the Debtor relied upon a first day declaration by Tomer Jacob, the Debtor's chief restructuring officer.

On September 8, 2023, the Debtor obtained approval from the Court of interim debtor-in-possession financing to be provided by the First Lien Lender. Subsequently, the Court entered a second interim order and a third interim order; and the third interim order scheduling a final hearing on the motion for November 8, 2023, which was continued to December 14, 2023. On December 14, 2023, the Court held hearings on the Debtor's request to obtain final approval of the debtor-in-possession financing and continued such hearing to January 9, 2024. On the continued hearing date, the Debtor intends to pursue final approval of the debtor-in-possession financing from the First Lien Lender in the approximate amount of $1,626,208.00.

On August 22, 2023, the Debtor filed a motion to approve the adequacy of disclosures in the Debtor's First Amended Combined Disclosure Statement and Plan. On September 8, 2023, after an uncontested hearing, the Court entered an order approving the adequacies of the disclosures in the First Amended Combined Disclosure Statement and Plan and authorized the

initiation of a solicitation process. On September 8, 2023, Gutkind filed an adversary proceeding captioned *Dr. Efraim Gutkind v. 540 West 21st Street Holdings LLC et. al.* (Case No. 23-11053(MFW) (the "**Adversary Proceeding**") asserting alter ego claims against the Debtor and certain of its affiliates, breach of contract by the Debtor and its affiliates, and subordination and recharacterization of the claims of DZ 21st Street. In addition to the adversary proceeding, Dr. Gutkind filed an objection to the Debtor's First Amended Combined Disclosure Statement and Plan. The Office of the United States Trustee also filed an objection to the Debtor's First Amended Combined Disclosure Statement and Plan. The Debtor, DZ 21st Street and the First Lien Lender each filed responses in support of the First Amended Combined Disclosure Statement and Plan. On September 28, 2023, the Bankruptcy Court held a hearing on the First Amended Combined Disclosure Statement and Plan. At the hearing, the Court indicated that the Court was not inclined to approve the Plan based on certain notice deficiencies and the Court continued the hearing to October 4, 2023.

On October 4, 2023, the Debtor appeared before the Court and advised the Court that the Debtor did not intend to pursue the First Amended Combined Disclosure Statement and Plan that was originally filed on August 22, 2023. On October 6, 2023, the Debtor filed a motion to approve the adequacy of disclosures in the Debtor's Second Amended Combined Disclosure Statement and Plan. The Debtor adjourned the hearing on the Second Amended Combined Disclosure Statement and Plan. On November 8, 2023, the parties in the Adversary Proceeding entered into a stipulation regarding certain deadlines in the bankruptcy case and Adversary Proceeding.

On October 27, 2023, the applicable Claims Bar Date, Mr. Yarden Tadmor filed two Proofs of Claim asserting current claims of $874,765.16 each against the Debtor on the basis that the Debtor is liable for "aiding and abetting" a breach of fiduciary duty by a third party, Great Feats Ltd., and unjust enrichment. The Debtor does not believe that Mr. Tadmor is a creditor of the Debtor in any capacity or has a valid claim against the Debtor, and any purported claims by Mr. Tadmor are barred by the applicable statute of limitations.

On December 29, 2023, IRHA filed a Motion for Leave to File Proof of Claim After Bar Date. IRHA's motion sought leave of the Bankruptcy Court to file a proof of claim against the Debtor after the applicable Claims Bar Date based on inadequate notice and excusable neglect. After negotiations between the Debtor and IRHA, on January 8, 2024, IRHA and the Debtor entered into a stipulation permitting IRHA to file a proof of claim in an amount not to exceed $1,487,017.44.

After months of negotiations, the Debtor, the Purchaser and Consenting Creditors reached an agreement on the terms of this Combined Disclosure Statement and Plan.

Section 2.3    *Summary of Treatment of Claims and Equity Interests Under the Plan.*

The following chart summarizes the classification and treatment of the Classes:

| Class | Estimated Allowed Claims[5] | Treatment | Estimated Recovery to Holders of Allowed Claims[6] |
|---|---|---|---|
| Class 1 – Other Secured Claims | $~~1,306,016.68~~1,249,680.45 | Unimpaired | 100% |
| Class 2 – First Lien Claims | $90,688,369.00 | Impaired, entitled to vote | 71%[7] |
| Class 3 – DZ Claims | $28,175,050.00 | Impaired, entitled to vote | 45% |
| Class 4 – Gutkind Claims | $8,012,500.00 | Impaired, entitled to vote | 50% |
| Class 5 – General Unsecured Trade Claims | $1,249,680.45 | Unimpaired | 100% |
| Class 6 – IRHA Claims | $~~1,480,000.00~~1,487,017.44.00 | Impaired, entitled to vote | 46% |
| Class 7 – Disputed Investor Claims | $0.00 | Impaired, entitled to vote | 100% |
| Class 8 – Casco Claims | $1,358,000.00 | Impaired, deemed to reject | 0% |
| Class 9 – Intercompany Claims | $0.00 | Impaired, deemed to reject | 0% |
| Class 10 – Subordinated Claims | $0.00 | Impaired, deemed to reject | 0% |
| Class 11 – Equity Interests | $0.00 | Impaired, deemed to reject | 0% |

---

[5] These amounts represent estimated Allowed Claims, and do not represent amounts actually asserted by creditors in Proofs of Claim or otherwise, other than Classes 3, 4, 5 and ~~6~~56, which reflect the approximate Allowed amounts of such Claims as determined by the Debtor. The Debtor has not completed its analysis of Claims in the Chapter 11 Case, and objections to such Claims have not been filed and/or fully litigated and may continue following the Effective Date. Therefore, there can be no assurances of the exact amount of the Allowed Claims at this time. Rather, the actual amount of the Allowed Claims may be greater or lower than estimated.

[6] The estimated percentage recovery is based upon, among other things, an estimate of the Allowed Claims in the Chapter 11 Case. As set forth above, the actual amount of the Allowed Claims may be greater or lower than estimated. Thus, the actual recoveries may be higher or lower than projected depending upon, among other things, the amounts and priorities of Claims that are actually allowed by the Bankruptcy Court.

[7] The recovery of the First Lien Claims is subject to the carve-outs described in this Combined Disclosure Statement and Plan and is not less than $~~64,759,781.68~~ [STILL TRUE?]64,500,000.

Class 1 – <u>Other Secured Claims</u>. The Other Secured Claims Class contains claimants with mechanics liens against the Property as well as a claim for unpaid but due and owing real estate taxes on the Property.

Class 2 – <u>First Lien Claims</u>. The First Lien Claims Class contains only the secured claim of the First Lien Lender.

Class 3 – <u>DZ Claims</u>. The DZ Claims Class contains only the claim of DZ 21st Street which claim arises from DZ 21st Street's exercise of that certain put right.

Class 4 – <u>Gutkind Claims</u>. The Gutkind Claims Class contains only the claim of Gutkind which claim arises from the Gutkind Note.

Class 5 – <u>General Unsecured Trade Claims</u>. The General Unsecured Trade Claims Class contains all of the Debtor's usual and customary trade vendors.

Class 6 – <u>IRHA Claims</u>.  The IRHA Claims Class contains only the claim of IRHA Investment Limited which claim arises from the facts and circumstances underlying the decision and order obtained by IRHA in the case captioned *IRHA Inc. v. 540 W. 21st St., LLC*, 2023 N.Y. Slip Op. 60347.

Class 7 – <u>Disputed Investor Claims</u>. The Disputed Investor Claims Class contains any and all other unsecured claims asserted against the Debtor, including claims asserted by investors that arise out of or are related to such investors' direct or indirect contribution of funds to related, non-debtor affiliates of the Debtor, which created obligations of those related, non-debtor affiliates of the Debtor or that relate to the Debtor's business, other than, for the avoidance of doubt, the ~~claim~~Claim of Gutkind, arising from the Gutkind Note and the Claim of IRHA.  Based on the Claims filed on or before the applicable Claims Bar Dates, the only Claim in Class 6 are the Claims filed by Mr. Tadmor.

Class 8 – <u>Casco Claims</u>. The Casco Claims Class contains any and all claims that could be asserted by the Debtor's managing member.

Class 9 – <u>Intercompany Claims</u>. The Intercompany Claims Class contains any and all other claims that could be asserted against the Debtor by any other entity affiliated with the Debtor.

Class 10 – <u>Subordinated Claims</u>. The Subordinated Claims Class contains any and all other claims that could be asserted against the Debtor from any other lending or investing entity but which are not obligations of the Debtor.

Class 11 – <u>Equity Interests</u>. The Equity Interests Class contains any remaining equity interests of West 21st Street Member LLC.

Section 2.4     *Potential Claims and Causes of Action.*

The Bankruptcy Code preserves the Debtor's rights to prosecute claims and causes of action that exist outside of bankruptcy, and also empowers the Debtor to prosecute certain claims that are established by the Bankruptcy Code, including claims to, inter alia, avoid and recover certain preferential transfers and fraudulent conveyances. The Debtor has not yet investigated and analyzed all potential claims and causes of action.

Section 2.5     *Certain Federal Income Tax Consequences.*

The following discussion is a summary of certain U.S. federal income tax consequences of this Combined Plan and Disclosure Statement to the Debtor and to Holders of Claims and Equity Interests. This discussion is based on the Tax Code, Treasury Regulations promulgated and proposed thereunder, judicial decisions and published administrative rules, and pronouncements of the IRS, all as in effect on the date hereof.

Due to the complexity of certain aspects of this the Combined Plan and Disclosure Statement, the lack of applicable legal precedent, the possibility of changes in the law, the differences in the nature of the Claims, and each Holder's status and method of accounting and the potential for disputes as to legal and factual matters with the IRS, the tax consequences described herein are uncertain. No legal opinions have been requested from counsel with respect to any of the tax aspects of this the Combined Plan and Disclosure Statement and no rulings have been or will be requested from the IRS with respect to the any of the issues discussed below. Further, legislative, judicial, or administrative changes may occur, perhaps with retroactive effect, which could affect the accuracy of the statements and conclusions set forth below as well as the tax consequences to the Debtor and the Holders of Claims and Equity Interests.

This discussion does not purport to address all aspects of U.S. federal income taxation that may be relevant to the Debtor or Holders of Claims or Equity Interests in light of their personal circumstances, nor does the discussion deal with tax issues with respect to taxpayers subject to special treatment under the U.S. federal income tax laws (including, for example, insurance companies, financial institutions, real estate investment trusts, tax-exempt organizations, small business investment companies, regulated investment companies, foreign taxpayers, persons whose functional currency is not the U.S. dollar, persons subject to the alternative minimum tax, and persons holding Claims or Equity Interests as part of a "straddle," "hedge," "constructive sale," or "conversion transaction" with other investments). This discussion does not address the tax consequences to Holders of Claims who did not acquire such Claims at the issue price on original issue. No aspect of foreign, state, local, or estate and gift taxation is addressed.

**EACH HOLDER OF A CLAIM OR EQUITY INTEREST IS URGED TO CONSULT WITH SUCH HOLDER'S TAX ADVISORS CONCERNING THE U.S. FEDERAL, STATE, LOCAL, FOREIGN, AND OTHER TAX CONSEQUENCES OF THIS THE COMBINED PLAN AND DISCLOSURE STATEMENT.**

(a)  Tax Consequences to the Debtor

Pursuant to the Tax Code and subject to certain exceptions, a taxpayer generally must recognize income from COD Income to the extent that such taxpayer's indebtedness is cancelled for an amount less than the indebtedness' adjusted issue price determined in the manner described below. Generally, the amount of COD Income, subject to certain statutory and judicial exceptions, is the excess of (i) the adjusted issue price of the cancelled indebtedness, less (i) the sum of the fair market value (determined at the date of the exchange) of the consideration, if any, given in exchange for such cancelled indebtedness.

The recognition of COD Income may be treated differently in the context of a confirmed chapter 11 plan. For example, under the bankruptcy exception defined in Section 108(a) of the Tax Code, instead of recognizing COD Income, the taxpayer is required, pursuant to Section 108(b) of the Tax Code, to reduce certain of that taxpayer's tax attributes to the extent of the amount of COD Income. The tax attributes of the taxpayer generally are reduced in the following order: net operating losses, general business and minimum tax credit carry forwards, capital loss carry forwards, the basis of the taxpayer's assets, and, finally, foreign tax credit carry forwards. If the amount of COD Income exceeds the amount of tax attributes available to be reduced, the excess still is excluded from income. Pursuant to Section 108(b)(4)(A) of the Tax Code, the reduction of tax attributes does not occur until the end of the taxable year after such tax attributes have been applied to determine the tax in the year of cancellation or, in the case of asset basis reduction, the first day of the taxable year following the taxable year in which the COD Income is realized. Section 108(e)(2) of the Tax Code provides a further exception to the recognition of COD Income upon the cancellation of debt, providing that a taxpayer will not recognize COD Income to the extent that the taxpayer's satisfaction of the debt would have given rise to a deduction for United States federal income tax purposes.

(b)  Tax Consequences for Holders of Claims

Generally, a Holder of a Claim should in most, but not all circumstances, recognize gain or loss equal to the difference between the "amount realized" by such Holder in exchange for its Claim and such Holder's adjusted tax basis in the Claim. The "amount realized" is equal to the sum of the cash and the fair market value of any other consideration received under a plan in respect of a Holder's Claim. The tax basis of a Holder in a Claim will generally be equal to the Holder's cost. To the extent applicable, the character of any recognized gain or loss (e.g., ordinary income, or short-term or long-term capital gain, or loss) will depend upon the status of the Holder, the nature of the Claim in the Holder's hands, the purpose and circumstances of its acquisition, the Holder's holding period of the Claim, and the extent to which the Holder previously claimed a deduction for the worthlessness of all or a portion of the Claim. Generally, if the Claim is a capital asset in the Holder's hands, any gain or loss realized generally will be characterized as capital gain or loss and will constitute long-term capital gain or loss if the Holder has held such Claim for more than one (1) year.

A Holder who received Cash (or potentially other consideration) in satisfaction of its Claims may recognize ordinary income or loss to the extent that any portion of such consideration is characterized as accrued interest. A Holder who did not previously include in income accrued but unpaid interest attributable to its Claim, and who receives a distribution on account of its Claim

26

pursuant to this Combined Plan and Disclosure Statement, will be treated as having received interest income to the extent that any consideration received is characterized for United States federal income tax purposes as interest, regardless of whether such Holder realizes an overall gain or loss as a result of surrendering its Claim. A Holder who previously included in its income accrued but unpaid interest attributable to its Claim should recognize an ordinary loss to the extent that such accrued but unpaid interest is not satisfied, regardless of whether such Holder realizes an overall gain or loss as a result of the distribution it may receive under this Combined Plan and Disclosure Statement on account of its Claim.

