# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>540 WEST 21ST STREET HOLDINGS LLC,[1]<br><br>                     Debtor. | Chapter 11<br><br>Case No. 23-11053 (MFW)<br><br>Hearing Date: March 13, 2024, at 10:30 a.m. (Eastern)<br>Objection Deadline: March 6, 2024, at 4:00 p.m. (Eastern) |

### DEBTOR'S OBJECTION TO PROOF OF CLAIM NO. 17 BY YARDEN TADMOR, AS THE TRUSTEE FOR THE HEIRS OF ERAN TADMOR – (SUBSTANTIVE)

540 West 21st Street Holdings LLC, (the "**Debtor**"), by and through its undersigned counsel, hereby objects (this "**Objection**") to proof of claim number 17 (the "**Disputed Claim**"), attached hereto as **Exhibit A**, filed by Yarden Tadmor as the Trustee for the heirs of Eran Tadmor (the "**Claimant**") pursuant to section 502 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 3003 and 3007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and requests entry of the proposed form of order attached hereto as **Exhibit B** (the "**Proposed Order**"), disallowing and expunging the Disputed Claim because the Debtor believes that it does not have any liability on the grounds set forth herein. In support of this Objection, the Debtor states as follows:

### JURISDICTION, VENUE AND STATUTORY PREDICATES

1. The Court has jurisdiction over the Debtor, its estate, and this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

---

[1] The Debtor is 540 West 21st Street Holdings LLC. The last four digits of its taxpayer identification number are 1133. Its noticing address in this case is c/o Bryan Cave Leighton Paisner LLP, Attn: Andrew E. Auerbach, 1290 Avenue of the Americas, New York, NY 10104-3300.

2. Venue for the Cases is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3. Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtor consents to the entry of a final order by the Court in connection with this Objection, to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

4. The statutory predicates for the relief requested in this Objection are sections 502, of the Bankruptcy Code, and Bankruptcy Rules 3003 and 3007.

## BACKGROUND

5. On August 2, 2023 (the "***Petition Date***"), the Debtor filed a voluntary petition with the United States Bankruptcy Court for the District of Delaware (the "***Court***") under Chapter 11 of the Bankruptcy Code (commencing this "***Chapter 11 Case***"). The Debtor is authorized to continue to operate and manage its business and assets as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner or official committee of unsecured creditors has been appointed in this Chapter 11 Case.

6. The Debtor is the ultimate owner of real property commonly known as 540 W. 21st Street, New York, NY 10011 (the "***Property***") and was formed to finance and facilitate construction of a 20 story ultra-luxury mixed use condominium building. The proposed development would include 34 residential units with a total area of 116,818 square feet, a 4,682 square foot retail component and a 48,737 square foot gallery.

7. As described more fully in the *Declaration of Tomer Jacob in Support of Debtor's First Day Motions and Related Relief* [Docket No. 2] (the "***First Day Declaration***"), which is incorporated herein by reference, the Debtor's corporate structure is as follows:

(a) Debtor 540 West 21st Street Holdings LLC is owned by DZ Gallery LLC (8% interest) and West 21st Street Member LLC (92% interest).

(b) West 21st Street Member LLC is owned by West 21st Street Investment Member LLC ("*Investment Member LLC*") (100% interest).

(c) Investment Member LLC is owned by 540 West 21st Development LLC (100% interest).

(d) 540 West 21st Development LLC is owned by 540 West 21st Street Investment III, LLC (16.35% interest) and 540 West 21st Street LLC (83.65% interest).

(e) 540 West 21st Street LLC is owned by various institutional and individual members.

(f) 540 West 21st Street Investments III, LLC is owned by 540 West 21st Street Investments II LLC (88.08% interest) and 540 West 21st New General LLC (11.92% interest).

(g) 540 West 21st Street Investments II LLC is owned by various institutional and individual members.

*See also* 540 West 21st Street Organizational Structure, Docket No. 157.

8. Prior to the Petition Date, the Debtor obtained a loan in the original principal amount of $20,000,000, which was subsequently increased to $50,000,000 and with accrued unpaid interest and default interest was valued at over $50,000,000 from Bank Hapoalim B.M. to finance development of the Property (as described more fully in the First Day Declaration, the "*Original Loan*").

9. On or around May 9, 2022, Ray New York, LLC ("*Ray*") with SL Green Realty Corp. ("*SLG*") acting as servicer (collectively the "*Secured Lender*"), purchased the Original Loan from Bank Hapoalim B.M. and agreed to provide additional funding thereunder.

