## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| 540 West 21st Street Holdings LLC, | Case No. 23-11053 (MFW) |
| Debtor.[1] | |

---

**DEBTOR'S MEMORANDUM OF LAW IN SUPPORT OF ENTRY
OF AN ORDER CONFIRMING FIFTH AMENDED
COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN
OF LIQUIDATION OF 540 WEST 21st STREET HOLDINGS LLC**

---

Dated:  March 8, 2024
       Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

William E. Chipman, Jr. (No. 3818)
Mark D. Olivere (No. 4291)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone:    (302) 295-0191
Facsimile:    (302) 295-0199
Email:      chipman@chipmanbrown.com
            olivere@chipmanbrown.com

*Counsel for the Debtor and the Debtor-in-Possession*

---

[1]    The Debtor is 540 West 21st Street Holdings LLC, and the last four digits of its taxpayer identification number are 1133.  The Debtor's noticing address in this Chapter 11 case is c/o Chipman Brown Cicero & Cole LLP, ATTN: William E. Chipman, Jr., Hercules Plaza, 1313 North Market Street, Suite 5400, Wilmington, DE 19801.

## TABLE OF CONTENTS

### CONTENTS

Preliminary Statement ................................................................................................ 1

Background ................................................................................................................ 2

   A.   General Background. ....................................................................................... 2

   B.   The Combined Plan and Disclosure Statement Process. ................................ 2

Argument .................................................................................................................. 4

   A.   The Combined Plan and Disclosure Statement Meets the Bankruptcy Code's
Requirements and Should be Approved. ............................................................... 4

     (i)   The Disclosures and Solicitation Procedures Comply with the Bankruptcy Code and
Bankruptcy Rules and Should be Approved. .......................................................... 4

     (ii)   Section 1129(a)(1): The Combined Plan and Disclosure Statement Complies with
the Applicable Provisions of the Bankruptcy Code. ............................................... 7

     (iii)   Section 1122: The Combined Plan and Disclosure Statement Classifications Are
Appropriate. ........................................................................................................... 7

     (iv)   Section 1123(a): The Combined Plan and Disclosure Statement's Content is
Appropriate. ........................................................................................................... 9

     (v)   Section 1123(b): the Combined Plan and Disclosure Statement Contains Certain
Permissible Provisions. .......................................................................................... 9

     (vi)   Section 1129(a)(2): The Combined Plan and Disclosure Statement Complies with
the Bankruptcy Code ............................................................................................ 15

     (vii)   Section 1129(a)(3): The Combined Plan and Disclosure Statement Has Been
Proposed in Good Faith. ...................................................................................... 16

     (viii)   Section 1129(a)(4): The Combined Plan and Disclosure Statement Provides for
Approval of Certain Administrative Expenses. ..................................................... 17

     (ix)   Section 1129(a)(5): The Combined Plan and Disclosure Statement Contains Proper
Disclosures. .......................................................................................................... 18

     (x)   Section 1129(a)(6): No Governmental Regulatory Commission Has Jurisdiction over
the Debtor............................................................................................................. 18

     (xi)   Section 1129(a)(7): The Combined Plan and Disclosure Statement is in the Best
Interest of All Creditors. ...................................................................................... 18

     (xii)   Section 1129(a)(8): The Combined Plan and Disclosure Statement Has Been
Accepted by an Impaired Voting Class. ............................................................... 20

     (xiii)   Section 1129(a)(9): The Combined Plan and Disclosure Statement Provides for
Payment in Full of Allowed Priority, Administrative, and Tax Claims. ............... 20

(xiv)    Section 1129(a)(10): At Least One Class of Impaired Classes Has Accepted the Combined Plan and Disclosure Statement. ......................................................................... 21

(xv)    Section 1129(a)(11): The Combined Plan and Disclosure Statement is Feasible. ... 21

(xvi)    Section 1129(a)(12): All Statutory Payment Obligations Have Been or Will be Paid. 22

(xvii)    Section 1129(a)(13) Through Section 1129(a)(16) Do Not Apply to the Combined Plan and Disclosure Statement. ............................................................................................. 22

(xviii)    Section 1129(b): The Combined Plan and Disclosure Statement Satisfies the "Cram Down Requirements". .................................................................................................. 23

(xix)    Section 1129(c) through Section 1129(e) Have Been Satisfied. .............................. 25

B.    Objections ...................................................................................................................... 25

C.    A Waiver of Any Stay of Confirmation is Appropriate .................................................. 26

Conclusion ................................................................................................................................ 27

## <u>TABLE OF AUTHORITIES</u>

**CASES**

<u>Bank of America Nat'l Trust & Savings Assn. v. 203 N. LaSalle St. P'ship</u>, 526 U.S. 434 (1999)...................................................................................................................... 19, 24

<u>Gillman v. Cont'l Airlines (In re Cont'l Airlines)</u>, 203 F.3d 203 (3d Cir.. 2000) ........................ 15

<u>In re 203 N. LaSalle St. Ltd. P'ship.</u>, 190 B.R. 567 (Bankr. N.D. Ill. 1995).................................. 24

<u>In re Abeinsa Holding, Inc.</u>, 562 B.R. 265 (Bankr. D. Del. 2016) ................................................. 14

<u>In re Adelphia Commc'ns, Corp.</u>, 368 B.R. 140 (Bankr. S.D.N.Y. 2007) .................................... 19

<u>In re Armstrong World Indus.</u>, 320 B.R. 523 (D. Del. 2005)........................................................ 24

<u>In re Armstrong World Indus., Inc.</u>, 348 B.R. 111 (Bankr. D. Del. 2006) ..................................... 7

<u>In re Avia Energy Dev., LLC</u>, Case No. 05-39339 (BJH), 2007 WL 2238039, at *2 (Bankr. N.D. Tex. Aug. 2, 2007) .............................................................................................. 8

<u>In re Bowles</u>, 48 B.R. 502 (Bankr. E.D. Va. 1985) ...................................................................... 24

<u>In re Brotby</u>, 303 B.R. 177 (B.A.P. 9th Cir. 2003) ...................................................................... 21

<u>In re Coram Healthcare Corp.</u>, 315 B.R. 321 (Bankr. D. Del. 2004) ............................................ 24

<u>In re Credentia Corp.</u>, Case No. 10-10926, 2010 WL 3313383, at *9 (Bankr. D. Del. May 26, 2010) ...................................................................................................................................... 22

<u>In re Crowthers McCall Pattern, Inc.</u>, 120 B.R. 279 (Bankr. S.D.N.Y. 1990) ............................ 19

<u>In re Drexel Burnham Lambert Group, Inc.</u>, 138 B.R. 723 (Bankr. S.D.N.Y. 1992).................. 16

<u>In re Freymiller Trucking, Inc.</u>, 190 B.R. 913 (Bankr. W.D. Okla. 1996) .................................. 24

<u>In re Indianapolis Downs, LLC</u>, 486 B.R. 286 (Bankr. D. Del. 2013)...................... 12, 13, 14, 15

<u>In re John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.</u>, 987 F.2d 154 (3d Cir. 1993) ....................................................................................................................................... 8

<u>In re Johns-Manville Corp.</u>, 68 B.R. 618 (Bankr. S.D.N.Y. 1987)............................................... 16

<u>In re Ferretti</u>, 128 B.R. 16 (Bankr. D.N.H. 1991)......................................................................... 5