Section 2.6    *Certain Risk Factors to Be Considered.*

Effect of Failure to Confirm this Combined Plan and Disclosure Statement. If this Combined Plan and Disclosure Statement is not confirmed by the requisite majorities in number and amount as required by Section 1126, or if any of the other confirmation requirements imposed by the Bankruptcy Code are not met, the Chapter 11 Case may not have sufficient funding to proceed, which may result in conversion to a case under chapter 7 of the Bankruptcy Code or dismissal.

"Cramdown." While the Debtor believes that the requirements of Section 1129 have been met, the Bankruptcy Court is afforded discretion to determine whether dissenting Holders of Claims would receive more if the Debtor was liquidated under chapter 7 of the Bankruptcy Code and, thus, whether or not cramdown of such dissenting Holders of Claims is permissible.

Claims Estimation. While the Debtor has undertaken its best efforts to estimate the amounts of Claims in each Class is correct, the actual amounts of allowed Claims may differ from the estimates.

Delays. Any delay in Confirmation of this Combined Plan and Disclosure Statement or delay to the Effective Date could result in additional Administrative Expense Claims. This may endanger ultimate approval of the effectiveness of this Combined Plan and Disclosure Statement or result in a decreased or zero recovery for Holders of Claims entitled to a Distribution. Additionally, in the event that consummation of the Sale does not occur by May 31, 2024, and the Debtor, the First Lien Lender, and Purchaser have not agreed, in writing, to extend such deadline, the Plan shall be deemed withdrawn, revoked, and deemed void *ab initio*, notwithstanding whether the Bankruptcy Court has entered the Confirmation Order.

Section 2.7    *Feasibility.*

The Bankruptcy Code requires that, in order for a plan to be confirmed, the Bankruptcy Court must find that confirmation of such plan is not likely to be followed by the liquidation or need for further reorganization of the Debtor unless contemplated by the plan.

Here, this Combined Plan and Disclosure Statement provides for the liquidation and distribution of the Sale Proceeds in the amount of $87,400,000.00, resulting from the Sale of the Debtor's Property. Accordingly, the Debtor believes all chapter 11 plan obligations will be satisfied without the need for further reorganization.

27

Section 2.8    *Best Interests Test and Alternatives to this Combined Plan and Disclosure Statement.*

The Bankruptcy Code requires that the Bankruptcy Court determine that a plan accepted by the requisite number of creditors in an impaired class provides each such member of each impaired class of claims and interests a recovery that has value, on the effective date, at least equal to the value of the recovery that each such creditor would receive if the debtor was liquidated under chapter 7 of the Bankruptcy Code.

The Bankruptcy Code further requires that the Bankruptcy Court determine that a plan is in the best interests of each holder of a claim or interest in any such impaired class which has not voted to accept the plan. Thus, if an impaired class does not vote unanimously to confirm the plan, the best interests test requires that the Bankruptcy Court find that the plan provides to each member of such impaired class a recovery on account of the class member's claim or interest that has a value, on the effective date, at least equal to the value of the recovery that each such class member would receive if the debtor was liquidated under chapter 7 of the Bankruptcy Code.

Here, the Debtor believes this Combined Plan and Disclosure Statement satisfies the best interests test as the Liquidation Analysis, attached hereto as Exhibit A, demonstrates that the recoveries expected to be available to Holders of Allowed Claims under this Combined Plan and Disclosure Statement will be greater than the recoveries expected in a liquidation under chapter 7 of the Bankruptcy Code.

In a typical chapter 7 case, a trustee is elected or appointed to liquidate a debtor's assets for distribution to creditors in accordance with the priorities set forth in the Bankruptcy Code. Generally, secured creditors are paid first from the proceeds of sales of the properties securing their liens. If any assets are remaining in the bankruptcy estate after satisfaction of secured creditors' claims from their collateral, administrative expenses (including those incurred by a chapter 7 trustee) are next to receive payment. Unsecured creditors are paid from any remaining proceeds, according to their respective priorities. Unsecured creditors with the same priority share in proportion to the amount of their allowed claims in relationship to the total amount of allowed claims held by all unsecured creditors with the same priority. Finally, equity interest holders receive the balance that remains, if any, after all creditors are paid.

Here, all or substantially all of the Debtor's assets are being sold or transferred through the Sale. A liquidation under chapter 7 of the Bankruptcy Code would liquidate the Debtor's assets, but this Combined Plan and Disclosure Statement provides the best source of recovery for several reasons. First, liquidation under chapter 7 of the Bankruptcy Code would not provide for a timely distribution, and likely no distribution at all to creditors junior to the First Lien Lender. Second, any Distributions would likely be smaller because of the fees and expenses incurred in a liquidation under chapter 7 of the Bankruptcy Code. Third, it is likely that a trustee would not realize values in a chapter 7 liquidation that approach the value arising from the negotiated Purchase and Sale Contract and the 9019 Settlement. The Sale arises from an extensive marketing process, and it is unlikely that the Purchaser would continue its pursuit of the Sale in a chapter 7 liquidation process, at least for the current sale price. Further, through 9019 Settlement, the First Lien Lender has agreed to accept a recovery substantially less than what it is owed and is providing largess to other Classes that forms the basis of such Classes' recovery. However, this discount is contingent on the

28

timely closing of the Sale, approval of the 9019 Settlement and on the confirmation of a plan substantially similar to the Plan, neither of which are possible in a chapter 7 liquidation.

A chapter 7 trustee, by comparison, would not have the benefit of the Sale or the 9019 Settlement. A chapter 7 trustee's ability to monetize Debtor's assets would therefore be diminished and the values received reduced.

At this time, there are no alternative plans available to Debtor. Debtor believes that the Combined Plan and Disclosure Statement, which is built upon and incorporates the 9019 Settlement, provides the greatest possible value under the circumstances, and has the greatest chance to be confirmed and consummated.

Section 2.9    *Releases by the Debtor.*

Article XI of this Combined Plan and Disclosure Statement contains certain releases, exculpations, and injunction language by the Debtor. Parties are urged to read these provisions carefully to understand how Confirmation and consummation of this Combined Plan and Disclosure Statement will affect any claim, interest, right, or action with regard to Debtor.

**THIS COMBINED PLAN AND DISCLOSURE STATEMENT SHALL BIND ALL HOLDERS OF CLAIMS AGAINST THE DEBTOR TO THE FULLEST EXTENT AUTHORIZED OR PROVIDED UNDER THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE AND ALL OTHER APPLICABLE LAW.**

Under the voting procedures described in Article V of this Combined Plan and Disclosure Statement, the Debtor believes that these releases, exculpations, and injunction language are considered consensual under applicable bankruptcy law.

This Combined Plan and Disclosure Statement provides Releases by the Debtor in favor of the Released Parties. The Debtor is not aware of any potential claims or causes of action against the Released Parties. Under the Releases by the Debtor set forth in this Combined Plan and Disclosure Statement, the Debtor is providing releases in favor of the Released Parties, which include (a) the Debtor; (b) the First Lien Lender; (c) Casco; and (d) their Related Parties. The Debtor is not aware of any potential claims or causes of action against any of the foregoing.

Section 2.10    *Bankruptcy Rule 9019 Settlement.*

The Plan represents a compromise between the divergent viewpoints held by Debtor's major creditor constituencies regarding the consideration to be distributed, and the allocation of the consideration to be distributed, in connection with the reorganization of Debtor.

The First Lien Loan was first extended to Debtor by Original First Lien Lender in the principal amount of $20,000,000. Since its origination, additional amounts were loaned to the Debtor under the First Lien Loan Documents by both the Original First Lien Lender and then by the First Lien Lender after it acquired the First Lien Loan. The First Lien Loan is secured by all of the Debtor's assets including a mortgage on the Property. Since the occurrence of certain events of default, the First Lien Lender asserts that the First Lien Loan has been accruing interest and

then additional default interest. Under the Plan, the First Lien Claims are Allowed in the aggregate amount of $90,688,369.00 including accrued but unpaid interest and plus accruing fees and expenses.

DZ 21st Street and Gutkind have raised certain potential issues regarding the validity of the security interests granted in connection with the First Lien Loan and the allowance of the First Lien Loan Claims, which Mr. Tadmor has echoed. The Debtor and the First Lien Lender do not believe that there is merit to such issues. In order to compromise and settle such issues, the First Lien Lender has agreed to gift certain of its proceeds that it would otherwise be entitled to fund the Class 3 Carve-Out, Class 4 Carve-Out, Class 5 Carve-Out, Class 6 Carve-Out and the Reserve Fund. Absent the compromises and settlements described below and incorporated into the Plan, First Lien Lender would be entitled to receive the substantial majority of the proceeds from the Sale.

Under section 2.10 of the Operating Agreement, in the event that a construction loan had not closed by the 2-year anniversary of the operating agreement, DZ 21st Street had the right to require West 21st Street LLC to exercise its right under the Operating Agreement to cause the Debtor to redeem DZ 21st Street's equity (the "**Put Right**"). On November 4, 2023, DZ 21st Street exercised the Put Right.

Accordingly, DZ 21st Street has asserted an unsecured claim against the Debtor in the amount of not less than $28,175,050. DZ 21st Street contends that this claim is not subject to subordination pursuant to section 510(b) of the Bankruptcy Code because such equity interest was extinguished and converted to a claim upon exercise of his put right pursuant to section 2.10 of the Operating Agreement.

In the alternative, to the extent that DZ 21st Street's equity interest was not extinguished upon exercise of its put right, DZ 21st Street has alleged (i) claims against the Debtor's direct parent, 540 W 21st Street Member LLC, for breach of contract for failing to cause the redemption of DZ 21st Street's equity interest in the amount of not less than $28,175,050, which, according to DZ 21st Street, would be entitled to any surplus Sale proceeds that would be available for distribution to 540 W 21st Street Member LLC as 92% Equity holder in the Debtor and (ii) 8% of the Equity of the Debtor, which was not extinguished in this alternative scenario.

Accordingly, DZ 21st Street contends that regardless of whether its primary or alternative arguments are ultimately accepted and regardless of whether its claim is subject to subordination at the Debtor, DZ 21st Street would hold a structurally superior claim to sales proceeds as compared to any investors at indirect parent companies of the Debtor.

DZ 21st Street LLC's asserted claims and interests are outlined in the following chart:



Gutkind is the beneficiary of the Gutkind Note in a principal amount of $5,000,000 issued by West 21st Street Investment Member LLC, an indirect parent holding company with respect to the Debtor. Gutkind filed the Adversary Proceeding to challenge the Claims and Interests of the First Lien Lender and DZ 21st Street. Gutkind also asserts a claim against the Debtor based upon an alter ego / reverse veil piercing theory.

IRHA is a purchaser of residential units in the Property that paid approximately $1,156,990 in exchange for the right to receive such residential units upon completion of the development of the Property. IRHA commenced litigation in state court arising from an alleged breach of its agreement to purchase such residential units by the Debtor. On September 21, 2023, the Supreme Court of the State of New York entered a decision granting IRHA's motion for summary judgment. IRHA has asserted a claim against the Debtor in the amount of $1,487,017.44, which represents the purchase price plus pre-judgment interest. IRHA has also asserted that it provided in excess of $15,000,000 in the form of loan and equity to non-Debtor affiliates, however, IRHA agreed to cap its Claim against the Debtor in the amount of $1,487,017.44 as part of the stipulation entered by the Bankruptcy Court on January 8, 2024.

Mr. Tadmor is an alleged party in interest in the Debtor's case. Mr. Tadmor's brother was an investor in Great Feats Ltd. Great Feats Ltd. is a third-party investor in 540 West 21st LLC, a non-Debtor affiliate. The Debtor does not believe that Mr. Tadmor is a creditor of the Debtor nor has any valid Claims against the Debtor. Further, even if Mr. Tadmor has an Allowed Claim or Claims against the Debtor, based on the Claims asserted by Mr. Tadmor, Mr. Tadmor is not entitled to any distribution from the Debtor as the outstanding balance of the First Lien Loan and the anticipated Administrative Expenses on the Closing Date exceeds the amount of proceeds from the Sale. Notwithstanding the foregoing, to the extent this Court determines that Mr. Tadmor would be entitled to a distribution from the proceeds of the Sale if his claims were determined to be Allowed Claims, the Debtor, the First Lien Lender, DZ 21st Street and Gutkind, have agreed to

fund the Reserve Fund in the full amount of Mr. Tadmor's Claims, the allowance of which will be determined after entry of the Confirmation Order.

Litigation and resolution of these disputes, which involve complex questions of fact and law, could delay confirmation of the Plan and would jeopardize the closing of the Sale. Further, the cost of litigating these disputes could diminish the value and resources of the Debtor's estate, which would be a necessary party in such disputes.

Pursuant to Bankruptcy Rule 9019 and any applicable state law and as consideration for the distributions and other benefits provided under the Plan, the provisions of this Section 2.10 and Section 6.4 of the Plan shall constitute a good faith compromise and settlement (the "**9019 Settlement**"). This compromise and settlement is in the best interests of Holders of Claims and Equity Interests and is fair, equitable, and reasonable.

## ARTICLE III.

## UNCLASSIFIED CLAIMS

In accordance with Section 1123(a)(1), Administrative Claims, Priority Tax Claims, and Professional Fee Claims have not been classified and thus are excluded from the Classes of Claims and Equity Interests set forth in Article IV of this Combined Plan and Disclosure Statement.

Section 3.1    *Administrative Claims.*

(a)    Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and Debtor, each Holder of an Allowed Administrative Claim (except with respect to Priority Tax Claims, Professional Fee Claims, Statutory Fees, or Trade Claims) shall receive in full and final satisfaction, settlement, release, and cancellation of and in exchange for its Allowed Administrative Claim an amount of Cash equal to the unpaid portion of such Allowed Administrative Claim: (i) if such Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date (or, if not then due, when such Administrative Claim is due or as soon as reasonably practicable thereafter); (ii) if such Administrative Claim is Allowed after the Effective Date, on the date that such order determining and allowing such Administrative Claim becomes a Final Order or as soon as reasonably practicable thereafter; (iii) if such Allowed Administrative Claim is based on liabilities incurred by the Debtor in the ordinary course of its business after the Petition Date, in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim, without any further action by the Holder of such Allowed Administrative Claim; (iv) at such other time and upon such other terms as set forth in a Final Order of the Bankruptcy Court.

(b)    All requests for payment of an Administrative Claim (other than Professional Fee Claims or Administrative Claims that are not disputed and arose in the ordinary course of business) that accrued on or before the Effective Date must be filed with the Bankruptcy Court and served on the Debtor no later than the Administrative Claims Bar Date. Holders of Administrative Claims (other than Professional Fee Claims) that are required to, but do not, file and serve a request for payment of such Administrative Claims by the Administrative Claims Bar Date shall be forever

32

barred, estopped, and enjoined from asserting such Administrative Claims against the Debtor and the Estate, and such Administrative Claims shall be deemed cancelled, compromised, settled, and released as of the Effective Date.