10. On October 27, 2023 Claimant filed the Disputed Claim with the Debtor's claims agent asserting a general claim in the amount of $874,765.16, against the Debtor. *See* Proof of Claim No. 17, "Supporting Documentation," ¶ 8.

11. The Disputed Claim is purportedly based on the Investment and Shareholders Agreement Relating to Great Feats Limited ("*Great Feats*") as amended (the "*Investment Agreement*"), and the supporting agreements thereto, including, but not limited to, the Shareholders Agreement, Loan Agreement, Escrow Agreement, and Designation Agreement (altogether the "*Investment Agreement Documents*").

12. Debtor is not a signatory to *any* of the Investment Agreement Documents, and on its face none of the agreements purports to impose obligations on Debtor, whether as a payor, a guarantor, or otherwise. The Investment Agreement Documents solely memorialize an investment relationship by and between Claimant, among other investors, and Great Feats—not Debtor.

13. Great Feats is not a debtor in the instant bankruptcy case; nor has it filed any proof of claim as an alleged creditor of Debtor; nor has it alleged that any of its own potential liabilities to its own investors have been assigned to or inherited by Debtor. Further, Great Feats was not investing funds in the Debtor, Great Feats was created to purchase equity in another entity, Amberfeld, which had already invested funds in an up-stream entity affiliated with the Debtor. Moreover, despite being aware of this bankruptcy case, Great Feats itself has not chosen to participate and has not filed a proof of claim against the Debtor.

4863-4931-3697, v. 1

## RELIEF REQUESTED

14. By this Objection, the Debtor respectfully requests entry of the Proposed Order, pursuant to section 502(b)(1) of the Bankruptcy Code and Bankruptcy Rules 3003 and 3007 disallowing and expunging the Disputed Claim.

## BASIS FOR OBJECTION

15. Section 502(a) of the Bankruptcy Code provides that a claim filed under Section 501 of the Bankruptcy Code is deemed allowed unless a party-in-interest objects. Bankruptcy Rule 3007 provides that an objection must be in writing and filed with at least thirty (30) days' notice of any hearing regarding the objection.

16. When asserting a proof of claim against a bankrupt estate, "the claimant must allege facts sufficient to support the claim." *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992). "If the averments in his filed claim meet this standard of sufficiency, it is 'prima facie.' valid." Id. The burden then shifts to the then shifts to the objector to produce evidence sufficient to negate the prima facie validity of the filed claim." Id. "[T]he objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's *174 legal sufficiency. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *Id.* at 173-74.

17. Section 502(b) of the Bankruptcy Code provides in pertinent part that:

[T]he court, after notice and a hearing, shall determine the amount of [a] claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that ... such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured.

11 U.S. C. § 502(b)(1).

18. For the reasons set forth herein, the Disputed Claim is not enforceable against the Debtor. Therefore, pursuant to section 502(b)(1) of the Bankruptcy Code and Bankruptcy Rule 3007, the Debtor submits that the Court should disallow the Disputed Claim in its entirety.

**OBJECTION**

**A. The Debtor Has No Liability For The Disputed Claim, And So The Claim Is Unenforceable As Against The Debtor.**

19. Generally, a claim against a debtor should be disallowed if the claim is based on a contract to which the debtor is not a party. *See In re Federal-Mogul Global, Inc.*, 526 B.R. 567, 576 (Bankr. D. Del. 2015) (implicitly recognizing that a claim against a debtor based on contract is not enforceable where the debtor is not a party to the contract, without proof of the debtor's intent to be bound); *In re Sentinel Management Group, Inc.*, 417 B.R. 542, 552 (Bankr. N.D. Ill. 2009) ("'Liability to a third party must appear affirmatively in the contract language and the circumstances of the parties at the time of execution; it cannot be expanded simply because the circumstances justify or demand further liability.'" (quoting *Est. of Willis v. Kiferbaum Const. Corp.*, 357 Ill. App. 3d 1002, 1007, 830 N.E.2d 636, 643 (2005)). That general rule is precisely applicable here: Claimant is seeking to enforce its contractual rights against a third party against Debtor, but cannot because it lacks privity with Debtor or any other basis for contractual liability.