<u>In re Ionosphere Clubs, Inc.</u>, 179 B.R. 24 (S.D.N.Y. 1995) ......................................................... 5

<u>In re Lakeside Global II, Ltd.</u>, 116 B.R. 499 (Bankr. S.D. Tex. 1989) ........................................ 21

In re Lason, Inc., 300 B.R. 227 (Bankr. D. Del. 2003) .................................................. 19

In re Lernout & Hauspie Speech Prods. N.V., 308 B.R. 672 (D. Del. 2004) .............................. 16

In re Lisanti Foods, 329 B.R. 491 (D.N.J. 2005) ........................................................ 17

In re Master Mortgage Invest. Fund, Inc., 168 B.R. 930 (Bankr. W.D. Mo. 1994) ..................... 12

In re NII Holdings, Inc., 288 B.R. 356 (Bankr. D. Del. 2002) .................................... 17

In re Nutritional Sourcing Corp., 398 B.R. 816 (Bankr. D. Del. 2008)........................................7

In re Okoreeh-Bahm, 836 F.2d 1030 (6th Cir. 1988) ................................................. 16

In re Phoenix Petroleum Co., 278 B.R. 385 (Bankr. E.D. Pa. 2001)............................................ 6

In re PPI Enterprises, Inc., 228 B.R. 339 (Bankr. D. Del. 1998)................................................ 17

In re PWS Holding Co., 228 F.3d 224 (3d Cir. 2000) .......................................... 17, 18

In re Resorts Int'l, Inc., 145 B.R. 412 (Bankr. D.N.J. 1990) ........................................ 19

In re Revco D.S., Inc., 131 B.R. 615 (Bankr. N.D. Ohio 1990) .................................... 24

In re Scioto Valley Mortgage Co., 88 B.R. 168 (Bankr. S.D. Ohio 1988) .................................... 7

In re TK Holdings Inc., Case No. 17-11375 (BLS), 2018 WL 1306271, at *16 (Bankr. D. Del. Mar. 13, 2018)................................................................. 16

In re Toy & Sports Warehouse, Inc., 37 B.R. 141 (Bankr. S.D.N.Y. 1984)................................ 17

In re Tribune Co., 476 B.R. 843 (Bankr. D. Del. 2012) ....................................... 9

In re Tribune Co., 464 B.R. 126 (Bankr. D. Del. 2011) .......................................... 13

In re Washington Mut. Inc., 442 B.R. 314 (Bankr. D. Del. 2011).................................... 13, 15, 17

In re Washington Mut. Inc., 461 B.R. 200 (Bankr. D. Del. 2011)............................................. 21

In re W.R. Grace & Co., 446 B.R. 96 (Bankr. D. Del. 2011) ...................................... 17

In re W.R. Grace & Co., 475 B.R. 34 (D. Del. 2012)...................................................... 8

In re Zenith Elecs. Corp., 241 B.R. 92 (Bankr. D. Del. 1999)...................................... 6, 13, 14, 19

Kane v. Johns-Manville Corp., 843 F.2d 636 (2d Cir. 1988) ................................. 21, 23

Mabey v. Sw. Elec. Power Co. (In re Cajun Elec. Power Corp.), 150 F.3d 503 (5th Cir. 1998) .................................................................... 6

2

Mercury Capital Corp. v. Milford Conn. Assocs., L.P., 354 B.R. 1 (D. Conn. 2006) ................. 21

Olympia & York Fla. Equity Corp. v. Bank of N.Y. (In re Holywell Corp.), 913 F.2d 873
    (11th Cir. 1990) ......................................................................................................... 8

U.S. Bank Nat'l Ass'n v. Wilmington Trust Co. (In re Spansion), 426 B.R. 114 (Bankr.
    D. Del. 2010) ............................................................................................... 13, 15, 16

## STATUTES

11 U.S.C. § 507 ........................................................................................................ 24

11 U.S.C. § 1107 ......................................................................................................... 2

11 U.S.C. § 1108 ......................................................................................................... 2

11 U.S.C. § 1114 ....................................................................................................... 22

11 U.S.C. § 1122 ............................................................................................... 8, 9, 10

11 U.S.C. § 1123 ........................................................................................... 5, 10, 11, 12

11 U.S.C. § 1125 ...................................................................................... 5, 6, 8, 17, 18

11 U.S.C. § 1126 .................................................................................................. 17, 18

11 U.S.C. § 1129 .................................... 4, 7, 15, 16, 17,18, 19, 20, 21, 22, 23, 24, 24

## OTHER AUTHORITIES

H.R. Rep. No. 95-595, at 412 (1977) ......................................................................... 15

S. Rep. No. 95-989, at 126 (1978) ............................................................................. 15

Securities Act of 1933 ................................................................................................ 25

## RULES

Bankruptcy Rule 3020(e) ........................................................................................... 26

4856-1296-6825, v. 4

The above-captioned debtor and debtor in possession (the "**Debtor**") hereby submits this memorandum of law (this "**Memorandum**") in support of confirmation of the *Fifth Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of 540 West 21st Street Holdings LLC* [Docket No. 370] (as subsequently revised or amended, the "**Combined Plan and Disclosure Statement**"). The Debtor respectfully requests confirmation of the Combined Plan and Disclosure Statement pursuant to the proposed form of order filed contemporaneously herewith (the "**Confirmation Order**"). In support of the Combined Plan and Disclosure Statement, the Debtor relies upon and incorporates by reference (a) the *Declaration of Tomer Jacob In Support of Chapter 11 Petition and First Day Pleadings* [Docket No. 2] (the "**First Day Declaration**"); (b) the *Certification of Stretto Regarding Tabulation of Votes in Connection with the Fifth Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of 540 West 21st Street Holdings LLC* [Docket No. 380] (the "**Tabulation Declaration**"); and (c) the *Declaration of Tomer Jacob in Support of Confirmation of the Fifth Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of 540 West 21st Street Holdings LLC* [Docket No. 381] (the "**Confirmation Declaration**").

## PRELIMINARY STATEMENT

1. The Debtor respectfully requests confirmation of the Combined Plan and Disclosure Statement, which is supported by **all** creditors entitled to vote. The Combined Plan and Disclosure Statement reflects substantial negotiations among the Debtor, Ray New York (the "**First Lien Lender**"), DZ 21st Street LLC ("**DZ**"), Dr. Efraim Gutkind ("**Gutkind**"), IRHA Investment Limited, ("**IHRA**"), Mr. Yarden Tadmor ("**Tadmor**"), Mr. Iftach Alony ("**Alony**"), and other creditors and is predicated upon and incorporates the Purchase and Sale Contract[2] which

---

[2]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Combined Plan and Disclosure Statement.

contemplates the Sale of the Debtor's only asset – a parcel of distressed real estate located at 540 West 21st Street in New York, New York.

## BACKGROUND

**A.      General Background.**

2.      On August 2, 2023 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Court**"), thereby commencing this case (the "**Chapter 11 Case**").

3.      The Debtor continues to be in possession of its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      No trustee, examiner or Official Committee of Unsecured Creditors has been appointed in the Chapter 11 Case.

**B.      The Combined Plan and Disclosure Statement Process.**

5.      After extensive negotiations between the Debtor, the First Lien Lender, DZ, Gutkind, IHRA, Tadmor and Alony, the Fifth Amended Combined Plan and Disclosure Statement was filed on March 5, 2024.  The Fifth Amended Combined Plan and Disclosure Statement modified the Fourth Amended Combined Plan and Disclosure Statement, to account for the settlement of the Tadmor Claims and Alony Claims.