(c)     The Debtor, in its sole and absolute discretion, may settle Administrative Claims in the ordinary course of business without further Bankruptcy Court approval. The Debtor may also object to any Administrative Claim no later than 45 days after the Administrative Claims Bar Date, subject to any extensions granted by the Bankruptcy Court, agreement in writing of the Debtor and the Holder of such Administrative Claim, or on motion of a party in interest approved by the Bankruptcy Court. Unless the Debtor (or other party with standing) objects to a timely filed and properly served Administrative Claim, a timely filed and properly served Administrative Claim shall be deemed Allowed in the amount requested. In the event that the Debtor objects to an Administrative Claim, the parties thereto may confer to try to settle such objection and, in the event that such settlement attempt fails, the Bankruptcy Court shall determine whether such Administrative Claim should be allowed and, if so, in what amount.

(d)     As of the expected Closing Date of April 29, 2024, Administrative Expenses are anticipated to be no less than $250,000.00..

Section 3.2     *Priority Tax Claims.*

Except to the extent that each Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and cancellation of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in Section 1129(a)(9)(C); *provided, however*, that the Debtor or Plan Administrator shall have the right to pay any Allowed Priority Tax Claim, or any unpaid balance thereof, in full at any time on or after the Effective Date, without incurring premium or penalty. To the extent any Allowed Priority Tax Claim is not due and owing on or before the Effective Date, such Claim shall be paid in accordance with the terms of any agreement between the Debtor and the Holder of such Claim, when such Allowed Priority Tax Claim becomes due and payable under applicable non-bankruptcy Law, or in the ordinary course of business. In the event that an Allowed Priority Tax Claim is also a Secured Claim, such Claim shall, to the extent it is Allowed, be treated as an Other Secured Claim if such Claim is not otherwise paid in full.

Section 3.3     *Professional Fee Claims.*

(a)     All final requests for payment of Professional Fee Claims must be filed no later than the Administrative Claims Bar Date. After notice and hearing, the Allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court.

(b)     Unless otherwise agreed to by the Holder of an Allowed Professional Fee Claim and the Debtor, as applicable, to the extent an Allowed Professional Fee Claim has not already been paid in full or otherwise satisfied during the Chapter 11 Case, each Holder of an Allowed Professional Fee Claim shall receive in full and final satisfaction, settlement, release, and cancellation of and in exchange for of its Allowed Professional Fee Claim an amount of Cash equal

to the unpaid portion of such Allowed Professional Fee Claim within five Business Days of entry of an Order approving such Professional Fee Claim, or as soon as reasonably practical thereafter.

(c)    Except as otherwise specifically provided herein, on and after the Confirmation Date, the Debtor shall pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to the implementation of the Plan and Consummation incurred by the Debtor after the Confirmation Date in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court. The Debtor shall pay, within ten Business Days, or as soon as reasonably practical thereafter, after submission of a detailed invoice to the Debtor, such reasonable Claims for compensation or reimbursement of expenses incurred by the Debtor's Retained Professionals. From and after the Confirmation Date, any requirement that Retained Professionals comply with Sections 327 through 331, 363, and 1103 in seeking retention or compensation for services rendered after such date shall terminate, and the Debtor may employ and pay any Retained Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

Section 3.4    *DIP Facility Claims*

Except to the extent a Holder of a DIP Facility Claim agrees to less favorable treatment, each Holder of a DIP Facility Claim will be indefeasibly paid and satisfied in full in Cash on the Effective Date. Subject to further increases as permitted by the Court, the DIP Facility Claims shall be Allowed in an aggregate principal amount $1,626,208.00 plus interest and fees as provided in the DIP Orders. Upon the indefeasible payment in full in Cash of the DIP Facility Claims, all Liens and security interests granted to secured such DIP Facility Claims shall be terminated and of no further force and effect. Notwithstanding the foregoing, the DIP Orders shall continue in effect solely for the purpose of preserve the First Lien Lender's rights to any contingent or indemnification obligations of the Debtor pursuant to and subject to the terms of the DIP Orders.

Section 3.5    *Statutory Fees.*

The Debtor shall pay all fees due and owing to the U.S. Trustee, including quarterly fees under 28 U.S.C § 1930(a), plus any interest due and payable under 31 U.S.C. § 3717 on all disbursements, including Plan payments and disbursements in and outside the ordinary course of the Debtor's business at the time of Confirmation, pursuant to the applicable statutory payment schedule. On and after the Effective Date, to the extent that the Chapter 11 Case remains open, and for so long as Plan Administrator remains obligated to pay such quarterly fees, Plan Administrator shall pay such applicable fees as they become due in the ordinary course of business until the Bankruptcy Court enters a final decree in the Chapter 11 Case.

# ARTICLE IV.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

Section 4.1    *Classification of Claims.*[8]

The Plan constitutes a chapter 11 plan for the Debtor, and the classification of Claims and Equity Interests set forth herein shall apply to the Debtor. In accordance with Section 1123(a)(1), the Debtor has not classified Administrative Claims, Priority Tax Claims, and Professional Fee Claims, as described in Article III above.

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including for purposes of voting, Confirmation, and distribution pursuant to the Plan and pursuant to Sections 1122 and 1123(a)(1). A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that such Claim or Equity Interest qualifies within the description of such Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.

The classification and the manner of satisfying all Claims under the Plan take into consideration: (a) the existence of guarantees or alleged guarantees by the Debtor of obligations of other Affiliates or Entities, if any; and (b) that the Debtor may be a joint obligor with other Affiliates or Entities with respect to the same obligation.

Section 4.2    *Class Identification.*

The following chart represents the classification of Claims and Equity Interests for the Debtor pursuant to the Plan.

| Class | Claims and Equity Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | No (conclusively presumed to accept) |
| Class 2 | First Lien Claims | Impaired | Yes |
| Class 3 | DZ Claims | Impaired | Yes |
| Class 4 | Gutkind Claims | Impaired | Yes |
| Class 5 | General Unsecured Trade Claims | Unimpaired | No |
| Class 6 | IRHA Claims | Impaired | Yes |
| Class 7 | Disputed Investor Claims | Impaired | Yes |
| Class 8 | Casco Claims | Impaired | No (deemed to reject) |
| Class 9 | Intercompany Claims | Impaired | No (deemed to reject) |

[8]    The Debtor reserves the right to separately classify Claims to the extent necessary to comply with any requirements under the Bankruptcy Code or applicable Law.

| Class | Claims and Equity Interests | Status | Voting Rights |
|-------|------------------------------|--------|---------------|
| Class 10 | Subordinated Claims | Impaired | No (deemed to reject) |
| Class 11 | Equity Interests | Impaired | No (deemed to reject) |

Section 4.3     *Treatment and Voting Rights of Claims and Equity Interests.*

Except to the extent that the Debtor and a Holder of an Allowed Claim or Allowed Equity Interest, as applicable, agree to less favorable treatment, such Holder shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and cancellation of, and in exchange for, such Holder's Allowed Claim or Allowed Equity Interest. Unless otherwise indicated herein, the Holder of an Allowed Claim or Allowed Equity Interest, as applicable, shall receive such treatment on the Effective Date, except as otherwise provided in and subject to Section 8.2 below, or, if payment is not due, in accordance with its terms in the ordinary course.

(a)     *Class 1— Other Secured Claims.*

      (i)     *Classification*: Class 1 consists of all Other Secured Claims.

      (ii)     *Treatment:* Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release, and cancellation of and in exchange for each Allowed Other Secured Claim, each Holder thereof shall receive payment in full in Cash, equal to the unpaid portion of such Allowed Other Secured Claim, on the later of: (A) the Effective Date; (B) if such Other Secured Claim is Allowed after the Effective Date, on the date that such order determining and allowing such Other Secured Claim becomes a Final Order or as soon as reasonably practicable thereafter; and (C) at such other time as the Debtor and such Holder agree or have agreed.

      (iii)     *Impairment and Voting*: Class 1 is Unimpaired and Holders of Other Secured Claims are conclusively presumed to accept the Plan pursuant to Section 1126(f). Therefore, Holders of Allowed Other Secured Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Other Priority Claims

(b)     *Class 2—First Lien Claims.*

      (i)     *Classification*: Class 2 consists of First Lien Claims.

      (ii)     *Treatment*:

          A.     The Debtors acknowledge and agree that: (a) they have no defenses, rights of setoff, or other claims based upon subordination, disallowance, enforceability, or other similar applicable law related to First Lien Lender;

and (b) as of the anticipated Effective Date, Debtors are indebted to First Lien Lender in the amount of not less than $90,688,369.00.

B.    The First Lien Claim is deemed Allowed pursuant to the 9019 Settlement in the amount of $90,688,369.00, and interest, legal fees, costs and expenses shall continue to accrue until the closing of the Sale and distribution of the Sale Proceeds.

C.    Except to the extent that First Lien Lender agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release, and cancellation of and in exchange for the Allowed First Lien Claim, First Lien Lender shall receive a payment in Cash of $87,400,000.00 on the closing of the Sale, which payment shall be made directly to First Lien Lender from the Sale Proceeds, subject to DIP Facility Claim, the Class 3 Carve-Out, Class 4 Carve-Out, Class 5 Carve-Out, Class 6 Carve-Out and the First Lien Lender's contribution to the Reserve Fund; provided that the First Lien Lender shall receive payment in Cash of at least $[64,759,781.68]64,500,000 in satisfaction of its Allowed First Lien Claim after funding the Class 3 Carve-Out, Class 4 Carve-Out, Class 5 Carve-Out, Class 6 Carve-Out and Reserve Fund.

(iii)    *Impairment and Voting*: First Lien Claims are Impaired and are entitled to vote to accept or reject the Plan.

(c)    *Class 3—DZ Claims*

(i)    *Classification*: Class 3 consists of all DZ Claims.

(ii)    *Allowance*: Allowed pursuant to the 9019 Settlement in the amount of $28,175,050.00.

(iii)    *Treatment*: Except to the extent that a Holder of an Allowed DZ Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release, and cancellation of and in exchange for each Allowed DZ Claim, each Holder thereof shall receive, on closing of a Sale, a payment equal to its Pro-Rata share of the General Unsecured Claim Recovery Pool plus the Class 3 Carve-Out (subject to a reduction to account for its contribution to the Reserve Fund, if applicable).

(iv)    *Impairment and Voting*: DZ Claims are Impaired and are entitled to vote to accept or reject the Plan.

(d)    *Class 4—Gutkind Claims*

(i)    *Classification*: Class 4 consists of all Gutkind Claims.

(ii)     *Allowance*: Allowed pursuant to the 9019 Settlement in the amount of $8,012,500.00.

(iii)     *Treatment*: Except to the extent that a Holder of an Allowed Gutkind Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release, and cancellation of and in exchange for each Allowed Gutkind Claim, each Holder thereof shall receive, on closing of a Sale, a payment equal to its Pro-Rata share of the General Unsecured Claim Recovery Pool plus the Class 4 Carve-Out (subject to a reduction to account for its contribution to the Reserve Fund, if applicable).

(iv)     *Impairment and Voting*: Gutkind Claims are Impaired and are entitled to vote to accept or reject the Plan.

(e)     *Class 5—General Unsecured Trade Claims.*

(i)     *Classification*: Class 5 consists of all General Unsecured Trade Claims.

(ii)     *Treatment:* Except to the extent that a Holder of an Allowed General Unsecured Trade Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release, and cancellation of and in exchange for each Allowed General Unsecured Trade Claim, and subject to the conditions hereof, each Holder of a General Unsecured Trade Claim shall receive a payment in cash from the Class 5 Carve-Out in an amount required to pay such Holder 100% of the amount of such Holder's Allowed General Unsecured Trade Claim.

(iii)     *Impairment and Voting*: General Unsecured Trade Claims are Unimpaired and are conclusively presumed to accept the Plan pursuant to Section 1126(f). Therefore, Holders of Class 5 Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Other Priority Claims

(f)     *Class 6 – IRHA Claims.*

(i)     *Classification*:  Class 6 consists of all IRHA Claims.

(ii)     *Allowance*:  Allowed pursuant to the 9019 Settlement in the amount of $~~1,487,017.44~~1,487,017.44.00

(iii)     *Treatment*:  Except to the extent that a Holder of an Allowed IRHA Claim agrees to less favorable satisfaction, in full and final satisfaction, compromise, settlement, release, and cancellation of and in exchange for each Allowed IRHA Claim, each Holder thereof shall receive, on closing of a Sale, a payment equal to the Class 6 Carve-Out.

(iv)    *Impairment and Voting*: IRHA Claims are Impaired and are entitled to vote to accept or reject the Plan.

(g)    *Class 7 - Disputed Investor Claims.*

    (i)    *Classification*: Class 7 consists of all Disputed Investor Claims.

    (ii)    *Allowance*: All claims in Class 7 are Disputed. The Debtor does not believe there are any Allowed Claims in Class 7 and the Disputed Investor Claims will be Allowed in the amount of $0.

    (iii)    *Treatment*: Except to the extent that a Holder of an Allowed Disputed Investor Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release, and cancellation of and in exchange for each Allowed Disputed Investor Claim, each Holder of an Allowed Disputed Investor Claim (i) that is Allowed on the Effective Date shall receive a distribution in Cash on the Effective Date equal to its Allowed Disputed Investor Claim or (ii) that is Allowed after the Effective Date shall receive a distribution in Cash promptly after such Allowed Disputed Investor Claim is Allowed from the Reserve Fund equal to 100% of the amount of its Allowed Disputed Investor Claim.

    (iv)    *Impairment and Voting*: Disputed Investor Claims are impaired and are entitled to vote to accept or reject the Plan.

(h)    *Class 8—Casco Claims.*

    (i)    *Classification*: Class 8 consists of all Casco Claims.

    (ii)    Treatment: On the Effective Date, each Casco Claim shall be cancelled and released without any distribution on account of such Claims.

    (iii)    *Impairment and Voting*: Casco Claims are deemed to reject pursuant to Section 1126(g). Therefore, Holders of Allowed Casco Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Allowed Casco Claims.

(i)    *Class 9—Intercompany Claims.*

    (i)    *Classification*: Class 9 consists of all Intercompany Claims.

    (ii)    *Treatment*: On the Effective Date, each Intercompany Claim shall be cancelled and released without any distribution on account of such Claims.

    (iii)    *Impairment and Voting*: Holders of Intercompany Claims are deemed to reject pursuant to Section 1126(g). Therefore, Holders of Allowed Intercompany Claims are not entitled to vote to accept or reject the Plan,

and the votes of such Holders will not be solicited with respect to such Allowed Intercompany Claims.

(j)      *Class 10—Subordinated Claims.*

(i)      *Classification*: Class 10 consists of all Subordinated Claims, if any.