20. ***Debtor Did Not Sign Any Of The Investment Agreement Documents, And So It Owes No Obligations Under Those Documents.*** The Claimant's Disputed Claim stems from the obligations arising under the Investment Agreement Documents. The Debtor is not a party to ***any*** of the Investment Agreement Documents, nor do those Investment Agreement Documents establish or create any relationship between Claimant and Debtor. *See In re Nortel Networks Inc.*, 2017 WL 2656520, at *3 (Bankr. D. Del. 2017) (ruling that claim based on relationships with non-debtor entities was not an allowable claim in the bankruptcy, explaining that "Mr. Owens was an

employee of NNC and NNL, and NNI has no responsibility for the obligations of the affiliated Canadian Debtors NNC and NNL") (citing *Listokin Trust v. Lothian Oil Incorporated (In re Lothian Oil Incorporated)*, 650 F.3d 539, 541 (5th Cir. 2011) (proof of claim filed against chapter 11 debtors based on a contractual obligation between creditor and non-debtor entity was correctly disallowed because creditor's services did not benefit debtors)). Because the Debtor was not a party to the Investment Agreement Documents the Claimant has no contractual rights to enforce against the Debtor.

21. ***Debtor Is Not A Third Party Beneficiary To The Investment Agreement Documents It Did Not Sign, And So It Owes No Obligations Under Those Documents***. Nor does the Claimant allege facts that would establish any specific text in the Investment Agreement Documents giving rise to third-party beneficiary rights giving rise to non-signatory liability. Indeed, the Agreements say precisely the opposite: "[N]othing in this Escrow Agreement shall be construed to create any rights or obligations except among the parties hereto, and no person or entity shall be regarded as a third-party beneficiary of this Escrow Agreement." Escrow Agreement, Section 9.9. Debtor is not a signatory to any of the Investment Agreement Documents, and so, Debtor has no obligations thereunder.

22. Even if the contracts did not expressly disallow the notion, Claimant fails to state facts that would give rise to third-party beneficiary liability. Under Delaware law, "to qualify as a third party beneficiary of a contract, (a) the contracting parties must have intended that the third party beneficiary benefit from the contract, (b) the benefit must have been intended as a gift or in satisfaction of a pre-existing obligation to that person, and (c) the intent to benefit the third party must be a material part of the parties' purpose in entering into the contract." *E.I. DuPont de*

*Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.*, 269 F.3d 187, 196 (3d Cir. 2001). The Claimant does not even attempt to establish these elements are met in its pleading.

23. ***Claimant Admitted Before This Court That Its Claims Are A Result Of Great Feats' Wrongdoing—Not Debtor's***. Claimant all but acknowledges that it asserts its claim against the wrong entity. On December 14, 2023 at 10:30 a.m., the above-entitled Court held a hearing on, among other motions, Claimant's *Motion for Entry of Order Pursuant to Bankruptcy Code Section 105(a) and Bankruptcy Rule 9006 Extending Challenge Period* [Docket No. 221] ("***December 14 Hearing***"). At the December 14 Hearing, counsel for Claimant repeatedly confirmed that the harm allegedly suffered by Claimant was caused by Great Feats—not Debtor.

24. For instance, Ms. McKelvey stated at the December 14 Hearing that "**Great Feats** knew that this - - that these investment in these further entities of the debtor would actually diminish the return to its investors it had a fiduciary duty to." (December 14 Hearing Transcript 24:1-4) (emphasis added). Notably, Ms. McKelvey does not state that Debtor owed any fiduciary duty to Claimant, nor that Debtor had any obligation to tell Claimant or Great Feats how to invest Claimant's funds.

25. While Ms. McKelvey stated that "Great Feats and the debtor were working together to the detriment of the Great Feats shareholders and to the benefit of the debtor," (December 14 Hearing Transcript, 24: 17-19) neither the Disputed Claim, supporting documents thereto, or Ms. McKelvey's arguments in Court allege any wrongdoing on the Debtor's part. Simply accepting funds from an investment company, which Claimant knowingly provided to Great Feats for investment, does not impute onto Debtor any alleged wrongdoing, if any, of Great Feats. *See generally Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 505 (3d Cir. 2013) ("The mere fact that [an investment advisor] made what turned out to be an ill-advised recommendation to

- 8 -

4863-4931-3697, v. 1

[investor] is not sufficient to establish a breach of fiduciary duty under the federal fiduciary standard," a standard which has been applied to investment advisors even with respect to state law claims for breach of fiduciary duty).