6.      On August 22, 2023, the Debtor filed the *Debtor's Motion for an Order (I) Approving the Adequacy of the Disclosures in the Third Amended Combined Disclosure Statement and Plan on an Interim Basis, (II) Scheduling the Confirmation Hearing and Objection Deadline, (III) Establishing Procedures for the Solicitation and Tabulation of Votes, (IV) Approving the Form of Ballot and Solicitation Package, and (V) Approving Notice* [Docket No. 307] (the "**Interim Approval and Procedures Motion**"). The Interim Approval and Procedures Motion

sought approval of the Combined Plan and Disclosure Statement on an interim basis pursuant to and in accordance with Local Rule 3017-2.

7.      On January 31, 2004, the Debtor filed the *Fourth Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of 540 West 21st Street Holdings LLC* [Docket No. 328]

8.      On February 1, 2024, the Court entered the *Order (I) Conditionally Approving Fourth Amended Combined Plan and Disclosure Statement for Solicitation Purposes Only, (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Combined Plan and Disclosure Statement, (III) Approving the Form of Ballot and Solicitation Materials, (IV) Establishing Voting Record Date, and (V) Fixing the Date, Time and Place for the Confirmation Hearing and the Deadline for Filing Objections Thereto* [Docket No. 330] (the "**Interim Approval and Procedures Order**").

9.      The Interim Approval and Procedures Order, among other things, set dates related to approval of the Combined Plan and Disclosure Statement, including the Combined Hearing to consider confirmation and approved various solicitation procedures (the "**Solicitation Procedures**").  The deadline for receipt of votes was set as 4:00 p.m. (prevailing Eastern Time) on March 6, 2024 (the "**Voting Deadline**").

10.     Following entry of the Interim Approval and Procedures Order, the Debtor commenced solicitation of the Combined Plan and Disclosure Statement by sending solicitation packages (the "**Solicitation Packages**") to Holders of Claims in Class 2 (First Lien Claims), Class 3 (DZ Claims), Class 4 (Gutkind Claims); Class 6 (IRHA Claims), and Class 7 (Disputed Investor Claims) (the "**Voting Classes**").

4856-1296-6825, v. 4

11.     As set forth in the Tabulation Declaration, Classes 2, 3, 4, 6 and 7 all voted to accept the Combined Plan and Disclosure Statement.

<u>**ARGUMENT**</u>

**A.     The Combined Plan and Disclosure Statement Meets the Bankruptcy Code's <u>Requirements and Should be Approved.</u>**

12.     By this Memorandum, the Debtor submits that confirmation of the Combined Plan and Disclosure Statement is appropriate as it satisfies Bankruptcy Code sections 1123, 1125, and 1129.

**(i)     The Disclosures and Solicitation Procedures Comply with the Bankruptcy Code and Bankruptcy Rules and Should be Approved.**

13.     Bankruptcy Code section 1125(b) provides that "[a]n acceptance or rejection of a plan may not be solicited . . ., unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." 11 U.S.C. § 1125(b). Bankruptcy Code section 1125(a)(1) defines "adequate information" as

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

11 U.S.C. § 1125(a)(1).

14.     Therefore, as a whole, a debtor's disclosure statement must provide information that is "reasonably practicable" to permit an "informed judgment" by impaired creditors and

4

interest holders entitled to vote on the debtor's plan or reorganization. *See In re Zenith Elecs.*
*Corp.*, 241 B.R. 92, 99-100 (Bankr. D. Del. 1999); *In re Ionosphere Clubs, Inc.,* 179 B.R. 24, 29
(S.D.N.Y. 1995*); see also In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991) (finding that a
disclosure statement "must clearly and succinctly inform the average unsecured creditor what it is
going to get, when it is going to get it, and what contingencies there are to getting its distribution.").

15.     Bankruptcy courts are afforded broad discretion in determining whether a
disclosure statement contains adequate information. *See Mabey v. Sw. Elec. Power Co. (In re*
*Cajun Elec. Power Corp.)*, 150 F.3d 503, 518 (5th Cir. 1998) ("[I]n determining what constitutes
'adequate information' with respect to a particular disclosure statement, '[b]oth the kind and form
of information are left essentially to the judicial discretion of the court . . . the information required
will necessarily be governed by the circumstances of the case.'") (quoting S. Rep. No. 95- 989, at
121 (1978)); *cert. denied*, 119 S. Ct. 2019 (1999).  Accordingly, the determination of the adequacy
of information in a disclosure statement must be made on a case-by-case basis, focusing on the
unique facts and circumstances of the relevant case.  In that regard, courts generally examine
whether a disclosure statement contains, if applicable, the following types of information:

a.      the circumstances that gave rise to the filing of the bankruptcy petition;

b.      a description of the available assets and their value;

c.      the anticipated future of the debtor;

d.      the sources of information provided in the disclosure statement;

e.      the condition and performance of the debtor while in chapter 11;

f.      information regarding claims against the estate;

g.      a liquidation analysis setting forth the estimated return that creditors would
        receive if the debtor's bankruptcy case were a case under chapter 7 of the
        Bankruptcy Code;

5

h.      the accounting and valuation methods used to produce the financial information in the disclosure statement;

i.      information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors or officers of the debtor;

j.      a summary of the chapter 11 plan;

k.      an estimate of all administrative expenses, including attorneys' fees and accountants' fees;

l.      financial information that would be relevant to creditors' determinations of whether to accept or reject the plan;

m.      information relevant to the risks being taken by the creditors and interest holders;

n.      the tax consequences of the plan; and

o.      the relationship of the debtor with its affiliates.

*See, e.g.*, *In re Scioto Valley Mortgage Co.*, 88 B.R. 168, 170–71 (Bankr. S.D. Ohio 1988).  This list is not meant to be exclusive, nor must a debtor include in its disclosure statement all of the information on the list.  Rather, the court must decide what information is appropriate in each case. *See In re Phoenix Petroleum Co.,* 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) (making use of similar list but cautioning that "no one list of categories will apply in every case.").

16.    Here, the Combined Plan and Disclosure Statement contains adequate information as it includes, among other things: (a) the events precipitating the filing of the Chapter 11 Case; (b) the Debtor's prepetition capital structure and assets; (c) a liquidation analysis; (d) the Combined Plan and Disclosure Statement's designation and treatment of Claims and Equity Interests; (e) a summary of the Combined Plan and Disclosure Statement's structure; (f) the conditions precedent for confirmation and effectiveness of the Combined Plan and Disclosure Statement; (g) provisions of the Combined Plan and Disclosure Statement governing releases, injunctions, and exculpations; (h) the voting and confirmation procedures; (i) certain risk factors;

6

(j) tax consequences related to the Combined Plan and Disclosure Statement; and (k) a summary of the Bankruptcy Code and other requirements for confirmation.

17.    Accordingly, the Debtor submits that the Combined Plan and Disclosure Statement contains adequate information within the meaning of Bankruptcy Code section 1125.