(ii)     *Treatment*: On the Effective Date, all Subordinated Claims shall be cancelled and released as of the Effective Date, and shall be of no further force or effect. Therefore, Holders of Subordinated Claims shall not receive any distribution on account of such Subordinated Claims.

(iii)    *Impairment and Voting*: Subordinated Claims are Impaired and Holders of such Claims are deemed to have rejected the Plan pursuant to Section 1126(g). Therefore, Holders of Subordinated Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Subordinated Claims.

(k)      *Class 11—Equity Interests*.

(i)      *Classification*: Class 11 consists of all Equity Interests.

(ii)     *Treatment*: On the Effective Date, all Equity Interests shall be cancelled without any distribution on account of such Equity Interests, except that the Plan Administrator, to the extent the equity interests therein shall constitute Equity Interests, shall continue in operation until the completion of its administration of the Plan as set forth herein.

(iii)    *Impairment and Voting*: Equity Interests are Impaired and Holders of such Equity Interests are deemed to have rejected the Plan pursuant to Section 1126(g). Therefore, Holders of Equity Interests are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Equity Interests.

Section 4.4     *Special Provision Governing Unimpaired Claims*.

Except as otherwise expressly provided herein, nothing in the Plan shall affect the Debtor's rights in respect of any Unimpaired Claim, including, but not limited to, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

Section 4.5     *Voting; Presumptions; Solicitation.*

(a)      *Acceptance by Certain Impaired Classes*. Only Holders of Allowed Claims in Class 2, 3, 4, 6 and 7 are entitled to vote to accept or reject the applicable Plan. An Impaired Class of Claims shall have accepted the Plan if (i) the Holders of at least 66.6% in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (ii) the Holders of more than one-half (1/2) in number of the Allowed Claims actually voting in such Class have voted to

accept the Plan. Only Holders of Claims in Classes 2, 3, 4, ~~5,~~ 6 and 7 have received, or will receive, Ballots containing detailed voting instructions.

(b)     *Conclusively Presumed Acceptance by Unimpaired Classes*. Holders of Claims in Class 1 are conclusively presumed to accept the Plan pursuant to Section 1126(f). Accordingly, such Holders are not entitled to vote to accept or reject the Plan and the votes of such Holders shall not be solicited.

(c)     *Deemed to Reject by Certain Impaired Classes*. Holders of Claims and Equity Interests in Classes 8, 9, 10 and 11 are deemed to reject the Plan pursuant to Section 1126(g). Accordingly, such Holders are not entitled to vote to accept or reject the Plan and the votes of such Holders shall not be solicited.

(d)     *Controversy Concerning Impairment*. If a controversy arises as to whether any Claims or Equity Interests, or any Class thereof, is Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

(e)     *Elimination of Classes*. To the extent applicable, any Class that does not contain any Allowed Claims or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of commencement of the Confirmation Hearing, shall be deemed to have been deleted from this Plan, for purposes of determining whether such Class has accepted or rejected this Plan under Section 1129(a)(8).

Section 4.6     *Nonconsensual Confirmation.*

Because one or more Classes of Claims or Equity Interests entitled to vote on an applicable Plan are deemed not to vote to accept the Plan, the Debtor will seek Confirmation of the Plan under Section 1129(b). The Debtor reserves the right to amend or modify the Plan to the extent, if any, that such amendment or modification is necessary for Confirmation pursuant to Section 1129(b). This provision allows the Bankruptcy Court to confirm a plan accepted by at least one impaired class so long as it does not unfairly discriminate and is fair and equitable with respect to each class of claims and interest that is impaired and has not accepted the plan. Colloquially, this mechanism is known as a "cramdown."

The Debtor believes the treatment of Claims and Equity Interests described in this Combined Plan and Disclosure Statement is fair and equitable and does not discriminate unfairly. The proposed treatment of Claims and Equity Interests provides that each Holder of such Claim or Equity Interest will be treated identically within their respective class and that, except when agreed to by such Holder, no Holder of any Claim or Equity Interest junior will receive or retain any property on account of such junior Claim or Equity Interest.

Section 4.7     *Subordinated Claims.*

The allowance, classification, and treatment of all Allowed Claims and Equity Interests, and their respective distributions and treatments under the Plan, shall take into account and conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether

41

arising under general principles of equitable subordination, Section 510(b), or otherwise. All Claims and all rights and claims between or among Holders of Claims relating in any manner whatsoever to distributions on account of Claims or Equity Interests, based upon any claimed subordination rights, whether asserted or unasserted, legal or equitable, shall be deemed satisfied by the distributions under the Plan to Holders of Claims having such subordination rights, and such subordination rights shall be deemed waived, released, cancelled, and terminated as of the Effective Date. Except as otherwise specifically provided for in the Plan, distributions to the Classes of Claims hereunder shall not be subject to levy, garnishment, attachment, or any other such similar legal process by any Holder of a Claim by reason of any subordination rights or otherwise, so that each Holder of a Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan. Pursuant to Section 510, except where otherwise provided herein, the Debtor reserves the right to reclassify any Allowed Claim or Equity Interest in accordance with any contractual, legal, or equitable subordination rights relating thereto.

Section 4.8     *No Waiver.*

Nothing contained in this Combined Plan and Disclosure Statement shall be construed to waive the Debtor's or other Entity's right to object on any basis to any Claim or Lien, including after the Effective Date.

## ARTICLE V.

## IMPORTANT DATES AND PROCEDURES[9]

| DESCRIPTION | DEADLINE |
|---|---|
| Voting Procedures Hearing Objection Deadline | January 24, 2024 at 4:00 p.m. (ET) |
| Voting Procedures and Interim Disclosure Statement Hearing | January 31, 2024 at 10:30 a.m. (ET) |
| Voting Record Date | The date of entry of the Interim Approval and Procedures Order |
| Solicitation Commencement Date | Within two (2) business days after entry of the Interim Approval and Procedures Order |
| Deadline for Creditors to File Rule 3018 Motions | February 21, 2024 at 4:00 p.m. (ET) |
| Deadline for Debtors to Respond to Rule 3018 Motions | February 28, 2024 at 4:00 p.m. (ET) |
| Hearing on Rule 3018 Motions | March 6, 2024 at 10:30 a.m. (ET) |

---

[9]     The proposed dates in the chart below are subject to the Court's availability and approval.

| Description | Deadline |
|---|---|
| Voting Deadline for this Combined Plan and Disclosure Statement | March 6, 2024 at 4:00 p.m. (ET) |
| Combined Plan and Disclosure Statement Objection Deadline | March 6, 2024 at 4:00 p.m. (ET) |
| Deadline to File Confirmation Brief, Other Evidence Supporting this Combined Plan and Disclosure Statement, and Proposed Confirmation Order | March 11, 2024 at 4:00 p.m. (ET) |
| Deadline to File Voting Tabulation Affidavit | March 11, 2024 at 4:00 p.m. (ET) |
| Combined Hearing | March 13, 2024 at 11:00 a.m. (ET) |

The Confirmation Hearing has been scheduled for **[x] at 11:00 a.m.** (prevailing eastern time) at the Bankruptcy Court, 824 North Market Street, [] Floor, Courtroom [], Wilmington, Delaware 198015, or via zoom, to consider (a) final approval of the Disclosure Statement as providing adequate information pursuant to Section 1125 and (b) Confirmation of the Plan pursuant to Section 1129. The Confirmation Hearing may be adjourned from time to time by the Debtor without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing or by filing a notice with the Bankruptcy Court.

Any objection to final approval of the Disclosure Statement as providing adequate information pursuant to Section 1125 and/or Confirmation of the Plan must be made in writing and filed with the Bankruptcy Court and served on the following parties so as to be actually received on or before **March 6, 2024 at 4:00 p.m. (prevailing Eastern time)** upon (a) counsel to the Debtor: William Chipman, Jason J. DeJonker, and William S. Hackney at Chipman@chipmanbrown.com, jason.dejonker@bclplaw.com, and william.hackney@bclplaw.com; (b) counsel to the Office of the United States Trustee, Timothy J. Fox at Timothy.Fox@usdoj.gov, and (c) counsel to the First Lien Lender, Ray New York LLC c/o of Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, NY 10004 (Attn: Jennifer Rodburg and Andrew Minear, email: Jennifer.Rodburg@friedfrank.com and Andrew.Minear@friedfrank.com) and (d) counsel to Purchaser 550W21 Owner LLC, c/o Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attn: Christopher Robertson and Eli J. Vonnegut, email: Christopher.robertson@davispolk.com and eli.vonnegut@davispolk.com. Unless an objection is timely filed and served, it may not be considered by the Bankruptcy Court at the Confirmation Hearing.

The Bankruptcy Court will confirm the Plan only if it meets all the applicable requirements of Section 1129. Among other requirements, the Plan must: (a) be accepted by all Impaired Classes of Claims or Equity Interests or, if rejected by an Impaired Class, the Plan must not "discriminate unfairly" against, and be "fair and equitable" with respect to, such Class; and (b) be feasible. The

43

Bankruptcy Court must also find that the Plan: (i) has classified Claims and Equity Interests in a permissible manner; (ii) complies with the technical requirements of Chapter 11 of the Bankruptcy Code; and (iii) has been proposed in good faith.

Claims of the Debtor's Affiliates against the Debtor, including Intercompany Claims, shall be disregarded for both voting and distribution purposes.

Accompanying this Combined Plan and Disclosure Statement for the purposes of soliciting votes on this Combined Plan and Disclosure Statement are solicitation packages, which contain copies of: (a) the Confirmation Hearing Notice; (b) a Ballot; and (c) such other documents the Bankruptcy Court may direct or approve or that Debtor deems appropriate.

Holders of Claims in non-voting classes will receive packages consisting of: (a) the Confirmation Hearing Notice; and (b) a notice of such Holder's non-voting status.

The date by which the Debtor must receive original ballots by mail, overnight delivery, hand delivery, or for electronic ballots, the deadline by which such electronic ballots must be submitted is **March 6, 2024 at 4:00 p.m. (prevailing Eastern Time)**.

If you are entitled to vote to accept or reject this Combined Plan and Disclosure Statement, a Ballot is enclosed. Please carefully review the Ballot instructions and complete the Ballot by: (a) indicating your acceptance or rejection of this Combined Plan and Disclosure Statement; (b) indicating whether you opt out of the Releases; and (c) signing and returning the Ballot to the Debtor. If you are a member of a Class entitled to vote and did not receive a Ballot, received a damaged Ballot, or lost your Ballot, please contact the Debtor's counsel.

The following Ballots will not be counted or considered:

(1)     any Ballot received after the deadline to vote, unless the Bankruptcy Court grants an extension with respect to such Ballot;

(2)     any Ballot that is illegible or contains insufficient information;

(3)     any Ballot cast by a Person or Entity that does not hold a Claim in a Class entitled to vote;

(4)     any Ballot cast for a Claim designated as unliquidated, contingent, or disputed or as zero (0) or unknown in amount and for which no Rule 3018 Motion has been timely filed;

(5)     any Ballot timely received that is cast in a manner that indicates neither acceptance nor rejection of this Combined Plan and Disclosure Statement or that indicates both acceptance and rejection of this Combined Plan and Disclosure Statement;

(6)     simultaneous duplicative Ballots voted inconsistently;

(7)     Ballots partially rejecting and partially accepting this Combined Plan and Disclosure Statement;

(8)    any Ballot received other than the official form sent by the Debtor's counsel;

(9)    any unsigned Ballot; or

(10)    any Ballot that is submitted by facsimile.

**YOU ARE URGED TO COMPLETE, DATE, SIGN, AND PROMPTLY MAIL THE BALLOT ATTACHED TO THE NOTICE. PLEASE BE SURE TO COMPLETE THE BALLOT PROPERLY AND LEGIBLY IDENTIFY THE EXACT AMOUNT OF YOUR CLAIM AND THE NAME OF THE CREDITOR.**

## ARTICLE VI.

## MEANS FOR IMPLEMENTATION OF THE PLAN

Section 6.1    *DIP Facility.*

The First Lien Lender has agreed in principle to extend post-petition debtor-in-possession financing to the Debtor in the initial principal amount of $1,626,208.0, which may be advanced in one or more separate draws as authorized by the Bankruptcy Court (generally, the "**DIP Loan**"). The DIP Loan is expected to have a non-default interest rate of a 10% per annum interest rate on the outstanding amount and maturing on or at the closing of the Sale. The DIP Loan remains subject to final agreement and execution as to the governing terms and ultimately Bankruptcy Court approval, and is thus subject to possible change or modification.

Section 6.2    *Sources of Consideration for Plan Distribution.*

The Debtor shall fund distributions under the Plan with the Sale Proceeds, Cash on hand, the Class 3 Carve-Out, the Class 4 Carve-Out, the Class 5 Carve-Out, the Class 6 Carve-Out and the Reserve Fund. Cash payments to be made pursuant to the Plan will be made by the Debtor or Plan Administrator.

Section 6.3    *Bankruptcy Rule 9019 Settlement.*

(a)    In order to facilitate a consensual plan and expeditions implementation of the Plan, including the closing of the Sale, and to compromise and settle the same, the Debtors, the First Lien Lender, DZ 21st Street, Gutkind, and IRHA have agreed to a compromise and settlement of all such issues by providing for the treatment and distributions set forth in the Plan. Specifically, as part of this settlement and compromise, DZ 21st Street shall have a stipulated Allowed Claim set forth in Class 3 and shall be entitled to the recovery set forth herein, Gutkind shall have a stipulated Allowed Claim set forth in Class 4 and shall be entitled to the recovery set forth herein and IRHA shall have a stipulated Allowed Claim set forth in Class 6 and shall be entitled to the recovery set forth herein. Pursuant to the settlement and compromise, First Lien Lender has agreed to "gift" from its recovery on account of the First Lien Claims its contribution to the Class 3 Carve-Out, Class 4 Carve-Out, Class 5 Carve-Out, Class 6 Carve-Out and Reserve Fund.

(b)    Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the settlements described in this Section 6.3 pursuant to Bankruptcy Rule 9019 and its finding that these are good faith settlements pursuant to any applicable state laws, given and made after due notice and opportunity for hearing and will bar any Causes of Action in connection with the First Lien Claims, the DZ Claims, the Gutkind Claims, the IRHA Claims, the Debtor, and any other party in interest.

Section 6.4    *Reserve Fund*

Pursuant to and in accordance with the settlement set forth in Section 6.4 of this Plan, the Reserve Fund, which shall not exceed $1,749,530.32, shall be funded by the proceeds of the Sale. To the extent there are any proceeds in the Reserve Fund after distributions to Holders of Allowed Disputed Investor Claims in Class 7, such excess proceeds shall be distributed to the First Lien Lender, DZ 21st Street and Gutkind based on the ratio of their original contribution the Reserve Fund.