26. ***Debtor Is Not An Alter Ego Of Great Feats Or Any Parties To The Investment Agreement Documents***. The Court should also reject any argument by Claimant that the Debtor should be liable for the Disputed Claim based on an association with the actual parties to the Investment Agreement Documents, on an alter ego theory. Such arguments are unavailing.

27. Courts applying Delaware law recognize that parent companies often create subsidiaries and affiliates to allocate risk, and are loath to disregard corporate formalities:

> A huge amount of wealth-generation results from the use of distinct entities by corporate parents to conduct business. This allows parents to engage in risky endeavors precisely because the parents can cabin the amount of risk they are undertaking by using distinct entities to carry out certain activities. Delaware law respects corporate formalities, absent a basis for veil-piercing, recognizing that the wealth generating potential of corporate and other limited liability entities would be stymied if it did otherwise.

*Alliance Data Sys. Corp. v. Blackstone Capital Partners V L.P.*, 963 A.2d 746, 769 (Del. Ch. 2009) (Strine, V.C.), aff'd, 976 A.2d 170 (Del. 2009). Any allegations and arguments Claimant may assert cannot meet the standard required to expand liability beyond the parties to the contract. Indeed, just as in *Alliance*, it is clear from the Investment Agreement, and other agreements related thereto, that Claimant was on notice of (and thus must have known) with which entities he was contracting. As in *Alliance*, Claimant "has made no allegation that [Great Feats] lacked [] power as to its own duties. The fact that [Claimant] wishes [he] had struck a bargain with [the Debtor] directly does not change the reality that [Claimant] knew that the [] Agreement did not impose obligations on [the Debtor] directly." *Id*. Accordingly, there is no basis to assign contractual liability to the Debtor on a veil-piercing or *alter ego* theory.

4863-4931-3697, v. 1

28. ***The Claimant May Not Avoid The Insufficiency Of Its Contract Claim By Disguising It As One For Unjust Enrichment***. The Claimant couches its inadequate contract claim as one sounding in tort by alleging that the Debtor was unjustly enriched by Great Feats' alleged breaches, but Delaware law is clear that parties may not so easily evade the limits of their contract. "[U]njust enrichment is an equitable remedy" whereby "it is well settled that unjust enrichment damages are unavailable when a claim rests on a breach of an express contract." *Addie v. Kjaer*, 737 F.3d 854, 860 (3d Cir. 2013). Thus, under principles that some jurisdictions name the "gist of the action" doctrine, where a party's allegations make clear that its grievance is a third party's breach of an express contract, but asserts a cause of action for unjust enrichment to overcome limits of contractual liabilities, "the gist of the action doctrine precludes tort suits for the mere breach of contractual duties unless the plaintiff can point to separate or independent events giving rise to the tort." *Addie v. Kjaer*, 737 F.3d 854, 866 (3d Cir. 2013). Delaware is no exception to this rule that unjust enrichment is not an end-run around deficiencies in a contract claim; rather, "the existence of an express, enforceable contract that controls the parties' relationship will defeat an unjust enrichment claims." Tolliver v. Christina Sch. Dist., 564 F. Supp. 2d 312, 315 (D. Del. 2008). Here, the investments that the Claimant seeks to recover are governed by the Investment Agreement Documents, which, as noted, expressly provide that they do not give rise to third-party liabilities, much less any to Debtor. *See, e.g.*, Escrow Agreement, Section 9.9.

\*   \*   \*

29. Section 502(b)(1) of the Bankruptcy Code provides that a claim asserted in a proof of claim shall be allowed except to the extent "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). As explained, the Disputed Claim is not enforceable against the Debtor under any law or agreement.

30. Accordingly, the Disputed Claim should be disallowed and expunged.

4863-4931-3697, v. 1

**B.      If This Court Does Not Disallow The Disputed Claim, It Should Be Estimated At Zero Pursuant To 11 U.S.C. § 502(c)(1).**

31.     In the event that this Court determines that the Disputed Claim should not be disallowed pursuant to Section 502(b) of the Bankruptcy Code, it is appropriate for the Court to estimate the Disputed Claim at zero in accordance with Section 502(c)(1) of the Bankruptcy Code.[2] Section 502(c)(1) states that:

> There shall be estimated for purposes of allowance under this section –
> (1)     any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case….