> **(ii)    Section 1129(a)(1): The Combined Plan and Disclosure Statement Complies with the Applicable Provisions of the Bankruptcy Code.**

18.    To achieve confirmation of the Combined Plan and Disclosure Statement, the Debtor must demonstrate, by a preponderance of the evidence, that it complies with the applicable provisions of the Bankruptcy Code. *See* 11 U.S.C. § 1129(a)(1); *see also In re Armstrong World Indus., Inc.*, 348 B.R. 111, 120 (Bankr. D. Del. 2006); *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 824 (Bankr. D. Del. 2008).   As set forth in this Memorandum, the Combined Plan and Disclosure Statement satisfies all provisions of Bankruptcy Code section 1129 and complies with all other applicable Bankruptcy Code sections, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law. *See In re W.R. Grace & Co.*, 475 B.R. 34, 173 (D. Del. 2012).

> **(iii)    Section 1122: The Combined Plan and Disclosure Statement Classifications Are Appropriate.**

19.    Bankruptcy Code section 1122 provides, in pertinent part:

> (a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

> (b) A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

11 U.S.C. § 1122.  Bankruptcy Code section 1122 affords the proponent of a plan with significant flexibility in the classification of claims and interests, so long as there is a reasonable basis for such classification. *See In re Tribune Co.*, 476 B.R. 843, 854-55 (Bankr. D. Del. 2012) (finding

7

that "Section 1122(a) is permissive," in that "it does *not* provide that *all* similar claims must be placed in the same class"); *see also In re John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*, 987 F.2d 154, 158-59 (3d Cir. 1993); *Olympia & York Fla. Equity Corp. v. Bank of N.Y. (In re Holywell Corp.)*, 913 F.2d 873, 880 (11th Cir. 1990); *In re Avia Energy Dev., L.L.C.*, Case No. 05-39339 (BJH), 2007 WL 2238039, at *2 (Bankr. N.D. Tex. Aug. 2, 2007).

20.    Here, the Combined Plan and Disclosure Statement designates the following Classes:

| Class 1 | Other Secured Claims |
|---------|----------------------|
| Class 2 | First Lien Claims |
| Class 3 | DZ Claims |
| Class 4 | Gutkind Claims |
| Class 5 | General Unsecured Trade Claims |
| Class 6 | IRHA Claims |
| Class 7 | Disputed Investor Claims |
| Class 8 | Casco Claims |
| Class 9 | Intercompany Claims |
| Class 10 | Subordinated Claims |
| Class 11 | Equity Interests |

Such classifications comply with Bankruptcy Code section 1122. All Claims and Equity Interests within a Class are substantially similar. Additionally, each Claim and Equity Interest differ from Claims and Equity Interests in other Classes (if any) based upon such Claim or Equity Interest's legal or factual nature.

21.    Thus, the Debtor submits that the classification scheme within the Combined Plan and Disclosure Statement is consistent with Bankruptcy Code section 1122.

4856-1296-6825, v. 4

(iv)    **Section 1123(a): The Combined Plan and Disclosure Statement's Content is Appropriate.**

22.    Bankruptcy Code section 1123(a) elucidates seven requirements which a plan must contain. 11 U.S.C. § 1123(a). Here, each such requirement has been met:

    a.    As set forth above, the Combined Plan and Disclosure Statement designates Classes of Claims and Interests as required by Bankruptcy Code section 1123(a)(1). *See* Article IV.

    b.    The Combined Plan and Disclosure Statement sets forth which Classes of Claims are impaired or unimpaired as required by Bankruptcy Code sections 1123(a)(2) and (a)(3). *See* Article IV, Section 4.2 and 4.3.

    c.    The Combined Plan and Disclosure Statement provides for equal treatment within each Class as required by Bankruptcy Code section 1123(a)(4). *See* Article IV.

    d.    The Combined Plan and Disclosure Statement provides for adequate means for implementation including: (i) the Sale of the Property pursuant to the Purchase and Sale Contract and (ii) the procedures for distributions to Holders of Allowed Claims. The Combined Plan and Disclosure Statement contains adequate means for implementation as required by Bankruptcy Code section 1123(a)(5). *See* Article VI.

    e.    The Combined Plan and Disclosure Statement provides for the dissolution of the Debtor. As such, Bankruptcy Code section 1123(a)(6) is not applicable.

    f.    The Combined Plan and Disclosure Statement establishes a Plan Administrator.  Thus, the Debtor submits that Bankruptcy Code section 1123(a)(7) has been met as such an appointment is consistent with the interests of creditors, holders of equity interests, and public policy.

(v)    **Section 1123(b): the Combined Plan and Disclosure Statement Contains Certain Permissible Provisions.**

23.    Bankruptcy Code section 1123(b) sets forth permissive provisions that may be incorporated into a plan.  A plan may: impair or unimpair any class of claims; provide for the assumption or rejection of executory contracts and unexpired leases; provide for the settlement or retention of a debtor's claims; modify or leave unaffected the rights of holders of claims; and include any provision not inconsistent with the Bankruptcy Code. 11 U.S.C. § 1123(b).

9

24.     The Combined Plan and Disclosure Statement provides for the classification and impairment or unimpairment of certain Classes. *See* Combined Plan and Disclosure Statement Article IV.  The Combined Plan and Disclosure Statement also contains procedures for the distributions and the allowance or disallowance of Claims. *See* Article IX.

       **(a)**      **The Combined Plan and Disclosure Statement's Release, Exculpation, and Injunction Provisions are Appropriate and Should be Approved.**

25.     Consistent with Bankruptcy Code section 1123(b), the Combined Plan and Disclosure Statement also contains: (a) releases by the Debtor and its estate (the "**Debtor Releases**"); (b) consensual releases by certain third parties (the "**Third Party Releases**"); and (c) provisions related to injunction and exculpation. *See* Article XI.  As detailed below, the aforementioned provisions are proper under the circumstances of this Chapter 11 Case because they are fair and equitable, given for reasonable consideration, and an integral part of the Combined Plan and Disclosure Statement.

26.     At the outset, the Debtor notes the definition contained in the Combined Plan and Disclosure Statement:

> "**Released Parties**" means, collectively: (a) the Debtor; (b) First Lien Lender; (c) Casco; (d) Purchaser; (e) DZ 21st Street, (f) Gutkind, (g) IRHA, (h) Tadmor, (i) Alony and (j) the Related Parties of each of the foregoing Entities in clauses (a) through (i) of this definition.

27.     Such definition is wholly appropriate in this Chapter 11 Case and consistent with applicable law.  The Combined Plan and Disclosure Statement represents a compromise between the divergent viewpoints held by Debtor's major creditor constituencies regarding the consideration to be distributed, and the allocation of the consideration to be distributed, in connection with the reorganization of the Debtor.

10

28.     In order to facilitate a consensual plan and expeditions implementation of the Combined Plan and Disclosure Statement, including the closing of the Sale, the Debtors, the First Lien Lender, DZ, Gutkind, IHRA, Tadmor and Alony, have agreed to a compromise and settlement of all such issues by providing for the treatment and distributions set forth in the Plan (the **"Settlement"**).  Pursuant to the Settlement, the First Lien Lender has agreed to "gift" from its recovery on account of the First Lien Claims its contribution to the Class 3 Carve-Out, Class 4 Carve-Out, Class 5 Carve-Out, Class 6 Carve-Out and Reserve Fund.  A critical component of the Settlement are the releases contained in the Combined Plan and Disclosure Statement.