Section 6.5    *Sale.*

(a)    After Confirmation, the Debtor shall consummate the Sale, and any other transactions contemplated by the Purchase and Sale Contract, pursuant to the terms and conditions of the Purchase and Sale Contract. Upon consummation of the Sale: (i) the Property shall be transferred to and vest in Purchaser; and (ii) the First Lien Lender shall assign its mortgage encumbering the Property and promissory note related thereto to Purchaser's lender, the identity of which Purchaser will disclose to the Debtor and the First Lien Lender prior to such consummation. The Sale shall not be subject to overbidding. Upon entry of the Confirmation Order by the Bankruptcy Court, the Sale and the Purchase and Sale Contract will be deemed approved, all matters provided for under the Purchase and Sale Contract and any related documentation will be deemed authorized and approved without any requirement of further act or action and the Debtor will be authorized to execute and deliver, and to consummate the transactions contemplated by, the Purchase and Sale Contract and any related documentation, as well as to execute, deliver, file, record and issue any notes, documents (including UCC financing statements), or agreements in connection therewith, without further notice to or order of the Bankruptcy Court, act or action under applicable Law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity.

(b)    Notwithstanding the foregoing, the consummation of the Sale shall occur on or before May 31, 2024. In the event that consummation of the Sale does not occur by May 31, 2024, and the Debtor, the First Lien Lender, and Purchaser have not agreed, in writing, to extend such deadline, the Plan, any votes cast in favor of the Plan and any compromises or agreed discounts incorporated in the Plan shall be deemed withdrawn, revoked, and deemed void *ab initio*, notwithstanding whether the Bankruptcy Court has entered the Confirmation Order. In the event that such written agreement extending the deadline to consummate the Sale is reached on or before May 31, 2024, the Debtor shall file such agreement in the Chapter 11 Case.

(c)    Subject to Section 6.4(a) above, prior to, on, or as soon as reasonably practicable after the Effective Date, the Debtor may take all actions as may be reasonably necessary or

appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan and the Plan Supplement, including: (i) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan; and (ii) all other actions that the Debtor reasonably determines are necessary or appropriate.

Section 6.6    *The Plan Administration Process and Wind Down.*

(a)    On the Effective Date, Plan Administrator shall accept authority over the Plan Administration Assets as a plan administration officer; *provided, however*, that Plan Administrator may abandon or otherwise not accept any assets that Plan Administrator believes, in good faith, have no value to the administration of the Plan or the Wind Down. As of the Effective Date, all assets vested as Plan Administration Assets and all assets dealt with in the Plan shall be free and clear of all Liens, Claims, and Equity Interests except as otherwise specifically provided in the Plan or in the Confirmation Order.

(b)    The powers, rights, and responsibilities of the Plan Administrator shall include the authority and responsibility to: (i) receive, manage, invest, supervise, and protect the Plan Administration Assets; (ii) pay taxes or other obligations incurred by the Estate after the Effective Date; (iii) retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals, and consultants to advise and assist in the administration, prosecution, and distribution of Plan Administration Assets and adjudication of disputed Claims and Equity Interests; (iv) calculate and implement distributions of Plan Administration Assets; (v) assert, settle, and abandon retained Causes of Action; (vi) resolve issues involving Claims and Equity Interests; and (vii) perform such other duties and functions that are consistent with the implementation of the Plan and undertake all administrative functions of the Chapter 11 Case, including the ultimate closing of the Chapter 11 Case. Plan Administrator is the successor to the Debtor, the Estate, and the Debtor's rights to their books and records. Plan Administrator shall be authorized pursuant to Section 554, in its sole discretion without any further notice to any party or action, order or approval of the Bankruptcy Court, to abandon, dispose of, or destroy in any commercially reasonable manner all originals or copies of any documents and books and records, including any electronic records, of the Debtor and which Plan Administrator reasonably concludes are burdensome or of inconsequential value and benefit.

On the Effective Date, Plan Administrator shall also have the power, right, and responsibility to conduct the Wind Down and to take possession of all books, records, and files of the Debtor and the Estate and provide for the retention and storage of such books, records, and files until such time as Plan Administrator determines that retention of same is no longer necessary or required. Plan Administrator is authorized and empowered to effect the dissolution of the Debtor as soon as practicable after the Effective Date without the need for any company action or approval, and neither the Debtor nor Plan Administrator shall be required to pay any taxes or fees to cause such dissolution. On the Effective Date, Plan Administrator shall Wind Down the affairs of the Debtor and file final tax returns for the Debtor. Plan Administrator shall be authorized to file on behalf of the Debtor and any non-Debtor Affiliates certificates of dissolution and any and all other corporate and company documents necessary to effectuate the Wind Down without further action under

applicable law, regulation, order, or rule, including any action by the stockholders, members, the board of directors, or board of directors or similar governing body of the Debtor.

(c)    The Debtor shall indemnify and hold harmless Plan Administrator solely in its capacity as such for any losses incurred in such capacity, except to the extent such losses were the result of Plan Administrator's gross negligence, willful misconduct, or criminal conduct.

(d)    From and after the Effective Date, assertion, settlement, or abandonment of all retained Causes of Action shall be the sole responsibility of Plan Administrator pursuant to the Plan and the Confirmation Order. From and after the Effective Date, Plan Administrator shall have exclusive rights, powers, and interests of the Estate to assert, settle, or abandon such retained Causes of Action as the sole representative of the Estate pursuant to Section 1123(b)(3). All such retained Causes of Action are reserved and preserved.

(e)    All expenses incurred or anticipated to be incurred by Plan Administrator, including the adjudication of any disputed Claims and Equity Interests, shall be the responsibility of the Estate and paid from the Sale Proceeds or other assets of the Estate.

Section 6.7    *Corporate Action.*

(a)    On the Effective Date, all actions contemplated by this Combined Plan and Disclosure Statement, the Plan Supplement and the Purchase and Sale Contract shall be deemed authorized and approved in all respects, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court. All matters provided for in the Plan involving the corporate structure of the Debtor and any corporate action required by the Debtor in connection with the Plan shall be deemed to have timely occurred and shall be in effect and shall be authorized and approved in all respects, without any requirement of further action by the security holders, directors, or officers of the Debtor or otherwise.

(b)    On or before the Effective Date, as applicable, the appropriate officers of the Debtor, shall be authorized and, as applicable, directed, to issue, execute, and deliver the agreements, documents, and instruments contemplated by this Combined Plan and Disclosure Statement, the Plan Supplement and the Purchase and Sale Contract (or necessary or desirable to effect the transactions contemplated by the foregoing) in the name of and on behalf of the Debtor, and any and all agreements, documents, and instruments relating to the foregoing.

(c)    The authorizations and approvals contemplated by this Section 6.7 shall be effective notwithstanding any requirements under non-bankruptcy Law.

(d)    After the Effective Date, to the extent necessary, Plan Administrator shall have all authority to address any and all matters that would have required the approval of, and to act on behalf of, the stockholders, directors, members, or managers of the Debtor, including the Wind Down and dissolution of the Debtor.

Section 6.8     *Vesting of Assets.*

On the Effective Date, pursuant to Sections 1141(b) and (c), the Plan Administration Assets, if any, shall vest in the Debtor and the Estate for the purpose of liquidating the Plan Administration Assets and winding down the Estate, free and clear of all Liens, Claims, charges, and other encumbrances.

Section 6.9     *Exemption from Certain Transfer Taxes and Recording Fees.*

To the fullest extent permitted by Section 1146(a), any transfer from the Debtor to any Entity pursuant to, in contemplation of, or in connection with this Combined Plan and Disclosure Statement or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, securities, or other interest in the Debtor; (b) the creation, modification, consolidation, or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (c) the making, assignment, or recording of any lease or sublease; or (d) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Combined Plan and Disclosure Statement, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to this Combined Plan and Disclosure Statement, shall not be subject to any Stamp or Similar Tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. Unless the Bankruptcy Court orders otherwise, all sales, transfers, and assignments of owned and leased property approved by the Bankruptcy Court on or before the Effective Date shall be deemed to have been in furtherance of, or in connection with, this Combined Plan and Disclosure Statement.

Section 6.10    *Effectuating Documents; Further Transactions.*

Prior to, on, and after the Effective Date, the Debtor and the directors, managers, officers, authorized persons, and members of the boards of directors or managers and directors thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and provisions of this Combined Plan and Disclosure Statement, without the need for any approvals, authorizations, actions, or consents except for those expressly required pursuant to this Combined Plan and Disclosure Statement.

The Confirmation Order shall, and shall be deemed to, pursuant to both Sections 363 and 1123, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

49

Section 6.11    *Nonconsensual Confirmation.*

The Debtor intends to undertake to have the Bankruptcy Court confirm the Plan under Section 1129(b) as to any Classes that reject or are deemed to reject the Plan.

Section 6.12    *Closing of the Chapter 11 Case.*

Plan Administrator shall, promptly after the full administration of the Chapter 11 Case, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case. Upon the filing of a motion to close the Chapter 11 Case, the Debtor shall file a final report with respect to the Chapter 11 Case pursuant to Local Rule 3022-1(c).

## ARTICLE VII.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Section 7.1    *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

(a)    All Executory Contracts and Unexpired Leases of the Debtor that are not otherwise assumed or rejected will be deemed assumed by the Debtor in accordance with the provisions and requirements of Sections 365 and 1123, other than (i) those that are identified on the Rejection Schedule; (ii) those that have been previously assumed or rejected pursuant to a Final Order prior to the Effective Date; (iii) those that are the subject of a motion seeking assumption or rejection as of the Effective Date; or (iv) those that are to be rejected pursuant to the terms of this Combined Plan and Disclosure Statement. Each Executory Contract and Unexpired Lease assumed pursuant to this Article VII but not assigned to a third party shall be deemed to be assigned to the applicable contracting Debtor, and be fully enforceable by the Debtor in accordance with the terms thereof, except as otherwise modified by the provisions of this Combined Plan and Disclosure Statement, or by any order of the Bankruptcy Court.

(b)    The Confirmation Order shall constitute an order of the Bankruptcy Court: (i) approving the assumption, assumption and assignment, or rejection, as the case may be, of Executory Contracts or Unexpired Leases, as described in this Combined Plan and Disclosure Statement and Plan Supplement, pursuant to Sections 365(a) and 1123(b)(2); (ii) providing that each assumption, assignment, or rejection, as the case may be, is in the best interest of the Debtor, the Estate, and all parties in interest in the Chapter 11 Case; and (iii) providing that the requirements for assumption or assumption and assignment of any Executory Contract or Unexpired Lease to be assumed have been satisfied. Unless otherwise indicated, all assumptions or rejections of Executory Contracts or Unexpired Leases pursuant to this Combined Plan and Disclosure Statement are effective as of the Effective Date. Counterparties to Executory Contracts or Unexpired Leases that are deemed rejected as of the Effective Date shall have the right to assert any Claim on account of the rejection of such Executory Contracts or Unexpired Leases subject to compliance with the requirements herein; *provided, however*, that such Claims must be filed with the clerk of the Bankruptcy Court and served upon Plan Administrator and counsel for the Debtor within thirty (30) days of the Bankruptcy Court entering the Confirmation Order; *provided, further*,

50

that any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed within the time required by this section will be forever barred from assertion against the Debtor, the Estate, the property of the Debtor, or Plan Administrator. Any Claim arising from the rejection of Executory Contracts or Unexpired Leases that becomes an Allowed Claim shall be classified as a 5 General Unsecured Claim.

(c)      Except as otherwise provided herein or agreed to by the Debtor and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests. To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to this Combined Plan and Disclosure Statement restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by this Combined Plan and Disclosure Statement shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

(d)      The Debtor shall create the Rejection Schedule in consultation with Purchaser, and Purchaser shall have approved any assumptions, rejections, or modifications of material Executory Contracts and Unexpired Leases as set forth therein, which approval shall not be unreasonably withheld, conditioned, or delayed. The Debtor shall include the Rejection Schedule with the Plan Supplement, filed on or before the hearing to approve this Combined Plan and Disclosure Statement. Notwithstanding anything to the contrary herein, the Debtor reserves the right to alter, amend, modify, or supplement the Rejection Schedule at any time before the Effective Date, in consultation with Purchaser.

Section 7.2    *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

(a)      Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed or assumed and assigned pursuant to this Combined Plan and Disclosure Statement shall be satisfied, pursuant to Section 365(b)(1), by payment of the Cure Cost in Cash on the Effective Date, subject to the limitation described in the following paragraph, or on such other terms as the parties to such Executory Contract or Unexpired Lease may otherwise agree. No later than the Plan Supplement Filing Date, to the extent not previously filed with the Bankruptcy Court and served on affected counterparties, the Debtor shall file and serve upon applicable contract and lease counterparties notices of proposed assumption and proposed Cure Costs, together with procedures for objecting thereto and resolution of disputes by the Bankruptcy Court. Any objection by a contract or lease counterparty to a proposed assumption, assumption and assignment, or related Cure Cost must be filed, served, and actually received by the Debtor within fourteen (14) days of such assumption or assumption and assignment.

51

(b)      Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption, assumption and assignment, or Cure Cost shall be deemed to have consented to such assumption, assumption and assignment, or Cure Cost. In the event of a dispute regarding: (i) the amount of any Cure Cost, (ii) the ability of the Debtor or any assignee to provide "adequate assurance of future performance" within the meaning of Section 365(b), if applicable, under the Executory Contract or the Unexpired Lease to be assumed or assumed and assigned, and/or (iii) any other matter pertaining to assumption and/or assumption and assignment, then the Bankruptcy Court shall hear such dispute prior to the assumption and/or assumption and assignment becoming effective, and the applicable Cure Costs associated therewith (if any) shall be paid following entry of a Final Order resolving the dispute and approving the assumption or assumption and assignment and shall not prevent or delay implementation of the Plan or Effective Date; *provided, however*, that the Debtor may settle any dispute regarding the amount of any Cure Cost without any further notice to any party or any action, order, or approval of the Bankruptcy Court; *provided, further,* that notwithstanding anything to the contrary herein, the Debtor reserves the right to reject any Executory Contract or Unexpired Lease within 30 days after the entry of a Final Order resolving an objection to assumption or assumption and assignment, determining the Cure Cost for an Executory Contract or Unexpired Lease that was subject to a dispute, or resolving any request for adequate assurance of future performance required to assume such Executory Contract or Unexpired Lease.

(c)      Assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to this Combined Plan and Disclosure Statement or otherwise, and the payment of the associated Cure Cost, if any, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption or assumption and assignment. Any Proofs of Claim filed with respect to any Executory Contract or Unexpired Lease that has been assumed or assumed and assigned, and the associated Cure Cost paid, shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

Section 7.3      *Contracts and Leases Entered into After the Petition Date*.

Contracts and leases entered into after the Petition Date by the Debtor, including any Executory Contracts and Unexpired Leases assumed by the Debtor, shall be performed by the Debtor in the ordinary course of its business. Accordingly, such contracts and leases that are not otherwise assumed or rejected will be deemed assumed by the Debtor in accordance with the provisions and requirements of Sections 365 and 1123.