11 U.S.C. § 502(c)(1).

32.     Bankruptcy courts have broad discretion to estimate a claim pursuant to Bankruptcy Code Section 502(c). *Bittner v. Borne Chem. Co., Inc.*, 691 F.2d 134, 137 n.9 (3d Cir. 1982). Estimation of claims may be used to determine the allowed amount for distribution purposes under a plan of reorganization. *See In re Trident Shipworks, Inc.,* 247 B.R. 513, 514 (Bankr. M.D. Fla. 2000). "The purpose of section 502(c) is to prevent the administration of the debtor's estate from being held hostage by the fixing or liquidation of an unliquidated or contingent claim." *In re RNI Wind Down Corporation*, 369 B.R. 174, 191 (Bankr. D. Del. 2007).

33.     ***The Disputed Claim is Contingent.*** A claim is contingent if it becomes due only upon the occurrence of a future event. *Avellino & Bienes v. M. Frenville Co. (In re M. Frenville Co.)*, 744 F.2d 332, 337 n.7 (3d Cir. 1984), *cert. denied*, 469 U.S. 1160 (1985); *In re Graber*, 319 B.R. 374, 377 (Bankr. E.D. Pa. 2004) ("A liability is contingent if the debtor's legal duty to pay does not come into existence until the occurrence of a future event and the future occurrence was within the contemplation of the parties when the obligation was created.").

---

[2] The Debtor anticipates that it will file a separate motion to estimate certain claims including the Disputed Claim and any similarly-situated claims, and reserves the right to do so independent of this portion of relief requested in this Objection.

34. Here, the Disputed Claim is contingent and thus, subject to estimation under Section 502(c) of the Bankruptcy Code. In particular, the Disputed Claim is contingent upon the Claimant being able to establish that the Debtor is liable for debts and obligations arising under the Investment Agreement Documents, to which Debtor is not a party or signatory, either as some type of direct obligation (which is belied by the face of the Investment Agreement Documents) or through successfully proving an *alter ego* theory (which is unlikely for the reasons explained above).

35. ***Liquidation of the Disputed Claim Would Unduly Delay Administration of This Case.*** Once determined that a claim is contingent and/or unliquidated, Bankruptcy Code Section 502(c) requires estimation of the claim if liquidation would unduly delay administration of the case. *In re Fed.-Mogul Global, Inc.*, 330 B.R. 133, 154 (D. Del. 2005); *In re Stone & Webster, Inc.*, 279 B.R. 748, 810 (Bankr. D. Del. 2002) ("The purpose of an estimation proceeding is to avoid delays that may arise from waiting to fix the value of contingent claims.").

36. Liquidation of the Disputed Claim would unduly delay the administration of this bankruptcy case. Without estimating the Disputed Claim, the Debtor would have to fully resolve the Disputed Claim through discovery and potentially extensive investigation (mis)targeted at collapsing the separateness of the entities in the Debtor's capital structure. Full resolution may even require investigation, reconciliation and further calculation of the interest asserted in the Disputed Claim (which the Debtor does not concede). The time and anticipated cost of such efforts will all but thwart the Debtor's ability to confirm a plan (as presently proposed or as may be further amended) or pursue a timely sale of the Property within the accelerated milestones already established in this case. Accordingly, because the Debtor believes no liability exists with regard to the Disputed Claim, estimation of the Disputed Claim at zero is appropriate.

4863-4931-3697, v. 1

37. ***Method for Estimating the Disputed Claim at Zero.*** In estimating a claim, the bankruptcy court should use the method best suited to the circumstances. *Bittner*, 691 F.2d at 135-36; *Kool, Mann, Coffee & Co. v. Coffey*, 300 F.3d 340, 356 (3d Cir. 2002); *Fed.-Mogul*, 330 B.R. at 155. Though a court has broad discretion when estimating claims, the court is "dealing with uncertainties, and … attempting to make predictions which are themselves based upon predictions and assumptions." *Owens Corning v. Credit Suisse First Boston*, 322 B.R. 719, 721 (D. Del. 2005). Accordingly, "the Court will not seek to analyze the estimations before it for mathematical precision, nor will it attempt to reach its own exact number." *In re Armstrong World*, 348 B.R., 111, 124 (Bankr. D. Del. 2006). Indeed, where the court determines that the claim represents little or no real future liability of the debtor, the court may estimate the claim at zero. *See, e.g., Bittner*, 691 F.2d at 137 (affirming bankruptcy court's estimation of the claim at zero where litigation underlying the claim was deemed unlikely to be successful); *In re Ry. Reorganization Estate, Inc.*, 133 B.R. 574, 577 (Bankr. D. Del. 1991) (same); *In re Genesis Health Ventures*, 272 B.R. 558, 574 (Bankr. D. Del. 2002) (estimating claim at zero where it lacked legal basis).