29.     The First Lien Lender and the other Released Parties are entitled to the releases in the Combined Plan and Disclosure Statement under the circumstances of the Chapter 11 Case.  For the reasons set forth herein, such releases should be approved.

### (1)     Debtor Releases.

30.     Article XI.III of the Combined Plan and Disclosure Statement contains the Debtor Releases.  The Debtor Releases provide that on the Effective Date, the Debtor and the Estate will release claims and causes of action against the Released Parties.

31.     Pursuant to Bankruptcy Code section 1123(b)(3)(A), debtors may release claims "if the release is a valid exercise of the debtor's business judgment, is fair, reasonable and in the best interests of the estate." *U.S. Bank Nat'l Ass'n v. Wilmington Trust Co. (In re Spansion)*, 426 B.R. 114, 143 (Bankr. D. Del. 2010).  When determining whether such debtor releases are appropriate, a court considers the "specific facts and equities of each case," as set forth in *In re Zenith Elecs. Corp.*, 241 B.R. at 110.  These factors look to:

> 1. An identity of interest between the debtor and the third party, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete assets of the estate;

11

2. Substantial contribution by the non-debtor of assets to the reorganization;

3. The essential nature of the injunction to the reorganization to the extent that, without the injunction, there is little likelihood of success;

4. An agreement by a substantial majority of creditors to support the injunction, specifically if the impaired class of classes "overwhelmingly" votes to accept the plan; and

5. A provision in the plan for payment of all or substantially all of the claims of the class or classes affected by the injunction.

*In re Indianapolis Downs, LLC*, 486 B.R. 286, 303 (Bankr. D. Del. 2013). *See also In re Master Mortgage Inv. Fund, Inc.*, 168 B.R. 930, 937 (Bankr. W.D. Mo. 1994). The court need not find all factors apply in a particular case. *In re Wash. Mut., Inc.*, 442 B.R. 314, 346 (Bankr. D. Del. 2011). Instead, these factors are "helpful in weighing the equities of the particular case after a fact-specific review." *In re Indianapolis Downs*, 486 B.R. at 303.

32.      Here, the Court should approve the Debtor's releases of the Released Parties in the Combined Plan and Disclosure Statement as they are fair, reasonable, and in the best interests of the Debtor and its estate.  First, each Released Party was instrumental in formulating the Combined Plan and Disclosure Statement. *See, e.g.*, *In re Tribune Co.*, 464 B.R. 126, 187 (Bankr. D. Del. 2011) (finding that the debtors and their secured lenders "share[d] the common goal of confirming the [] Plan" and implementing the consummation thereof, thus, giving rise to an identity of interest between the parties).

33.      Second, each of the Released Parties have made substantial contributions to the Chapter 11 Case, including, among other things, negotiating the Settlement that forms the basis for the Combined Plan and Disclosure Statement.  The contributions of the Released Parties, and particularly the First Lien Lender, were essential to administering this Chapter 11 Case and preserving value for the Debtor's creditors.

12

34.     Third, the releases contemplated by the Combined Plan and Disclosure Statement were essential.  The Debtor, the First Lien Lender, and the other Released Parties were able to reach resolution on their claims, as set forth in the Combined Plan and Disclosure Statement. Without the releases, the Released Parties would not have been willing to compromise their respective claims.

35.     Fourth, as set forth in the Tabulation Declaration, the number and amount of Claims who support confirmation of the Combined Plan and Disclosure Statement is unanimous.

36.     Fifth, the Debtor believes that Sale presents the best possible chance for maximum recovery for creditors in this Chapter 11 Case.  As indicated by the Liquidation Analysis, creditors would receive less if this Chapter 11 Case were converted to a case under chapter 7 of the Bankruptcy Code. *See, e.g.*, *In re Zenith*, 241 B.R. at 111 (explaining that the fifth factor was met because "the Plan does provide a distribution to creditors in exchange for the releases" and supporting that conclusion by explaining that creditors received more under the plan than they would have in a liquidation).

### (2)     Third-Party Releases.

37.     In order for the Debtor to avail itself of the process contemplated by Local Rule 3017-2, the Combined Plan and Disclosure Statement could not contain any non-consensual third-party releases.  The Debtor thus drafted the Combined Plan and Disclosure Statement to contain only consensual third-party releases.

38.     Consensual third-party releases may be contained in a plan. *In re Washington Mut.*, 442 B.R. at 352; *In re Spansion*, 426 B.R. at 144.  Under *Indianapolis Downs* and its progeny, consensual third-party releases may be consensual with regard to creditors that are unimpaired and deemed to accept a plan and when impaired creditors either fail to vote or opt out. *In re Indianapolis Downs, LLC*, 486 B.R. at 306 ("In this case, the third-party releases in question bind

13

certain unimpaired creditors who are deemed to accept the Plan: these creditors are being paid in full and have therefore received consideration for the releases.  As for those impaired creditors who abstained from voting on the Plan, or who voted to reject the Plan and did not otherwise opt out of the releases, the record reflects these parties were provided detailed instructions on how to opt out, and had the opportunity to do so by marking their ballots.  Under these circumstances, the Third Party Releases may be properly characterized as consensual and will be approved.").

39.     Here, the third-party releases bind the following parties: (a) the holders of all Claims and Interests who vote to accept the Plan and opt-in on the ballot to grant the releases; and (b) Unimpaired Claims or Equity Interests who do not object to the releases by filing an objection to the Plan and opt-in on the notice to grant the releases.  Such releases are fully consensual under applicable law. *See In re Indianapolis Downs, LLC*, 486 B.R. at 304; *see also In re Spansion*, 426 B.R. at 144; *In re TK Holdings Inc.*, Case No. 17-11375 (BLS), 2018 WL 1306271, at *16 (Bankr. D. Del. Mar. 13, 2018); *In re Abeinsa Holding, Inc.*, 562 B.R. 265 (Bankr. D. Del. 2016). Releasing Parties in this case are unimpaired, accepted the Combined Plan and Disclosure Statement, or opted in.  The Ballots and Notices of Non-Voting Status clearly and explicitly provided opt-in instructions.

40.     The third-party releases are an integral part of the Combined Plan and Disclosure Statement and are appropriate under applicable law.   Accordingly, the Debtor submits that the third-party releases should be approved.

### (3)     Injunction and Exculpation Provisions.

41.     <u>Injunction Provisions</u>.   Article XI.VI of the Combined Plan and Disclosure Statement contains certain injunction provisions related to the parties who have held, hold, or may hold Claims against the Debtor.  The injunction provisions are critical for the effectiveness of the Combined Plan and Disclosure Statement.  Without such injunction provisions, the Debtor would

be unable to fulfill its respective responsibilities under the Combined Plan and Disclosure Statement.  The injunction provisions in the Combined Plan and Disclosure Statement are narrowly tailored and should be approved.

42.    Exculpation Provisions.  Article XI.V. of the Combined Plan and Disclosure Statement provides for limited exculpation of certain parties.  Exculpation provisions in a plan are appropriate when the protection is necessary and given in exchange for fair consideration. *Gillman v. Cont'l Airlines (In re Cont'l Airlines)*, 203 F.3d 203, 211-14 (3d Cir. 2000). *See also In re PWS Holding Corp.*, 228 F.3d 224, 246-47 (3d Cir. 2000) (holding that an exculpation provision "does not affect the liability of third parties, but rather sets forth the appropriate standard of liability."). Estate fiduciaries, lenders, and other parties participating in the plan process are frequently the subject of exculpation provisions. *See, e.g.*, *In re W.R. Grace & Co.*, 446 B.R. 96, 132-33 (Bankr. D. Del. 2011); *In re Wash Mut. Inc.*, 442 B.R. at 350-51; *In re Indianapolis Downs, LLC*, 486 B.R. at 306.  Without protection for these parties, key constituents would not participate in the plan process.