Section 7.4      *Insurance Policies.*

Notwithstanding anything to the contrary in this Combined Plan and Disclosure Statement, the Plan Supplement, any bar date notice or claim objection, and any other document related to any of the foregoing, all insurance policies pursuant to which the Debtor has any obligations in effect as of the Effective Date shall be deemed and treated as executory contracts pursuant to this Combined Plan and Disclosure Statement and shall be assumed by the Debtor or Plan

Administrator, as applicable, and shall continue in full force and effect thereafter in accordance with their respective terms. All other insurance policies not expressly assumed or assumed and assigned shall be deemed rejected.

Section 7.5    *Reservation of Rights.*

Nothing contained in this Combined Plan and Disclosure Statement shall constitute an admission by the Debtor that any contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease.

Section 7.6    *Nonoccurrence of the Effective Date*.

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to Section 365(d)(4), unless such deadline(s) have expired.

## ARTICLE VIII.

## PROVISIONS GOVERNING DISTRIBUTIONS

Section 8.1    *Distribution on Account of Claims and Equity Interests Allowed as of the Effective Date.*

Except as otherwise provided in this Combined Plan and Disclosure Statement or a Final Order, or as agreed to by the relevant parties, distributions under the Plan on account of Claims and Equity Interests Allowed on or before the Effective Date shall be made on the Distribution Date; *provided, however*, that: (a) Allowed Administrative Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Chapter 11 Case or assumed by the Debtor prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice and (b) in accordance with Article IV of this Combined Plan and Disclosure Statement, Allowed Priority Tax Claims, unless otherwise agreed, shall be treated in accordance with the terms set forth in Section 1129(a)(9)(C). To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in accordance with the terms of any agreement between the Debtor and the Holder of such Claim, or as may be due and payable under applicable non-bankruptcy Law, or in the ordinary course of business.

Section 8.2    *Distribution on Account of Claims and Equity Interests Allowed After the Effective Date.*

(a)    *Payments and Distributions on Disputed Claims*. Except as otherwise provided in the Plan, a Final Order, or as agreed to by the relevant parties, distributions under the Plan on

account of Disputed Claims that become Allowed after the Effective Date shall be made on the first day that is thirty (30) Business Days after such Disputed Claim becomes an Allowed Claim; *provided, however*, that: (i) Disputed Administrative Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Chapter 11 Case or assumed by the Debtor on or before the Effective Date that become Allowed after the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice; and (ii) Disputed Priority Tax Claims that become Allowed Priority Tax Claims after the Effective Date shall be treated as Allowed Priority Tax Claims in accordance with Article XI of this Combined Plan and Disclosure Statement and paid.

(b)     *Special Rules for Distributions to Holders of Disputed Claims*. Notwithstanding any provision otherwise in this Combined Plan and Disclosure Statement and except as otherwise agreed to by the relevant parties, no payments or distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or agreement among the relevant parties or by Final Order.

Section 8.3     *Timing and Calculation of Amounts to Be Distributed*.

Except as otherwise provided herein, on the Distribution Date, each Holder of an Allowed Claim shall receive the full amount of the distributions that this Combined Plan and Disclosure Statement provides for Allowed Claims in the applicable Class. Except as otherwise provided in this Combined Plan and Disclosure Statement, or any order of the Bankruptcy Court, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in this Combined Plan and Disclosure Statement, regardless of whether such distributions are delivered on or at any time after the Effective Date.

Section 8.4     *Delivery of Distributions*.

(a)     *Record Date for Distributions*. On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall be authorized and entitled to recognize only those Holders of Claims listed on the Claims Register as of the close of business on the Distribution Record Date. Notwithstanding the foregoing, if a Claim is transferred twenty (20) or fewer days before the Distribution Date, Distribution Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor. The Debtor, the Plan Administrator and the Distribution Agent shall have no obligation to recognize any transfer of any applicable Claims occurring after the close of business on the Distribution Record Date, and shall be entitled to recognize and deal for all purposes under this Combined Plan and Disclosure Statement with only those Holders of record as of the close of business on the Distribution Record Date.

(b)     *Cash Distributions*. Distributions of Cash may be made either by check drawn on a domestic bank or wire transfer from a domestic bank, at the option of the Debtor or Plan Administrator, except that Cash payments made to foreign creditors may be made in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

(c) *Delivery of Distributions in General*. Except as otherwise provided in this Combined Plan and Disclosure Statement, Distribution Agent shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated in the Debtor's records as of the date of any such distribution, including the address set forth in any Proof of Claim filed by that Holder; *provided, however*, that the manner of such distributions shall be determined at the discretion of the Debtor or Plan Administrator, and no Distribution Agent shall incur any liability whatsoever on account of any distributions under the Plan.

(d) *Delivery of Distributions on Account of First Lien Claims*. The First Lien Lender shall be deemed to be the Holder of all First Lien Claims for purposes of distributions to be made hereunder, and all distributions on account of the First Lien Claims shall be made to the First Lien Lender. As soon as practicable following compliance with the requirements set forth in Article VIII of the Plan (as applicable), the First Lien Lender shall arrange to deliver or direct the delivery of such distributions to or on behalf of the Holders of Allowed First Lien Claims in accordance with the terms of this Combined Plan and Disclosure Statement. Notwithstanding anything in this Combined Plan and Disclosure Statement to the contrary, and without limiting the exculpation and release provisions of this Combined Plan and Disclosure Statement, the First Lien Lender shall not have any liability to any Entity with respect to distributions made or directed to be made by the First Lien Lender.

Section 8.5    *Distributions by Distribution Agent.*

Plan Administrator shall serve as Distribution Agent (provided that Plan Administrator may hire professionals or consultants to assist with making disbursements or to act as Distribution Agent) and shall cause all distributions to be made to Holders of Claims after the Effective Date. Distribution Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

Section 8.6    *Minimum Distributions*.

Notwithstanding anything herein to the contrary, the Debtor, Plan Administrator, and Distribution Agent shall not be required to make distributions or payments of less than $100 (whether Cash or otherwise) and shall not be required to make partial distributions or payments of fractions of dollars. Whenever any payment or distribution of a fraction of a dollar under the Plan would otherwise be called for, the actual payment or distribution shall reflect a rounding of such fraction to the nearest whole dollar or share of applicable equity interests (up or down), with half dollars and half shares of applicable equity interests or less being rounded down.

Section 8.7    *Undeliverable Distributions.*

(a) *Holders of Certain Undeliverable Distributions*. If any distribution to a Holder of an Allowed Claim made in accordance herewith is returned to the Debtor or Plan Administrator (or its Distribution Agent) as undeliverable, no further distributions shall be made to such Holder. Undeliverable distributions shall remain in the possession of the Debtor or Plan Administrator, subject to Section 8.7(b) below, until such time as any such distributions become deliverable.

Undeliverable distributions shall not be entitled to any additional interest, dividends, or other accruals of any kind on account of their distribution being undeliverable.

(b)     *Failure to Claim Undeliverable Distributions*. Any distribution under the Plan that is an Unclaimed Distribution for a period of six (6) months after such distribution shall be deemed unclaimed property under Section 347(b), and such Unclaimed Distribution shall revert to and vest in the Debtor or Plan Administrator free of any restrictions thereon. Upon vesting, the Claim of any Holder or successor to such Holder with respect to such property shall be cancelled and forever barred, notwithstanding federal or state escheat, abandoned, or unclaimed property laws to the contrary. Nothing contained herein shall require the Debtor or Plan Administrator to attempt to locate any Holder of an Allowed Claim.

(c)     *Failure to Present Checks*. Checks issued by Distribution Agent on account of Allowed Claims shall be null and void if not negotiated within 90 days after the issuance of such check. Any Holder of an Allowed Claim holding an un-negotiated check that does not request reissuance of such un-negotiated check within 90 days after the date of mailing or other delivery of such check shall have its Claim for such un-negotiated check released and be forever barred, estopped, and enjoined from asserting any such Claim against the Debtor, Plan Administrator, or its property. Within 90 days after the mailing or other delivery of any such distribution checks, notwithstanding applicable escheatment Laws, all such distributions shall revert to the Debtor or Plan Administrator. Nothing contained herein shall require the Debtor or Plan Administrator to attempt to locate any Holder of an Allowed Claim.

Section 8.8     *Compliance with Tax Requirements/Allocations.*

In connection with this Combined Plan and Disclosure Statement, to the extent applicable, the Debtor and Plan Administrator shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in this Combined Plan and Disclosure Statement to the contrary, the Debtor, Plan Administrator, and Distribution Agent shall be authorized to take all actions reasonably necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate. The Debtor and Plan Administrator reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

Section 8.9     *Surrender of Cancelled Instruments or Securities.*

Except as otherwise provided in this Combined Plan and Disclosure Statement, on the Effective Date or as soon as reasonably practicable thereafter, each Holder of a certificate or instrument evidencing a Claim or Equity Interest that is released or cancelled by the Plan shall be deemed to have surrendered such certificate or instrument to Plan Administrator. Except as otherwise expressly provided in the Plan, such surrendered certificate or instrument shall be

cancelled solely with respect to the Debtor, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such certificate or instrument, including with respect to any indenture or agreement that governs the rights of the Holder of a Claim or Equity Interests, which shall continue in effect. Notwithstanding anything to the contrary herein, this paragraph shall not apply to certificates or instruments evidencing Claims that are Unimpaired under the Plan.

Section 8.10    *Claims Paid or Payable by Third Parties.*

(a)    *Claims Paid by Third Parties*. The Notice and Claims Agent, as applicable, shall reduce in full a Claim to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtor or Plan Administrator without any further notice to or action, order, or approval of the Bankruptcy Court. To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not the Debtor or Plan Administrator on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution under the Plan to the Debtor or Plan Administrator, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

(b)    *Claims Payable by Insurance*. No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to any of the Debtor's insurance policies, if any, until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policies. To the extent that one or more of the Debtor's insurers satisfies or agrees to satisfy in full or in part a Claim, if any, then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

(c)    *Applicability of Insurance Policies*. Except as otherwise provided in this Combined Plan and Disclosure Statement, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in this Combined Plan and Disclosure Statement shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE IX.

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS OR EQUITY INTERESTS

Section 9.1    *Allowance of Claims and Equity Interests.*

(a)    Except as provided in Article XI of this Combined Plan and Disclosure Statement, Plan Administrator shall have and retain any and all rights and defenses the Debtor had with respect to any Claim or Equity Interest immediately prior to the Effective Date, except with respect to any Claim deemed Allowed under the Plan.

(b)      Except as expressly provided in this Combined Plan and Disclosure Statement or in any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Court has entered a Final Order (including the Confirmation Order) in the Chapter 11 Case allowing such Claim. All settled Claims approved prior to the Effective Date pursuant to a Final Order of the Bankruptcy Court, pursuant to Bankruptcy Rule 9019 or otherwise, shall be binding on all parties.

Section 9.2      *Claims Administration Responsibility.*

Except as otherwise specifically provided in this Combined Plan and Disclosure Statement or by order of the Bankruptcy Court, and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, on and after the Effective Date, Plan Administrator shall have the sole authority for administering, disputing, objecting to, compromising, or otherwise resolving all Claims against, and Equity Interests in, the Debtor, including the authority: (a) to file, withdraw, or litigate to judgment objections to Claims or Equity Interests; (b) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (c) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. In the event that any objection to a Claim filed by the Debtor remains pending as of the Effective Date, Plan Administrator shall be deemed substituted for the Debtor as the objecting party.

Section 9.3      *Estimation of Claims and Equity Interests.*

Before or after the Effective Date, the Debtor or Plan Administrator, as applicable, may (but is not required to) at any time request that the Bankruptcy Court estimate any Claim or Equity Interest pursuant to Section 502(c) or Bankruptcy Rule 3012 for any reason, regardless of whether any party previously objected to such Claim or Equity Interest or whether the Bankruptcy Court has ruled on any such objection; and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Equity Interest, including during the litigation of any objection to any Claim or Equity Interest or during the appeal relating to such objection. Notwithstanding any provision otherwise in this Combined Plan and Disclosure Statement, a Claim or Equity Interest that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any Claim or Equity Interest, such estimated amount shall constitute a limitation on the maximum amount of such Claim or Equity Interest for all purposes under the Plan, and Plan Administrator may elect to pursue any supplemental proceedings to object to any distribution on such Claim or Equity Interest. On October 6, 2023, the Debtor filed a motion to estimate in regards to the Disputed Investor Claims. That motion is expected to be withdrawn prior to the hearing on confirmation as the Reserve Fund has been established to address the only claims which might fall into the Disputed Investor Claim category. Notwithstanding Section 502(j), in no event shall any Holder of a Claim that has been estimated be entitled to seek reconsideration of such estimation unless such Holder has filed a motion requesting the right to seek such reconsideration on or before twenty-one (21) days after the date on which such Claim is estimated. Each of the foregoing procedures are

58

cumulative and not exclusive of one another. Claims may be estimated and compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

Section 9.4    *Adjustment to Claims and Equity Interests Without Objection.*

Any Claim or Equity Interest that has been paid or satisfied, or any Claim or Equity Interest that has been amended or superseded, may be adjusted or expunged on the Claims Register by Plan Administrator without filing an objection to such Claim or Equity Interest or further notice to or action, order, or approval of the Bankruptcy Court.

Section 9.5    *Disallowance of Certain Claims.*

Any Claims held by Entities from which property is recoverable under Sections 542, 543, 550, or 553 or by a transferee of a transfer avoidable under Sections 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) shall be deemed disallowed pursuant to Section 502(d), and Holders of such Claims may not receive any distributions on account of such Claims and Equity Interests until such time as such Causes of Action against that Entity have been settled or an order of the Bankruptcy Court with respect thereto has been entered and all sums due have been turned over or paid to Plan Administrator. All Proofs of Claim filed on account of an Indemnification Obligation to a director, officer or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such Indemnification Obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further action, order or approval of the Bankruptcy Court. However, the Plan Administrator shall notify the Clerk of the Court and the Claims Agent of any such claim disallowed pursuant to this provision.

**Except as provided herein or otherwise agreed, any and all Proofs of Claim filed after the Claims Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further action, order, or approval of the Bankruptcy Court, and Holders of such Claims shall not receive any distributions on account of such Claims. Again, the Plan Administrator shall notify the Clerk of the Court and the Claims Agent of any such Claim disallowed pursuant to this provision.**

Section 9.6    *Offer of Judgment.*

Plan Administrator is authorized to serve upon any Holder of a Claim an offer to allow judgment to be taken on account of such Claim, and Federal Rule of Civil Procedure 68 shall apply to such offer of judgment. To the extent the Holder of a Claim or Equity Interest must pay the costs incurred by Plan Administrator after making such offer, Plan Administrator is entitled to setoff such amounts against the amount of any distribution to be paid to such Holder without any further notice to or action, order, or approval of the Bankruptcy Court.