38. Accordingly, to the extent that the Court does not disallow the Disputed Claim for the reasons set forth herein, it is appropriate for the Court to estimate the Disputed Claim at zero because there is no evidence to establish that such claims exist.

## RESPONSES TO THE OBJECTION

39. ***Content of Responses.*** Any response to this Objection must contain at a minimum the following information:

    (a) a caption setting forth the name of this Court, the name of the Debtor, the case number, and the title of this Objection;

(b) the Claimant's name, the claim number, and a description of the basis for the amount of the claim;

(c) the specific factual basis and supporting legal argument upon which the Claimant will rely in opposing this Objection;

(d) any supporting documentation, to the extent it was not included with the Disputed Claim previously filed with the Court or Stretto, Inc., the Debtor's claim agent, upon which the Claimant will rely to support the basis for and amounts asserted in the Disputed Claim; and

(e) the name, address, telephone number, and email address of the person(s) (which may be the Claimant or the Claimant's legal representative) with whom counsel for the Debtor should communicate with respect to the claim or the Objection and who possesses authority to reconcile, settle, or otherwise resolve the Objection to the Disputed Claim on behalf of the claimant.

40. ***Service Address.*** If a response contains an address for the Claimant different from that stated on the Disputed Claim, the address in the response shall constitute the service address for future service of papers upon the Claimant with respect to the Objection unless or until the Debtor receives written notice from the Claimant or the Claimant's counsel of a changed service address.

41. ***Timely Response Required; Hearing; Replies.*** If a Response is filed properly and timely and served in accordance with the above procedures, the Debtor will endeavor to reach a consensual resolution with the Claimant. If no consensual resolution is reached, the Court will conduct a hearing with respect to the Objection at a date and time to be provided by the Court and was the parties shall be notified. Only those responses made in writing and timely filed and

received will be considered by the Court at any such hearing.  The Debtor reserves the right to adjourn such hearing with respect to a specific objection set forth herein and any response thereto.

42. If Claimant whose claim is subject to this Objection, and is served with this Objection, fails to file and serve a timely response in compliance with the foregoing procedures, the Debtor will present to the Court an appropriate order disallowing and expunging the Claimant's Disputed Claim without further notice to the claimant.

43. The Debtor may, at its option, file and serve a reply to Claimant's response no later than three (3) days prior to any hearing on the Objection, or at such other time as the Court may allow.  This Objection shall constitute a request to the Court for leave to file such reply, to the extent necessary.

## **RESERVATION OF RIGHTS**

44. In this Objection, the Debtor has raised certain objections to the Disputed Claim filed against the Debtor. By this reservation of rights, the Debtor reserves any and all claims, rights, or remedies they may have against the Claimant with respect to any amounts owed to the Debtor pursuant to Chapter 5 of the Bankruptcy Code.

## **NOTICE**

45. Notice of this Objection will be given to the following parties, or to their counsel: (a) the Office of the United States Trustee for the District of Delaware; (b) the Debtor's twenty largest unsecured creditors, as identified in the Chapter 11 petition; (c) counsel to the Debtor's pre-petition and debtor-in-possession lender; (d) counsel to Chelsea 540 Owner LLC; (e) the Claimant; and (f) any party that has requested notice under Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtor respectfully submits that no further notice is necessary.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order substantially in the form of the Proposed Order, disallowing the Disputed Claim as set forth therein, and granting the Debtor such other and further relief as is just and proper.

Dated: January 30, 2024
      Wilmington, Delaware

Respectfully submitted,

*/s/ William E. Chipman, Jr.*
William E. Chipman, Jr. (No. 3818)
Mark D. Olivere (No. 4291)
**CHIPMAN BROWN CICERO & COLE, LLP**
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, DE 19801
Telephone: (302) 295-0191
Email: chipman@chipmanbrown.com
       olivere@chipmanbrown.com

-and-

**BRYAN CAVE LEIGHTON PAISNER LLP**
William S. Hackney (admitted *pro hac vice*)
161 N. Clark Street, Suite 4300
Chicago, IL 60602
Telephone:   (312) 602-5000
Facsimile:    (312) 602-5050
Email:        william.hackney@bclplaw.com

*Co-Counsel to the Debtor and Debtor-in-Possession*