43.    For these reasons, the Debtor submits that the exculpation provisions in the Combined Plan and Disclosure Statement should be approved.

**(vi)    Section 1129(a)(2): The Combined Plan and Disclosure Statement Complies with the Bankruptcy Code.**

44.    Bankruptcy Code section 1129(a)(2) requires that the plan proponent "comp[y] with the allocable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1129(a)(2).  The legislative history of Bankruptcy Code section 1129(a)(2) reflects that this provision is intended to encompass the disclosure and solicitation requirements under Bankruptcy Code sections 1125 and 1126. *See* H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978) ("Paragraph (2) [of § 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter

15

11, such as section 1125 regarding disclosure."); *In re Johns-Manville Corp.*, 68 B.R. 618, 630 (Bankr. S.D.N.Y. 1987). *See also In re Toy & Sports Warehouse, Inc.*, 37 B.R.141, 149 (Bankr. S.D.N.Y. 1984); *In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 723, 759 (Bankr. S.D.N.Y. 1992). As set forth below, the Debtor has complied with the applicable provisions of the Bankruptcy Code, including the provisions of Bankruptcy Code sections 1125 and 1126 regarding disclosure and plan solicitation.

45.     As discussed herein and in the Tabulation Declaration, the Combined Plan and Disclosure Statement meets the requirements of Bankruptcy Code sections 1125 and 1126. The Debtor has complied with applicable Bankruptcy Code provisions, the Bankruptcy Rules, the Local Rules, including Local Rule 3017-2, and other applicable law in the transmission of the Combined Plan and Disclosure Statement, the Ballots, and related documents and notices. Accordingly, the Debtor has complied with the provisions of Bankruptcy Code sections 1125 and 1126, and fulfilled the requirements of Bankruptcy Code section 1129(a)(2).

**(vii)     Section 1129(a)(3): The Combined Plan and Disclosure Statement Has Been Proposed in Good Faith.**

46.     As required by Bankruptcy Code section 1129(a)(3), the Combined Plan and Disclosure Statement has been "proposed in good faith and not by any means forbidden by law." The determination of good faith should be left to the Court's common sense and judgment. *In re Okoreeh-Bahm*, 836 F.2d 1030, 1033 (6th Cir. 1988).

47.     The Third Circuit has addressed the good faith standard under Bankruptcy Code section 1129(a)(3), stating that "[f]or purposes of determining good faith under section 1129(a)(3) . . . the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives of the Bankruptcy Code." *In re PWS Holding Corp.*, 228 F.3d at 242; *see also In re Lernout & Hauspie Speech Prods. N.V.*, 308 B.R. 672, 675 (D. Del. 2004)

16

(finding that good faith requires "that (1) the plan be consistent with the objectives of the Bankruptcy Code; (2) the plan be proposed with honesty and good intentions and with a basis for expecting that reorganization can be achieved; or (3) there was fundamental fairness in dealing with the creditors."); *In re NII Holdings, Inc.*, 288 B.R. 356, 362 (Bankr. D. Del. 2002); *In re Zenith Elecs. Corp.*, 241 B.R. at 107; *In re PPI Enterprises (U.S.), Inc.*, 228 B.R. 339, 347 (Bankr. D. Del. 1998).

48.     The Combined Plan and Disclosure Statement is the result of good faith, arm's-length negotiations among the Debtor, Ray New York, DZ, Gutkind, IHRA, Tadmor and Alony. The voting support demonstrates the fairness of the Combined Plan and Disclosure Statement. The goal of the Combined Plan and Disclosure Statement is to maximize distributions to creditors, a legitimate and honest purpose. Further, the Combined Plan and Disclosure Statement has been proposed in compliance with all applicable laws, rules, and regulations. As such, the Combined Plan and Disclosure Statement complies with Bankruptcy Code section 1129(a)(3).

### (viii)   Section 1129(a)(4): The Combined Plan and Disclosure Statement Provides for Approval of Certain Administrative Expenses.

49.     Bankruptcy Code section 1129(a)(4) requires that payments by a debtor "for services or for costs and expenses in connection with the case, or in connection with the plan and incident to the case," either be approved by the Court as reasonable or subject to approval of the Court as reasonable. *See* 11 U.S.C. § 1129(a)(4); *see also In re Resorts Int'l, Inc.*, 145 B.R. 412, 475-76 (Bankr. D.N.J. 1990); *In re Lisanti Foods*, 329 B.R. 491, 503 (D.N.J. 2005).

50.     The Combined Plan and Disclosure Statement provides that any payments made or promised by the Debtor for services rendered in connection with the Chapter 11 Case will be subject to review by the Court and other parties in interest. These procedures satisfy Bankruptcy Code section 1129(a)(4).

17

**(ix)     Section 1129(a)(5): The Combined Plan and Disclosure Statement Contains Proper Disclosures.**

51.     Bankruptcy Code section 1129(a)(5) requires that a plan proponent disclose "the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor . . . or a successor of the debtor under the plan." 11 U.S.C. § 1129(a)(5)(A)(i).

52.     The Combined Plan and Disclosure Statement complies with Bankruptcy Code section 1129(a)(5) by identifying the Plan Administrator in the Plan.  The appointment of the Plan Administrator is consistent with the best interests of Holders of Claims and Equity Interests in the Debtor and public policy.  Accordingly, Bankruptcy Code section 1129(a)(5) has been met.

**(x)      Section 1129(a)(6): No Governmental Regulatory Commission Has Jurisdiction over the Debtor.**

53.     Bankruptcy Code section 1129(a)(6) provides that "[a]ny governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval." 11 U.S.C. § 1129(a)(6).  The Combined Plan and Disclosure Statement does not provide for any rate changes over which a governmental regulatory commission has jurisdiction. The Debtor submits, therefore, that this provision of the Bankruptcy Code is not applicable to the Combined Plan and Disclosure Statement.

**(xi)     Section 1129(a)(7): The Combined Plan and Disclosure Statement is in the Best Interest of All Creditors.**

54.     Bankruptcy Code section 1129(a)(7) requires that a plan be in the best interests of creditors and equity holders, commonly referred to as the "best interests" test.  The best interests test requires that holders of impaired claims:

(i)     have accepted the plan; or

(ii)  will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date.