Section 9.7    *Amendments to Claims.*

On or after the Effective Date, except as provided herein, a Claim may not be filed or amended without the prior authorization of the Bankruptcy Court or Plan Administrator, and, to the extent such prior authorization is not received, any such new or amended Claim filed shall be deemed disallowed in full and expunged without any further action.

59

Section 9.8    *No Interest on Disputed Claims.*

Unless otherwise specifically provided for in this Combined Plan and Disclosure Statement or as otherwise required by Section 506(b), postpetition interest shall not accrue or be paid on Claims or Equity Interests, and no Holder of a Claim or Equity Interest shall be entitled to interest accruing on or after the Petition Date on any Claim or Equity Interest. Without limiting the foregoing, unless otherwise specifically provided for in this Combined Plan and Disclosure Statement or otherwise required by Section 506(b), interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final distribution is made, if any.

## ARTICLE X.

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

Section 10.1    *Conditions Precedent to Confirmation of the Plan.*

The following are conditions precedent to entry of the Confirmation Order:

(a)    the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been filed;

(b)    the Confirmation Order shall be consistent in all material respects with this Combined Plan and Disclosure Statement, and shall otherwise be in a form reasonably acceptable to the Debtor and the First Lien Lender, which consent as to the form of the Confirmation Order shall not be unreasonably withheld, conditioned, or delayed; and

(c)    this Combined Plan and Disclosure Statement shall not have been materially amended, altered, or modified except as set forth herein.

Section 10.2    *Conditions Precedent to the Effective Date.*

The Effective Date shall not occur unless and until each of the following conditions have occurred or been waived in accordance with the terms herein:

(a)    the Confirmation Order shall have become a Final Order (unless otherwise waived by the First Lien Lender) and shall not have been stayed;

(b)    all documents, certificates, and agreements necessary to implement the Plan shall have been executed and tendered for delivery to the required parties and, to the extent required, filed with the applicable Governmental Units in accordance with applicable Laws, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms thereof (or will be satisfied and waived substantially concurrently with the occurrence of the Effective Date);

(c)    this Combined Plan and Disclosure Statement shall not have been materially amended, altered, or modified from the Combined Plan and Disclosure Statement as confirmed by

the Confirmation Order, unless such material amendment, alteration, or modification has been made as set forth herein;

(d)    all actions necessary to implement this Combined Plan and Disclosure Statement shall have been effected;

(e)    all governmental and material third party approvals and consents necessary in connection with the Sale shall have been obtained, all conditions precedent shall have been fulfilled conditions and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on the Sale;

(f)    the 9019 Settlement shall have been approved by the Bankruptcy Court (unless otherwise waived by the First Lien Lender, DZ 21st Street, Gutkind and IRHA);

(g)    there shall be no ruling, judgment, or order issued by any Governmental Unit making illegal, enjoining, or otherwise preventing or prohibiting the consummation of the Sale

(h)    the First Lien Lender shall receive a distribution from the Sale proceeds on account of its Class 2 Claims of not less than $67,000,000; and

(i)    the Sale shall have closed and been consummated.

Section 10.3    *Waiver of Conditions Precedent.*

The Debtor, with the consent of the First Lien Lender, which consent, other than with respect to Section 10.2(g) and Section 10.2(i), shall not be unreasonably withheld, conditioned, or delayed, may waive any of the conditions to the Effective Date set forth above at any time, without any notice to any parties in interest and without any further notice to, or action, order, or approval of, the Bankruptcy Court, and without any formal action other than a proceeding to confirm the Plan; *provided, that,* with respect to the condition in Section 10.2(f) and Section 10.2(g) hereof, DZ 21st Street's and Gutkind's consent shall also be required.

Section 10.4    *Effect of Failure of Conditions Precedent.*

If the Effective Date does not occur, then, upon notice by the Debtor to the Bankruptcy Court: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (c) nothing contained in this Combined Plan and Disclosure Statement or the Confirmation Order shall: (i) constitute a waiver or release of any Claims, Equity Interests, or Causes of Action, (ii) prejudice in any manner the rights of the Debtor or any other Entity, or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Entity.

Section 10.5    *Reservation of Rights.*

The Plan shall have no force or effect unless and until the Confirmation Order is entered. Prior to the Effective Date, none of the filing of this Combined Plan and Disclosure Statement, any statement or provision contained in this Combined Plan and Disclosure Statement, or action taken by the Debtor, the First Lien Lender, DZ 21st Street or Gutkind with respect to this Combined Plan and Disclosure Statement shall be, or shall be deemed to be, an admission or waiver of any rights of the Debtor or any other party with respect to any Claims or Equity Interests or any other matter.

Section 10.6    *Substantial Consummation of the Plan.*

Substantial consummation of the Plan under Section 1101(2) shall be deemed to occur on the Effective Date.

## ARTICLE XI.

## EFFECT OF CONFIRMATION

Section 11.1    *Binding Effect.*

Subject to the occurrence of the Effective Date, on and after the entry of the Confirmation Order, the provisions of the Plan shall bind and inure to the benefit of the Debtor, Plan Administrator, the First Lien Lender, and each Holder of a Claim against or Equity Interest in the Debtor and inure to the benefit of and be binding on the Debtor's, Plan Administrator's, the First Lien Lender's, and Holder's respective successors and assigns, regardless of whether the Claim or Equity Interest of such Holder is Impaired under the Plan and whether such Holder has accepted or rejected the Plan or is deemed to have accepted or rejected the Plan.

Section 11.2    *Release of Claims and Termination of Equity Interests; Compromise and Settlement of Claims, Equity Interests, and Controversies.*

(a)    To the fullest extent permitted by Section 1141(d), and except as otherwise specifically provided in the Plan: (i) the distributions, rights, and treatment that are provided in the Plan shall be in full and final satisfaction, settlement, release, and cancellation, effective as of the Effective Date, of all Claims and Equity Interests of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, whether known or unknown, liabilities of, Liens on, obligations of, and rights against the Debtor, Plan Administrator, or any of their Assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Equity Interests, including demands, liabilities, and causes of action that arose prior to the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h), or 502(i), in each case whether or not: (A) a Proof of Claim or Equity Interest is filed or deemed filed pursuant to Section 501; (B) a Claim or Equity Interest is Allowed; or (C) the Holder of such Claim or Equity Interest has accepted or rejected, or been deemed to accept or reject, the Plan; (ii) all Claims and Equity Interests shall be satisfied,

62

cancelled, and released in full, and the Debtor's liability with respect thereto shall be extinguished completely, including any liability of the kind specified under Section 502(g); and (iii) all Entities shall be precluded from asserting against the Debtor, the Estate, Plan Administrator, their successors and assigns, and their assets and properties any other Claims or Equity Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date. Except as otherwise provided herein, any default by the Debtor or its Affiliates with respect to any Claim or Equity Interest that existed immediately prior to or on account of the filing of the Chapter 11 Case shall be deemed cured on the Effective Date. The Confirmation Order shall be a judicial determination of the release of all Claims and Equity Interests subject to the Effective Date occurring, except as otherwise expressly provided in the Plan.

(b)      Pursuant to Section 1123 and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Equity Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Equity Interest may have with respect to any Allowed Claim or Equity Interest, or any distribution to be made on account of such Allowed Claim or Equity Interest, and shall be deemed a motion to approve such good-faith compromise between the Debtor and any other party that has settled or compromised with the Debtor. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement among the parties that have agreed to them (among any other party who has expressly entered into a written settlement agreement) pursuant to the Plan, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor and its Estate and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, Plan Administrator may compromise and settle Claims against the Debtor and its Estate.

Notwithstanding any other provision in the Plan, the settlements are approved among the parties that have agreed to them (among any other party who has expressly entered into a written settlement agreement), and the treatment of Claims and Equity Interests is being afforded pursuant to Confirmation by satisfying the requirements of Section 1129.

Section 11.3    *Releases by the Debtor*.

**Without limiting any other applicable provisions of, or releases contained in, the plan, pursuant to section 1123(b), and except as otherwise specifically provided in the Plan, for good and valuable consideration, including the efforts of Released Parties to facilitate the expeditious liquidation of the Debtor and the implementation of the restructuring contemplated by the Plan, pursuant to the Confirmation Order, the adequacy of which is hereby confirmed, and on and after the effective date, each Released Party shall be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released by the Debtor, Plan Administrator, the Estate, and any other person seeking to exercise the rights of the estate from any and all claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtor, Plan Administrator, or the Estate, whether known or unknown, foreseen or**

unforeseen, liquidated or unliquidated, contingent or fixed, matured or unmatured, existing or hereafter arising, in law, at equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, including, without limitation, those that the Debtor, Plan Administrator, the Estate, or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Equity Interest in, the Debtor or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the business operations of the Debtor, actions taken by the Debtor's board of directors, any avoidance actions (but excluding avoidance action brought as counterclaims or defenses to claims asserted against the Debtor), the purchase, sale, or rescission of the purchase or sale of any security of the Debtor or Plan Administrator, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the Debtor's in- or out-of-court restructuring efforts, including those occurring prior to the Petition Date, intercompany transactions (other than any Intercompany Claims that have been reinstated as provided herein), the Sale, the Chapter 11 Case, the formulation, preparation, dissemination, or negotiation of this Combined Plan and Disclosure Statement, the Plan Supplement, or other documents, solicitation, implementation or administration of the Plan, including the issuance or distribution of any Property pursuant to the Plan or any other related agreement, pursuit of Confirmation, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the effective date, other than claims or liabilities arising from any act or omission of a Released Party that constitutes fraud, willful misconduct or gross negligence; *provided, however*, that the foregoing release shall not apply to any express contractual or financial obligations or any right or obligation arising under or that is part of the Plan or any agreements (including those set forth in the Plan Supplement or the Purchase and Sale Contract) entered into pursuant to, in connection with, or contemplated by the Plan, and any right to enforce the Plan and Confirmation Order is not so released. For the avoidance of doubt, nothing in this Section 11.3 shall in any way affect the operation of Section 11.2 of this Combined Plan and Disclosure Statement, pursuant to Section 1141(d).

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor's release, which includes by reference each of the related provisions and definitions contained in this Combined Plan and Disclosure Statement, and further, shall constitute the Bankruptcy Court's finding that the Debtor's release is (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good-faith settlement and compromise of such claims; (c) in the best interests of the Debtor and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to the Debtor or Plan Administrator or the Estate asserting any Claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

To the extent permitted by applicable law, the Debtor shall be authorized, but not obligated, to seek releases for the Released Parties comparable to those in this Section 11.3 from any and all other parties receiving distributions under the Plan.

Section 11.4    *Releases by Holders of Claims or Interests*.

**As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service and contribution of the Released Parties to facilitate the implementation of the Plan, on and after the Effective Date, the Released Parties shall be deemed conclusively, absolutely, unconditionally, irrevocably and forever released, to the maximum extent permitted by law, by the holders of all Claims and Interests who vote to accept the Plan and opt-in on the ballot to grant the releases set forth herein, (b) the holders of Unimpaired Claims or Equity Interests who do not object to the releases by filing an objection to the Plan and opt-in on the notice to grant the releases set forth herein (provided that holders of Unimpaired Claims or Equity Interests shall not be deemed to have released the Debtor pursuant to this Section 11.4); and (c) with respect to any Entity in the foregoing clauses (a) and (b), (x) such Entity's predecessors, successors, and assigns, and (y) all Persons entitled to assert Claims through or on behalf of such Entities with respect to the matters for which the releasing Entities are providing releases, in each case, from any and all Claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtor, Plan Administrator, or the Estate, as applicable, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or fixed, matured or unmatured, existing or hereafter arising, in law, at equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that such Holders or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Equity Interest or other person, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, Plan Administrator, or the Estate, the Chapter 11 Case, the pre- and post-petition marketing and sale process, the Sale, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Combined Plan and Disclosure Statement, the business or contractual arrangements or interactions between the Debtor and any Released Party, the restructuring of any Claim or Equity Interest before or during the Chapter 11 Case and related agreements, instruments, and other documents and the negotiation, formulation, preparation, or implementation thereof, the solicitation of votes with respect to the Plan, or any other act or omission, or any other relief obtained by Debtors in the Chapter 11 Case, in all cases based upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the effective date, other than Claims or Causes of Action arising out of or related to any act or omission of a Released Party that is a criminal act or constitutes intentional fraud, gross negligence, or willful misconduct as determined by a Final Order.**

Section 11.5    *Exculpation and Limitation of Liability*.

(a)    **Upon and effective as of the Effective Date, the Debtor and its directors, officers, employees, attorneys, investment bankers, financial advisors, restructuring consultants, and other professionals, advisors, and agents shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including Section 1125(e).**

(b)     **Except with respect to any acts or omissions expressly set forth in and preserved by the Plan, the Plan Supplement, or any related documents, from and after the Effective Date, the Exculpated Parties shall neither have nor incur any liability to any entity for any act taken or omitted to be taken in connection with, or related to formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or effecting the Plan or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan or any other act taken or omitted to be taken from the period beginning on the Petition Date and extending to and including the Effective Date in connection with or in contemplation of the restructuring of the Debtor, including without limitation, the distribution of Property under the Plan or any other agreement; *provided, however*, that the foregoing shall have no effect on any Entity's liability resulting from any such act or omission that is determined in a Final Order to have constituted fraud, gross negligence, or willful misconduct; *provided, further,* that, to the extent permitted by applicable law, each Exculpated Party shall be entitled to rely upon the advice of counsel concerning their duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement.**

(c)     **Exculpated Parties have, and shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and, therefore, are not and shall not be liable at any time for the violations of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

Section 11.6    *Injunction.*

**The satisfaction, releases, cancellation, and exculpation pursuant to this Article XI shall also act as a permanent injunction against any Entity bound by such provision to commence or continue any action, employment of process, or act to collect, offset, or recover any Claim or Cause of Action satisfied, released, cancelled, or exculpated under the Plan or the Confirmation Order to the fullest extent authorized or provided by the Bankruptcy Code, including, without limitation, to the extent provided for or authorized by Sections 524 and 1141.**

Section 11.7    *Setoffs and Recoupment.*

(a)     Except as otherwise provided herein, Plan Administrator, pursuant to the Bankruptcy Code, applicable bankruptcy or non-bankruptcy Law, or as may be agreed to by the Holder of an Allowed Claim, may set off or recoup against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim, any Claims, rights, and Causes of Action of any nature that the Debtor or Plan Administrator may hold against such Holder, to the extent such Claims, rights, or Causes of Action have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan, a Final Order, or otherwise); *provided, however*, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by Plan Administrator with respect to such Claims, rights, and Causes of Action.