11 U.S.C. § 1129(a)(7)(A).

55.     The best interests test, thus, focuses on dissenting impaired holders of claims and interests as individuals, rather than on entire classes of claims or interests. *See Bank of Am. Nat'l Trust & Savings Assoc. v. 203 N. LaSalle St. Partnership*, 526 U.S. 434, 441 n.13 (1999) ("The 'best interests' test applies to individual creditors holding impaired claims, even if the class as a whole votes to accept the plan."); *see also In re Adelphia Commc'ns, Corp.*, 368 B.R. 140, 251 (Bankr. S.D.N.Y. 2007) (section 1129(a)(7) is satisfied when an impaired holder of claims would receive "no less than such holder would receive in a hypothetical chapter 7 liquidation.").  A plan may satisfy this requirement if the Court finds that each such nonconsenting member of an impaired class of claims would receive at least as much under the plan as it would under a chapter 7 liquidation. *See, e.g., In re Washington Mut., Inc.*, 461 B.R. 200, 241 (Bankr. D. Del. 2011); *In re Lason, Inc.*, 300 B.R. 227, 232 (Bankr. D. Del. 2003) ("Section 1129(a)(7)(A) requires a determination whether "a prompt chapter 7 liquidation would provide a better return to particular creditors or interest holders than a chapter 11 reorganization.'") (quoting *In re Sierra-Cal*, 210 B.R. 168, 171-72 (Bankr. E.D. Cal. 1997)); *see also In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 297 (Bankr. S.D.N.Y. 1990).

56.     The Debtor submits that, if the Chapter 11 Case was converted to a case under chapter 7 of the Bankruptcy Code, the value of distributions to each impaired class of Claims or Interests would be less than the value of distributions under the Combined Plan and Disclosure Statement.  As detailed in the Liquidation Analysis, the assets available for distribution under Chapter 7 would be substantially less than the Combined Plan and Disclosure Statement.  Several

19

factors contribute to smaller distributions: (a) the Debtor would incur costs, such as professional fees, in winding up Chapter 7 cases; (b) the Chapter 7 process would take substantially longer; and (c) a Chapter 7 trustee and professionals would incur costs in becoming familiar with the Debtor's assets and operations, and likely would realize lesser value for the Property.

57.     For these reasons, the Debtor believes that the Combined Plan and Disclosure Statement is in the best interests of creditors.  Holders of Claims in Class 2 (First Lien Claims), Class 3 (DZ Claims), Class 4 (Gutkind Claims); Class 6 (IRHA Claims), and Class 7 (Disputed Investor Claims) have voted to accept the Combined Plan and Disclosure Statement.  Further, Holders of Claims in Classes 5, 8, 9, 10 and 11 would receive as much, or more (in the case of Holders of Claims in Class 5), under the Combined Plan and Disclosure Statement than under Chapter 7.

**(xii)    Section 1129(a)(8): The Combined Plan and Disclosure Statement Has Been Accepted by an Impaired Voting Class.**

58.     Bankruptcy Code section 1129(a)(8) requires that each class of claims either vote to accept a plan or are not impaired under a plan. 11 U.S.C. § 1129(a)(8).  As detailed in the Tabulation Declaration: (a) Holders of Claims in Classes 1 and 5 are unimpaired and deemed to accept the Combined Plan and Disclosure Statement; (b) Holders of Claims in Classes 2, 3, 4, 6 and 7 have voted as classes to accept the Combined Plan and Disclosure Statement; and (c) Holders of Claims and Interests in Classes 8, 9, 10 and 11 are deemed to reject the Combined Plan and Disclosure Statement.  The Combined Plan and Disclosure Statement may be confirmed pursuant to Bankruptcy Code section 1129(b).

**(xiii)   Section 1129(a)(9): The Combined Plan and Disclosure Statement Provides for Payment in Full of Allowed Priority, Administrative, and Tax Claims.**

59.     Bankruptcy Code section 1129(a)(9) requires that certain types of priority claims must receive specific treatment, unless the holders of such claims agree to different treatment. 11

20

U.S.C. § 1129(a)(9).  The Combined Plan and Disclosure Statement provides for the payment of Allowed Administrative Expense Claims, Professional Fee Claims, and Priority Tax Claims. Therefore, the Combined Plan and Disclosure Statement meets the requirements of Bankruptcy Code section 1129(a)(9).

**(xiv)    Section 1129(a)(10): At Least One Class of Impaired Classes Has Accepted the Combined Plan and Disclosure Statement.**

60.    Bankruptcy Code section 1129(a)(10) requires affirmative acceptance of a plan by at least one class of impaired claims "determined without including any acceptance of the plan by any insider" if a class of claims is impaired by such plan. 11 U.S.C. § 1129(a)(10).  The Combined Plan and Disclosure Statement was accepted by Classes 2, 3, 4, 6 and 7, which are impaired under the Combined Plan and Disclosure Statement and are not insiders of the Debtor.  Thus, Bankruptcy Code section 1129(a)(10) has been met.

**(xv)    Section 1129(a)(11): The Combined Plan and Disclosure Statement is Feasible.**

61.    Bankruptcy Code section 1129(a)(11) requires that the Court find that

> Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

11 U.S.C. § 1129(a)(11).  This is referred to as the "feasibility" standard and requires two determinations: (a) the debtor's ability to consummate the provisions of the plan, and (b) the debtor's ability to reorganize as a viable entity. *See Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988) ("[T]he feasibility standard is whether the plan offers a reasonable assurance of success. Success need not be guaranteed."); *Mercury Capital Corp. v. Milford Conn. Assocs., L.P.*, 354 B.R. 1, 9 (D. Conn. 2006) ("A 'relatively low threshold of proof' will satisfy the feasibility requirement.") (*quoting In re Brotby*, 303 B.R. 177, 191 (B.A.P. 9th Cir. 2003)); *In re Lakeside Global II, Ltd.*, 116 B.R. 499, 506 (Bankr. S.D. Tex. 1989) (stating that the definition of

21

feasibility "has been slightly broadened and contemplates whether [a] debtor can realistically carry out its Plan . . . and [b] whether the Plan offers a reasonable prospect of success and is workable").

62.    The Combined Plan and Disclosure Statement contemplates the Sale of the Property pursuant to the Purchase and Sale Contract upon the Effective Date, thus minimizing or eliminating the need to demonstrate feasibility. *See In re Credentia Corp.*, Case No. 10-10926 (BLS), 2010 WL 3313383, at *9 (Bankr. D. Del. May 26, 2010) ("The Plan provides for a workable scheme of liquidation and, therefore, satisfies section 1129(a)(11) of the Bankruptcy Code."); *see also In re Revco D.S., Inc.*, 131 B.R. 615, 622 (Bankr. N.D. Ohio 1990) (holding that "Section 1129(a)(11) is satisfied as the plan provides that the property of [the] Debtors shall be liquidated"). Because the Debtor will be liquidated, feasibility has been met.

**(xvi)    Section 1129(a)(12): All Statutory Payment Obligations Have Been or Will be Paid.**

63.    Bankruptcy Code section 1129(a)(12) requires that a plan provide for the payment of fees payable under 28 U.S.C. § 1930. 11 U.S.C. § 1129(a)(12). Bankruptcy Code section 507 provides that such fees are afforded priority as administrative expenses. 11 U.S.C. § 507(a)(2).

64.    The Combined Plan and Disclosure Statement provides that all statutory fees will be paid by the Debtor on or before the Effective Date. Therefore, Bankruptcy Code section 1129(a)(12) has been met.

**(xvii)    Section 1129(a)(13) Through Section 1129(a)(16) Do Not Apply to the Combined Plan and Disclosure Statement.**

65.    Bankruptcy Code section 1129(a)(13) requires that a plan provide for the continuation of all retiree benefits as defined by Bankruptcy Code section 1114. 11 U.S.C. 1129(a)(13). The Debtor does not provide retiree benefits. Therefore, Bankruptcy Code section 1129(a)(13) is not applicable.