(b)    In no event shall any Holder of Claims be entitled to set off or recoup any Claim against any Claim, right, or Cause of Action of the Debtor or Plan Administrator, as applicable, unless such Holder has timely and properly filed a Proof of Claim preserving such setoff or recoupment in such Proof of Claim.

Section 11.8    *Retention of Causes of Action; Reservation of Rights.*

Except as otherwise provided in Sections 11.3, 11.4, 11.5, and 11.6 above, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, Claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtor had immediately prior to the Effective Date on behalf of the Estate or itself in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, without limitation, any affirmative Causes of Action against parties with a relationship with the Debtor including actions arising under chapter 5 of the Bankruptcy Code. Except as provided in any order entered by the Bankruptcy Court, Plan Administrator shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff or recoupment, and other legal or equitable defenses as fully as if the Chapter 11 Case had not been commenced, and all of the Debtor's legal and equitable rights in respect of any Unimpaired Claim may be asserted after the Confirmation Date and Effective Date to the same extent as if the Chapter 11 Case had not been commenced. Notwithstanding the foregoing, the Debtor and Plan Administrator shall not retain any Claims or Causes of Action released under the terms of the Plan against Released Parties.

Section 11.9    *Release of Liens.*

(a)    Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released and cancelled, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to Plan Administrator and its successors and assigns.

(b)    To the extent that the First Lien Lender that has been satisfied in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens or security interests to secure such First Lien Claim, then as soon as practicable on or after the Effective Date, such Holder (or the First Lien Lender, as applicable) shall take any and all steps requested by the Debtor or Plan Administrator that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens or security interests, including the making of any applicable filings or recordings, and Plan Administrator shall be entitled to make any such filings or recordings on such Holder's behalf.

# ARTICLE XII.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan pursuant to Sections 105(a) and 1142, including jurisdiction to:

(a)     Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, nature, validity, amount, or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment and any and all objections to the allowance, classification, priority or amount of Claims or Equity Interests;

(b)     Decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Retained Professionals authorized pursuant to the Bankruptcy Code or the Plan;

(c)     Resolve any matters related to: (i) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease and to hear, determine, and, if necessary, liquidate, any Cure Costs arising therefrom; (ii) any potential obligation under any Executory Contract or Unexpired Lease that is assumed; (iii) the Debtor's or Plan Administrator's amendment, modification, or supplement after the Effective Date, pursuant to Article VII of this Combined Plan and Disclosure Statement, of the lists of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (iv) any dispute regarding whether a contract or lease is or was executory or expired;

(d)     Ensure that distributions to Holders of Allowed Claims are carried out pursuant to the provisions of the Plan;

(e)     Adjudicate, decide, or resolve any motions, adversary proceedings, any other matters, and any applications involving the Debtor that may be pending on the Effective Date;

(f)     Adjudicate, decide or resolve any and all matters related to Causes of Action;

(g)     Adjudicate, decide or resolve any and all matters related to Section 1141;

(h)     Resolve any and all avoidance or recovery actions under Sections 105, 502(d), 542 through 551 and 553;

(i)     Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the interpretation or enforcement of the Plan or Confirmation Order or any Entity's obligations incurred in connection with the Plan or Confirmation Order, including disputes arising under or in connection with any agreements, documents, or instruments executed in connection with the Plan, Plan Supplement, or Confirmation Order;

68

(j)       Enter and implement such orders as may be necessary or appropriate to execute, implement, or Consummate the provisions of the Plan or Confirmation Order and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with this Combined Plan and Disclosure Statement or the Confirmation Order;

(k)       Enter and enforce any order for the sale of property pursuant to Sections 363, 1123, or 1146(a);

(l)       Adjudicate, decide, or resolve matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146;

(m)       Grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to Section 365(d)(4);

(n)       Enforce the injunction, release, cancellation, and exculpation provisions of the Plan, and issue injunctions, enter and implement orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with enforcement of the Plan;

(o)       Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

(p)       Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Equity Interest for amounts not timely repaid;

(q)       Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(r)       Determine any other matters that may arise in connection with or relate to this Combined Plan and Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection therewith;

(s)       Enter an order or final decree concluding or closing the Chapter 11 Case;

(t)       Adjudicate any and all disputes arising from or relating to distributions under the Plan;

(u)       Consider any modifications of this Combined Plan and Disclosure Statement, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(v)       Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

69

(w)    Hear and determine all disputes involving the existence, nature, or scope of the Debtor's releases, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

(x)    Enforce all orders previously entered by the Bankruptcy Court; and

(y)    Hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XIII.

## MISCELLANEOUS PROVISIONS

Section 13.1    *Immediate Binding Effect.*

Notwithstanding the Bankruptcy Rules, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtor, Plan Administrator, and any and all Holders of Claims and Equity Interests (irrespective of whether Holders of such Claims or Equity Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, cancellations, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases. The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rule 3020(e) and 7062.

Section 13.2    *Amendments.*

(a)    *Plan Modifications*. Subject to the limitations contained in this Combined Plan and Disclosure Statement, and in accordance with the Bankruptcy Code and the Bankruptcy Rules: (a) the Debtor reserves the right, to amend or modify this Combined Plan and Disclosure Statement subject to the consent of the First Lien Lender and, with respect to any amendment materially adverse to DZ 21st Street or Gutkind (which shall include any amendment that would affect DZ 21st Street's or Gutkind's recoveries), subject to the consent of DZ 21st Street or Gutkind as and to the extent so affected, prior to the entry of the Confirmation Order, including amendments and modifications to satisfy Section 1129(b); and (b) after the entry of the Confirmation Order, the Debtor or Plan Administrator, as applicable, may, upon order of the Bankruptcy Court, and subject to the consent of the First Lien Lender and, with respect to any amendment materially adverse to DZ 21st Street or Gutkind (which shall include any amendment that would affect DZ 21st Street's or Gutkind's recoveries), subject to the consent of DZ 21st Street or Gutkind as and to the extent so affected, amend or modify this Combined Plan and Disclosure Statement, in accordance with Section 1127(b), or remedy any defect or omission or reconcile any inconsistency in this Combined Plan and Disclosure Statement in such manner as may be necessary to carry out the purpose and intent of this Combined Plan and Disclosure Statement.

(b)    *Effect of Confirmation on Modifications*. Upon entry of the Confirmation Order, all modifications or amendments to this Combined Plan and Disclosure Statement occurring on or

70

after the solicitation thereof shall be deemed approved pursuant to Section 1127(a) and shall not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

(c)      *Technical Amendments*. Prior to the Effective Date, the Debtor may make technical adjustments and modifications to this Combined Plan and Disclosure Statement subject to the consent of the First Lien Lender and, with respect to any amendment materially adverse to DZ 21st Street or Gutkind (which shall include any amendment that would affect DZ 21st Street's or Gutkind's recoveries), subject to the consent of DZ 21st Street or Gutkind as and to the extent so affected, that do not adversely affect the treatment of Holders of Claims or Equity Interests thereunder, without further order or approval of the Bankruptcy Court.

Section 13.3     *Revocation or Withdrawal of the Plan.*

Section 13.3 hereunder, and the conditions to the Effective Date, the Debtor reserves the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order and to file subsequent plans. If the Debtor revokes or withdraws the Plan or if entry of the Confirmation Order or the Effective Date does not occur, then: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (c) nothing contained in the Plan shall: (i) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor or any other Entity; (ii) prejudice in any manner the rights of the Debtor or any other Entity; or (iii) constitute an admission of any sort by the Debtor or any other Entity.

Section 13.4     *Governing Law.*

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal Law, rule, or regulation is applicable, or to the extent that an exhibit, supplement, or other document related to this Combined Plan and Disclosure Statement provides otherwise, this Combined Plan and Disclosure Statement shall be governed by and construed in accordance with the Laws of the State of Delaware, without giving effect to the principles of conflict of Laws thereof. Corporate governance matters shall be governed by the laws of the applicable state of incorporation, formation, or functional equivalent thereof, as applicable.

Section 13.5     *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on and shall inure to the benefit of any heir, executor, administrator, successor, Affiliate, assign, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each such Entity.

Section 13.6     *Consent Rights*.

~~To the extent the Consenting Creditors enter into a restructuring support agreement and,~~ nNotwithstanding anything in the Plan to the contrary, any and all consent rights of the Consenting Creditors set forth in the RSA~~such restructuring support agreement~~ (irrespective of whether the Debtor has assumed the RSA~~restructuring support agreement~~) with respect to the form and

71

substance of the Plan, the Plan Supplement, and any other documents contemplated under the Plan, shall apply to the Plan as if stated in full herein until such time as the RSA~~restructuring support agreement~~ is terminated in accordance with its terms.

Section 13.7    *Further Assurances*.

The Debtor, all Holders of Claims receiving distributions hereunder, and all other Entities shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Combined Plan and Disclosure Statement or the Confirmation Order.

Section 13.8    *Severability.*

If, prior to the entry of the Confirmation Order, the Bankruptcy Court determines that any term or provision of this Combined Plan and Disclosure Statement is invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to render it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, which term shall thereafter apply as so altered or interpreted. Notwithstanding the forgoing, the remaining terms and provisions of this Combined Plan and Disclosure Statement shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Combined Plan and Disclosure Statement, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms, (b) integral to this Combined Plan and Disclosure Statement and may not be deleted or modified without the Debtor's and Consenting Creditors' consent, and (c) nonseverable and mutually dependent.

Section 13.9    *Controlling Document.*

In the event of a conflict between this Combined Plan and Disclosure Statement and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order); *provided, however*, that in the event any such conflict is a material conflict with the treatment of the First Lien Claims, the DZ Claims, the Gutkind Claims, the General Unsecured Claims, or the IRHA Claims that would require the Debtor to re-solicit the votes of Holders of Claims in Class 2, Class 3, Class 4, Class 6 or Class 7, as applicable, under Section 1127, this Combined Plan and Disclosure Statement shall control solely with respect to such provision giving rise to such material conflict. The provisions of this Combined Plan and Disclosure Statement and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided, however*, that in the event of any inconsistency or conflict between this Combined Plan and Disclosure Statement and the Confirmation Order that cannot be so construed, then, solely to the extent necessary, the applicable provisions of the Confirmation Order shall control and any such provision of the Confirmation Order shall be deemed a modification of this Combined Plan and Disclosure Statement.

Section 13.10 *Filing of Additional Documents.*

On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor or Plan Administrator, as applicable, and all Holders of Claims or Equity Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

Section 13.11 *Reservation of Rights.*

The Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order. None of this Combined Plan and Disclosure Statement or the Plan Supplement, anything contained therein, or any action the Debtor takes with respect thereto, shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the Holders of Claims or Equity Interests prior to the Effective Date.

Section 13.12 *Service of Documents.*

After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to Plan Administrator shall also be served on:

540 W. 21st Street Holdings, LLC
1290 6th Ave.
New York, New York 10104

with copies to:

Chipman Brown Cicero & Cole LLP
William E. Chipman, Jr.
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Attention: William E. Chipman, Jr.
Email: chipman@chipmanbrown.com,
*Proposed Counsel to Debtor*

and

Ray New York, LLC
c/o Berdon LLP
360 Madison Ave.
New York, New York 10017
Attention:  Maury Golbert and Rami Unger
Email:  mgolbert@berdon.com and rami@talcar.co.il

73

with copies to:

Fried, Frank, Harris, Shriver & Jacobson LLP
Jennifer Rodburg
Andrew Minear
One New York Plaza
New York, New York 10004
*Counsel to the First Lien Lender*

and

550W21 Owner LLC
[STILL NEED AN ADDRESS HERE]

with copies to:

Davis Polk & Wardwell LLP
Christopher Robertson
Eli J. Vonnegut
450 Lexington Avenue
New York, New York 10017
*Counsel to Purchaser*

and

Office of the United States Trustee
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
Attention: Timothy J. Fox
E-mail: Timothy.Fox@usdoj.gov

After the Effective Date, Plan Administrator has authority to notify Entities informing them that, in order to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, Plan Administrator is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such requests.

Section 13.13  *Section 1125(e).*

As of the Confirmation Date: (a) the Debtor shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and any applicable non-bankruptcy Law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation; and (b) the Debtor, the First Lien Lender, DZ 21st Street, Gutkind, IRHA and each of their respective Affiliates, agents, directors, officers, employees,

advisors, and attorneys shall be deemed to have participated in good faith, and in compliance with the applicable provisions of the Bankruptcy Code, in the offer and issuance of any securities under the Plan, and, therefore, are not, and on account of such offer, issuance, and solicitation shall not be, liable at any time for any violation of any applicable Law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

Section 13.14  *Tax Reporting and Compliance.*

The Debtor shall be authorized to request an expedited determination under Section 505(b) for all tax returns filed for, or on behalf of, the Debtor for any and all taxable periods ending after the Petition Date through, and including, the dissolution of the Debtor.

Section 13.15  *Exhibits, Schedules, and Supplements.*

All exhibits, schedules, and supplements to this Combined Plan and Disclosure Statement are incorporated into and made a part of this Combined Plan and Disclosure Statement as if fully set forth herein. To the extent any exhibit, schedule, or supplement is inconsistent with the terms of this Combined Plan and Disclosure Statement and unless otherwise provided for in the Confirmation Order, the terms of such exhibit, schedule, or supplement shall control as to the transactions contemplated thereby and the terms of this Combined Plan and Disclosure Statement shall control as to any Plan provision as may be required under such exhibit, schedule, or supplement.

Section 13.16  *Entire Agreement.*

Except as otherwise set forth, on the Effective Date, the Plan shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

Section 13.17  *Allocation of Payments.*

To the extent that any Allowed Claim entitled to distribution hereunder is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall, for all U.S. federal income tax purposes, be allocated to the principal amount of such Claim first, and then, to the extent that the consideration exceeds such principal amount, to the portion of such Claim representing accrued but unpaid interest (but solely to the extent that interest is an allowable portion of such Allowed Claim).

## ARTICLE XIV.

## RECOMMENDATION

In the opinion of the Debtor, this Combined Plan and Disclosure Statement is superior and preferable to the alternatives described in this Combined Plan and Disclosure Statement. Accordingly, the Debtor recommends that Holders of Claims entitled to vote on this Combined Plan and Disclosure Statement vote to accept this Combined Plan and Disclosure Statement and support Confirmation.

*[Remainder of Page Intentionally Left Blank]*

| Summary report: Litera Compare for Word 11.5.0.74 Document comparison done on 1/30/2024 12:02:37 PM | |
|---|---|
| **Style name:** Firm | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** In re 540W21 - Third Amended Combined DS and Plan [Jan. 10, 2024](609714587.1).docx | |
| **Modified filename:** In re 540W21 - Third Amended Combined DS and Plan [Clean RSA Exhibit 1][Jan. 22, 2024](609770212.1).docx | |
| **Changes:** | |
| Add | 25 |
| Delete | 16 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 1 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 42 |