22

66.     Bankruptcy Code section 1129(a)(14) relates to the payment of domestic support obligations. 11 U.S.C. § 1129(a)(14). The Debtor is not subject to any domestic support obligations; therefore, this provision is not applicable.

67.     Bankruptcy Code section 1129(a)(15) only applies to cases where the debtor is an individual. 11 U.S.C. § 1129(a)(15). Therefore, this provision does not apply to the Combined Plan and Disclosure Statement.

68.     Bankruptcy Code section 1129(a)(16) applies to transfers of property by a corporation or trust that is not money, business, or commercial corporation or trust. 11 U.S.C. § 1129(a)(16).  The Debtor was a business or commercial corporation.  Therefore, Bankruptcy Code section 1129(a)(16) does not apply.

**(xviii)  Section 1129(b): The Combined Plan and Disclosure Statement Satisfies the "Cram Down Requirements".**

69.     Bankruptcy Code section 1129(b) provides a mechanism to confirm a plan when not all of the requirements of Bankruptcy Code section 1129(a) have been met.  This mechanism is commonly referred to as a "cram down."

70.     In relevant part, Bankruptcy Code section 1129(b) provides:

> [I]f all of the applicable requirements of [Bankruptcy Code section 1129(a)] other than [Bankruptcy Code section 1129(a)(8)] are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

11 U.S.C. § 1129(b)(1).  Therefore, a court may "cram down" a plan over rejection by impaired classes of claims or equity interests as long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to such classes. *Kane v. Johns-Manville Corp.*, 843 F.2d at 650.

23

71.     To determine whether "unfair discrimination" exists, courts look to the facts and circumstances of the particular case. *See In re 203 N. LaSalle St. Ltd. P'ship.*, 190 B.R. 567, 585 (Bankr. N.D. Ill. 1995), *rev'd on other grounds*, 526 U.S. 434 (1999) (noting "the lack of any clear standard for determining the fairness of a discrimination in the treatment of classes under a Chapter 11 plan" and that "the limits of fairness in this context have not been established."); *see also In re Bowles*, 48 B.R. 502, 507 (Bankr. E.D. Va. 1985) ("[W]hether or not a particular plan does so [unfairly] discriminate is to be determined on a case-by-case basis."); *In re Freymiller Trucking, Inc.*, 190 B.R. 913, 916 (Bankr. W.D. Okla. 1996) (holding that a determination of unfair discrimination requires a court to "consider all aspects of the case and the totality of all the circumstances"). A plan unfairly discriminates when it treats similarly situated classes materially differently without a compelling justification. *In re Coram Healthcare Corp.*, 315 B.R. 321, 349 (Bankr. D. Del. 2004) (collecting cases).

72.     A plan is fair and equitable with respect to an impaired class of unsecured claims or interests that rejects a plan if it follows the absolute priority rule. *See* 11 U.S.C. § 1129(b)(2)(B)(ii) and (C)(ii); *see also In re Armstrong World Indus.*, 320 B.R. 523, 532 (D. Del. 2005) (finding the fair and equitable requirement to be rooted in the absolute priority rule).

73.     The Combined Plan and Disclosure Statement is fair and equitable. The treatment of Classes 8, 9, 10 and 11 is appropriate as there are no similarly situated class of Claims or Interests. Further, the Combined Plan and Disclosure Statement satisfies the absolute priority rule as no junior Holder of a Claim or Equity Interest will receive any distribution unless the Holders of higher priority Claims receive the full value of their Claims or the Holders of such higher priority Claims have consented to such treatment.

74.     The Debtor, therefore, submits that the cram down requirements of Bankruptcy Code section 1129(b) have been satisfied as the Combined Plan and Disclosure Statement is fair and equitable and does not unfairly discriminate.

**(xix)    Section 1129(c) through Section 1129(e) Have Been Satisfied.**

75.     Bankruptcy Code section 1129(c) requires the Court confirm only one plan. *See* 11 U.S.C. § 1129(c).  The Combined Plan and Disclosure Statement is the only plan being confirmed in this Chapter 11 Case, thus satisfying Bankruptcy Code section 1129(c).

76.     The principal purpose of the Combined Plan and Disclosure Statement is not the avoidance of taxes or the application of section 5 of the Security Act of 1933. Therefore, Bankruptcy Code section 1129(d) is satisfied.

77.     Bankruptcy Code section 1129(e) is not applicable as none of these Chapter 11 Cases are "small business cases."

**B.    Objections**

78.     The objection deadline for the Combined Plan and Disclosure Statement was March 6, 2024, at 4:00 p.m. (Eastern).  The Debtor received only one objection (the **"Objection"**) to confirmation, filed by the Board of Managers of 120 Eleventh Avenue Condominiums (the **"Board"**).  Prior to the Petition Date, the Board and Debtor entered into (i) that certain limited license and access agreement dated May 16, 2019 (the **"Access Agreement"**); and (ii) that certain reimbursement agreement dated December 13, 2017 (the **"Reimbursement Agreement,"** and with the Access Agreement, the **"Agreements"**.  The Objection asserts that the Board incurred hundreds of thousands of dollars in property damage and associated expenses, as a result of the Debtor's prepetition demolition and site work, that is now due under the Agreements.

79.     On March 6, 2024, the Board filed an amended proof of claim asserting claims in the amount of $601,617.42 plus and unliquidated amount (the **"Amended Claim"**).  The Debtor

25

disputes that any amount is due to the Board under the Agreements and reserves its right to object to the Amended Claim at a later date.  To resolve the objection for purposes of confirmation, the Debtor proposes that it will escrow $601,617.42 from the proceeds of the Sale to ensure that there is enough money available to pay in full any amount ultimately allowed under the Amended Claim.

**C.**      **A Waiver of Any Stay of Confirmation is Appropriate**

80.      The Debtor requests that the Court cause the Confirmation Order to become effective immediately upon its entry, notwithstanding the 14-day stay otherwise imposed by Bankruptcy Rule 3020.  The purpose of Bankruptcy Rule 3020(e) is to allow parties in interest with time to appeal a confirmation order before such appeal is moot. *See* Fed. R. Bankr. P. 3020(e), Adv. Comm. Notes, 1999 Amend.

81.      Here, such waiver is appropriate because it allows for the expeditious consummation of the Sale which forms the basis of the consummation of the Combined Plan and Disclosure Statement.  Immediate consummation of the Combined Plan and Disclosure Statement will not prejudice any party in interest. The Debtor's creditors will benefit from the immediate Sale of the Property and the proceeds generated therefrom.  Therefore, the Debtor submits that good cause exists to waive the requirements of Bankruptcy Rule 3020(e).

26

## CONCLUSION

For all of the foregoing reasons, the Debtor respectfully submits that the Court should confirm the Combined Plan and Disclosure Statement because it fully satisfies all applicable requirements under the Bankruptcy Code.

Dated:  March 11, 2023  
       Wilmington, Delaware

CHIPMAN BROWN CICERO & COLE, LLP

*/s/ Mark D. Olivere*

William E. Chipman, Jr. (No. 3818)  
Mark D. Olivere (No. 4291)  
Hercules Plaza  
1313 North Market Street, Suite 5400  
Wilmington, Delaware 19801  
Telephone:  (302) 295-0191  
Facsimile:  (302) 295-0199  
Email:  chipman@chipmanbrown.com  
       olivere@chipmanbrown.com

*Counsel for the Debtor and the Debtor-in-Possession*